FILED
8/9/2021 4:21 PM
IRIS Y. MARTINEZ
CIRCUIT CLERK
COOK COUNTY, IL

## IN THE CIRCUIT COURT OF COOK COUNTY
## COUNTY DEPARTMENT, LAW DIVISION

| | | |
|---|---|---|
| Richard Redmond, Merrilee C. Redmond and Merrilee C. Redmond, as Trustee of the Merrilee Clark Redmond Trust, | ) ) ) ) | **2021L008013** |
| Plaintiffs, | ) ) | No. _____ |
| v. | ) ) | Jury Demand |
| Metropolitan Casualty Insurance Company, | ) ) ) | |
| Defendant. | ) ) | |

### COMPLAINT

Richard Redmond, Merrilee C. Redmond, and the Merrilee Clark Redmond Trust, by and through their attorneys Emry Murdoch LLC, bring this Complaint against Metropolitan Casualty Insurance Company, and allege as follows:

### NATURE OF THE ACTION

1.      Plaintiffs, Richard and Merrilee Redmond and the Merrilee Clark Redmond Trust ("the Redmonds"), purchased homeowner's insurance from the Defendant, Metropolitan Casualty Insurance Company ("Metropolitan"). In September 2020, the Redmonds suffered substantial damage to their home when an exterior masonry wall suddenly separated from the wood structural framing and began to fall away from the house. As a result, all of the exterior masonry covering almost one half of the home needed to be removed, and the underlying wood framing needed to be rebuilt. The Redmonds promptly submitted a claim to

EXHIBIT A

Metropolitan ("the Claim"). During the ensuing nine months, Metropolitan (1) denied the claim twice on grounds that were not based on actual policy exclusions and/or on facts that were not supported by any evidence or even mentioned by either the Redmonds or any representative of Metropolitan; (2) refused to respond to, among other things, the Redmonds' numerous and repeated requests for information and documentation, confirmation that the original denial had been rescinded, or a tolling agreement during Metropolitan's extended delays; and (3) misrepresented and manipulated the plain meaning of its insurance policy in order to unreasonably curtail the time provided for the Redmonds to file suit.

2.      Metropolitan's initial denial of the Claim was based on a cursory inspection of the Redmonds' home of less than half an hour and fabricated exclusions that are not contained in the insurance policy. After the Redmonds questioned the denial, Metropolitan made oppressive demands for documentation and information, including a demand that the Redmonds submit to two interrogations under oath by Metropolitan's attorney, all under the pretext of a "re-examination" of the original denial. After the Redmonds fully complied with Metropolitan's demands, Metropolitan issued a second denial letter that, among other things, was factually inaccurate, raised exclusions that were never implicated by the Claim, and otherwise misconstrued its insurance policy. One provision cited by Metropolitan without explanation is nonsensical. Metropolitan failed and refused to respond to the Redmonds' repeated requests for updates and information during Metropolitan's sham review of the Claim, only to have Metropolitan assert

2

EXHIBIT A

that all of the time it had wasted counted against the period provided for in the Policy for the Redmonds to file suit. In addition to a recovery of their damages caused by Metropolitan's breach of the Policy, the Redmonds seek a finding that Metropolitan has unreasonably and vexatiously delayed the handling of the Redmonds' claim in violation of 215 ILCS 5/155.

## PARTIES

3.      Richard Redmond and Merrilee Redmond reside at 34 Canterbury Court, Wilmette, in Cook County, Illinois. Title to 34 Canterbury Court is held by the Merrilee Clark Redmond Trust.

4.      Metropolitan is a domestic insurance company with its principal place of business in Rhode Island. Metropolitan is registered with the Illinois Department of Insurance and regularly conducts business in the State of Illinois.

5.      Venue is proper pursuant to 735 ILCS 5/2-101 in that all of the events and transactions giving rise to this claim occurred in Cook County, Illinois.

## BACKGROUND FACTS

**A.      The Damage to the Redmonds' Home.**

6.      The Redmonds and Metropolitan entered into Homeowners Insurance Policy No. 6531135662 for the period from June 15, 2020 through June 15, 2021 ("the Policy"). A true and correct copy of the Declaration Page and the Policy are attached as Exhibit A.

7.      The Policy covers the Redmonds' home at 34 Canterbury Court, Wilmette, Illinois ("the Redmonds' Home").

3

EXHIBIT A

8.    Pursuant to the terms of the Policy, Metropolitan agreed to "pay for sudden and accidental direct physical loss or damage" to the Redmonds' Home, "except as excluded." Ex. A, p. E-1.

9.    In September 2020, the Redmonds experienced a sudden and accidental direct physical loss or damage to their home. Specifically, a portion of the masonry exterior of the Redmonds' home separated from the framing structure, causing loss and damage.

10.    The Redmonds retained an architect and a contractor to inspect the damage. The architect and contractor advised the Redmonds that all of the exterior brick work on a significant portion of their home would need to be removed, the underlying wood framing repaired and replaced, and the masonry veneer reinstalled. They also advised the Redmonds that the dislocation of the bricks created a dangerous condition and risk of additional damage, and the repair work needed to begin immediately. The total cost of the repairs was $242,765.

**B.    Metropolitan's Wrongful Denials of the Claim.**

11.    The Redmonds' insurance agent timely reported the loss to Metropolitan on September 16, 2020.

12.    Metropolitan sent a claims adjuster to the Redmonds' home on September 23, 2020. The adjuster inspected the damage to the Redmonds' Home for less than thirty minutes. One day later, on September 24, 2020, Metropolitan sent a letter to the Redmonds stating that it had performed "a careful evaluation of the facts" and had "sufficient information at this time to make a proper decision

EXHIBIT A

regarding your claim." Metropolitan declined coverage under the Policy. A true and correct copy of Metropolitan's declination letter is attached as Exhibit B.

13.     The basis for Metropolitan's September 24, 2020 denial of coverage ("the First Denial") was that "the damage to the brick wall and stud framing are the result of long-term water exposure that resulted in rot/deterioration. Long term damage and wear/tear/deterioration is specifically not included under the policy." *See,* Exhibit B, p. 2.

14.     The First Denial was a breach of the Policy. The First Denial stated that the loss was the result of "long term water exposure that resulted in rot/ deterioration." However, the Policy does not contain an exclusion for "long term water exposure" or "rot/deterioration." The First Denial also states that "long term damages and wear/tear/deterioration is <u>specifically</u> not included under the policy." (Emphasis added.) It is simply untrue that the Policy excludes "long term damages" or "wear/tear/deterioration." In fact, the terms "long term damages" and "wear/tear/deterioration" do not appear in the Policy at all.

15.     Metropolitan also lacked a good faith basis for its assertion that the damages were the result of long term water exposure. Metropolitan's claims adjuster spent less than thirty minutes at the Redmonds' home and failed to perform any type of analysis that would support this conclusion.

16.     The First Denial was also in violation of Metropolitan's own standards for a proper and fair coverage analysis and did not include any consideration of the information that Metropolitan's counsel subsequently advised was "necessary for the Company … to complete its review toward a final coverage determination."

EXHIBIT A

17.     The Redmonds immediately disputed Metropolitan's refusal to provide coverage.  The Redmonds advised Metropolitan that it had overlooked facts and misquoted and misconstrued the Policy in reaching its conclusion.

18.     On October 30, 2020, Metropolitan advised the Redmonds that it was "round tabling" its coverage decision.

19.     The Redmonds advised Metropolitan that they understood the First Denial had been rescinded and asked Metropolitan to confirm that their understanding was correct.  Metropolitan failed and refused to respond to the Redmonds' request and never advised them that the First Denial remained in effect.

20.      On November 13, 2020, Metropolitan advised the Redmonds that it had retained a structural engineer to perform an investigation of the cause and extent of the damage to their home.

21.     On November 18, 2020, Metropolitan's engineer inspected the Redmonds' home and interviewed Richard Redmond.  By the time of the inspection by Metropolitan's engineer, over 90% of the repair work had been completed.  The Redmonds were subsequently advised by their Metropolitan agent that Metropolitan's engineer had written a report setting forth his determinations of the cause of the damage.

22.     Between November 13, 2020 and March 2, 2021, the Redmonds repeatedly requested a copy of the report by Metropolitan's engineer, but Metropolitan failed and refused to provide a copy.

23.     After the Metropolitan engineer inspected the almost completed

6

EXHIBIT A

repairs, the Redmonds were notified on December 8, 2020, that Metropolitan had engaged the law firm of Condon & Cook to represent its interests. Attached as Exhibit C is a true and correct copy of the December 8, 2020 letter from counsel for Metropolitan. The letter erroneously refers to a "State Farm Mutual Automobile Insurance Company policy." The Redmonds have never had an insurance policy with State Farm Mutual Automobile Insurance Company. The letter advised the Redmonds that Metropolitan was undertaking a further review of the Claim.

24.    Over the ensuing seven months, the Redmonds asked Metropolitan to confirm they had complied with all terms of the Policy. Metropolitan failed and refused to provide the Redmonds with this simple confirmation. Metropolitan never advised the Redmonds that it took the position that the First Denial Letter remained in effect. Metropolitan never asked the Redmonds to submit a proof of loss.

25.    From December 2020 through June 2021, Metropolitan, through its counsel, demanded that the Redmonds produce extensive and burdensome documentation, obtain additional records and documents from third parties, and appear for sworn examinations under oath, during which they were questioned by counsel for Metropolitan.

26.    The Redmonds fully complied with all of Metropolitan's burdensome and extensive requests for additional information and sworn testimony. The Redmonds produced almost two hundred pages of documents and photographs, including information they obtained from third parties, responded to questions by

EXHIBIT A

Metropolitan's claims adjuster and engineer, and submitted to examinations under oath by Metropolitan's attorney. At the same time, Metropolitan failed and refused to provide the Redmonds with basic information regarding the status of their claim.

27. For several months, the Redmonds repeatedly requested that Metropolitan provide a copy of its November 2020 expert engineering analysis of the damage to their home. Finally, in March 2021, Metropolitan provided a copy of the report to the Redmonds.

28. Metropolitan's engineering analysis was factually incorrect. It concluded that the wood framing on the Redmonds' Home "included a weather resistant barrier and then a plastic wrap." This conclusion was false. The conclusion was also not consistent with the damage to the Redmonds' home and was contradicted by the photographs and information the Redmonds previously supplied to Metropolitan.

29. The Redmonds specifically advised Metropolitan that the engineering report was factually inaccurate.

30. On June 6, 2021, nine months after the date of the damage to the Redmonds' home, Metropolitan issued a second denial letter ("the Second Denial"). A true and correct copy of Metropolitan's June 6, 2021 letter is attached as Exhibit D. The Second Denial is confusing and ambiguous. It intermixes language from the Policy with interpretations by Metropolitan without differentiation, and omits language that qualifies the exclusions it cites and operate to provide coverage.

31. After nine months of a purported "reexamination," during which

EXHIBIT A

Metropolitan demanded that the Redmonds supply extensive documentation, obtain documentation from third parties, and submit to repeated questioning by Metropolitan and its representatives, Metropolitan stated the basis for its denial in a single sentence: "Based upon the totality of its investigation, the Company has determined that the damage to the brick wall and stud framing to the addition to the home was the result of the building method used during the construction of the addition in or about 1989, namely, the extra layer of plastic wrap trapped moisture in the wall cavity, which led to the mold and deterioration of the wood sheathing behind the brick wall, and the settling, cracking, shrinking, bulging or expansion of the brick wall itself." Ex. D, pp. 2-3.

32.   The Second Denial contains several factually inaccurate statements. First, the conclusion that "an extra layer of plastic wrap trapped moisture in the wall cavity" is false – the framing at the Redmonds' home did not include a vapor barrier and an extra layer of plastic wrap as Metropolitan's engineer had falsely reported, which the Redmonds previously advised Metropolitan was a mistake. Second, there was never any mention in the Redmonds' Claim, or any of the documents they submitted to Metropolitan, or the report by Metropolitan's engineer, or during the Redmonds' sworn examination, of mold. Third, the masonry veneer wall at the Redmonds' home did not "settle, crack, shrink, bulge or expand," a surprisingly parallel determination where Metropolitan simply created facts to match a specific policy exclusion without explanation or support. Metropolitan did not even identify which of the terms describes the damage.

9

Moreover, Metropolitan's own engineer concluded the "masonry veneer lost lateral support" and began to fall away.

33.     The Second Denial also misconstrues several terms of the Policy.  The plain meaning of the policy exclusion for "wear and tear, marring, scratching, aging, deterioration" refers to normal, life-cycle, deterioration.  The Second Denial incorrectly redefines a premature failure caused by an external force as "deterioration."

34.     The Second Denial states that the "damage to the brick wall and stud framing to the addition to the home was the result of building methods used during the construction of the addition in or about 1989."  However, the Policy does not contain an exclusion for losses caused by "building methods."  The Policy contains an exclusion for "defective, inadequate, faulty or unsound…workmanship, repair, construction renovation," but Metropolitan does not assert the "building methods" themselves were "defective, inadequate, faulty or unsound."

35.     Moreover, exclusion 2, upon which Metropolitan relies, is hopelessly ambiguous, grammatically incorrect, and nonsensical:

> We do not insure under Coverage A and Coverage B for any loss consisting of one or more of the items below.  However, we pay for any ensuing loss unless the ensuing loss is itself excluded by any other provision in this policy.  Further, we do not insure for loss described in Exclusion 1. above and Exclusions 3. and 4. below regardless of whether one or more of the following: (a) directly or indirectly cause, contribute to or aggravate the loss; or (b) occur before, at the same time, or after the loss or any other cause of the loss.  The items are:
> * * *

Exhibit A, p F-3.

10

EXHIBIT A

36.     This provision makes no sense.  It states that Metropolitan does not insure for certain losses "regardless of whether one or more of the following," but the (a) and (b) referenced by the word "following" are incomprehensible fragments. Even if the provision is tortured into an interpretation that Metropolitan will not cover losses identified in exclusions 1, 3 and 4 even if those losses are also excluded by other exclusions,  this interpretation renders the entire paragraph unnecessary surplusage by providing that losses already excluded are still excluded even if another exclusion applies.

37.     Because exclusion 2 under the policy is impossible to interpret, it cannot be relied upon by Metropolitan and should be stricken from the Policy.

38.     The Second Denial also cites portions of exclusion 3 under the Policy without differentiating between actual policy language and Metropolitan's interpretation of that language.  Worse, the Second Denial specifically omits the provision that states, "We do pay for any direct loss that follows items A through H to property described in Coverages A, B and C not otherwise excluded or excepted under this policy and then we pay only for the ensuing loss."

39.     The Second Denial also states that the loss does not constitute a "collapse" and references exclusion 4 under the Policy.  The Redmonds never claimed they suffered loss due to a collapse.  Metropolitan's reference to this exclusion is completely irrelevant.

40.     The Second Denial is a breach of the Policy in that it refused to provide payment for a covered loss on the basis of factual misstatements and erroneous

EXHIBIT A

interpretations of the terms of the Policy. The Redmonds' loss is covered under the Policy and does not fall within any exclusions in the Policy.

41.     Upon information and belief, the wood framing of the addition to the Redmonds' home that suffered damage was constructed by a carpentry subcontractor who had no responsibility for the construction of the masonry veneer wall.

42.     Upon information and belief, the masonry veneer wall of the addition to the Redmonds home that suffered damage was constructed by a masonry subcontractor who had no responsibility for the construction of the wood framing.

43.     The masonry veneer wall of the addition to the Redmonds' home was properly constructed.

44.     Even if Metropolitan could prove that the premature failure of the wood framing of the addition to the Redmonds' home falls within an exclusion, the damage to the masonry veneer wall is an ensuing loss under the Policy and is therefore covered under the Policy.

## COUNT I – BREACH OF CONTRACT

45.     The Redmonds restate and incorporate the allegations of paragraph 1 through 44.

46.     The Redmonds have fully performed all of their obligations under the Policy.

47.     Metropolitan has breached the Policy by failing to pay for the losses suffered by the Redmonds as a result of the sudden and accidental direct physical

EXHIBIT A

loss or damage to their home.

48.     As a result of Metropolitan's breach, the Redmonds have suffered

damages in the amount of $242,765, together with all compensatory and

consequential damages.

WHEREFORE, the Redmonds request that the Court enter judgment in their

favor and against Metropolitan for breach of contract and award the Redmonds

damages in an amount to be determined at trial, together with their costs of suit

and any other further relief the Court deems just and proper.

## COUNT II – VIOLATION OF 215 ILCS 5/155

49.     The Redmonds restate and incorporate the allegations of paragraph 1

through 48.

50.     Metropolitan initially wrongfully issued the First Denial in violation of

the terms of the Policy and its own stated procedures for coverage evaluation and

determination.  Metropolitan has vexatiously and unreasonably delayed the

settlement of the Claim.

51.     After the Redmonds' insurance agent reported the Claim on September

16, 2020, Metropolitan made a cursory inspection of the Redmonds' Home and

declared that it performed "a careful evaluation of the facts" and had "sufficient

information at this time to make a proper decision regarding your claim."

52.     After inspecting the Redmonds' Home and interviewing the Redmonds

for a total of less than thirty minutes on September 23, 2020, Metropolitan

immediately denied coverage one day later on the basis of exclusions that are not

13

EXHIBIT A

set forth in the Policy.

53.     When the Redmonds objected to Metropolitan's incorrect recitation and interpretation of the Policy and coverage determination, Metropolitan retained attorneys who ignored the Redmonds' requests for information and embarked on a campaign of delay and harassment.  In December 2020, three months after the Redmonds submitted their claim, Metropolitan demanded that the Redmonds produce extensive, voluminous and burdensome records, photographs and financial documentation many of which were irrelevant to the claim.

54.     Despite previously stating that it had "performed a careful evaluation of the facts" and that it had "sufficient information to make a proper decision" regarding the Redmonds' claim, Metropolitan asserted that the documents and records demanded by its counsel were "necessary" for Metropolitan's investigation and its "final coverage determination."

55.     At great time, expense and inconvenience, the Redmonds timely responded to each of Metropolitan's numerous requests for information and documents.

56.     After the Redmonds requested confirmation that they had fully complied with Metropolitan's burdensome requests for documents and information, Metropolitan responded in February 2021 by demanding that the Redmonds secure additional documents from third parties, including the Redmonds' contractor and architect.

57.     The Redmonds complied with Metropolitan's additional requests and

EXHIBIT A

secured documents from third parties for Metropolitan's benefit.

58.　　Despite numerous requests for an update on the status of Metropolitan's reported reconsideration of its coverage determination, the Redmonds received no communication from Metropolitan between February 21, 2021 and April 12, 2021.

59.　　On April 12, 2021, Metropolitan demanded that the Redmonds appear and submit to "Examinations Under Oath" on April 29, 2021.  Metropolitan also demanded that "on or before April 29, 2021, the Redmonds produce "in person or through certified mail, or electronic transmission" seven categories of documents that Metropolitan claimed, "are necessary for the Metropolitan Casualty Insurance Company's investigation, and for the Company to continue and complete its review toward a final coverage determination."  Upon review, the seven categories of documents demanded in the "Notice" were identical to and duplicative of documents previously demanded and produced by the Redmonds.  A true and correct copy of Metropolitan's Notice of Examination Under Oath is attached as Exhibit D.

60.　　Prior to appearing for their Examinations Under Oath, the Redmonds advised Metropolitan that they did not wish to incur the time, expense and inconvenience of the examinations if Metropolitan had already made a final coverage determination or a final coverage determination could be made based on the information and documents previously produced.  Metropolitan did not respond. The Redmonds appeared for the Examinations Under Oath on April 29, 2021.  They were examined by counsel for Metropolitan and their testimony was transcribed by

EXHIBIT A

a licensed court reporter.

61.     The Redmonds requested copies of the transcripts of their examinations under oath.  Metropolitan has failed and refused to provide copies of the transcripts to the Redmonds.

62.     On June 6, 2021, nine months after the Redmonds submitted the Claim, Metropolitan advised the Redmonds that it had "reevaluated its original claim decision" and concluded the Claim was not covered under the Policy, now based on different grounds than the First Denial.  The Second Denial included only a single sentence conclusion asserting that the cause of the loss coincidentally tracked word for word to the exact policy exclusions but did not even specify which words in the exclusions Metropolitan believed applied to the Claim.

63.     The Policy provides that the Redmonds would have one year from the date of loss to file suit seeking coverage against Metropolitan, but that this time period would be extended by the period between the submission of a "proof of loss" and a denial by Metropolitan.

64.     During Metropolitan's nine month "reexamination," the Redmonds repeatedly asked Metropolitan to confirm they had fully complied with the terms of the Policy.  The Redmonds also asked Metropolitan to enter into a tolling agreement because of the extensive delays by Metropolitan.

65.     During its nine-month "re-examination," Metropolitan never requested a proof of loss in support of the claim form prepared by the Metropolitan agent and submitted on September 16, 2020.  The Redmonds repeatedly asked Metropolitan to

EXHIBIT A

confirm that they had complied with all terms of the Policy and for Metropolitan to enter into a tolling agreement. Metropolitan failed and refused to respond to either request.

66.     In the Second Denial, Metropolitan asserted that because the Redmonds failed to submit a proof of loss, the time for them to file suit began to run on the date of loss, September 8, 2020, and that the Redmonds had less than three months to file suit. Metropolitan attempts to limit the Redmonds' rights under the Policy by manipulating the intent of the Policy, which is to toll the time for the policyholder to file suit during the time spent by Metropolitan determining whether coverage exists.

67.     The Second Denial clearly reflects that Metropolitan had already determined it would deny the claim after its adjuster's 30-minute visit to the premises, a decision which it adopted and reaffirmed in the Second Denial. Metropolitan's "reexamination" was a ruse.

68.     Metropolitan denied the Redmonds' claim in bad faith. The Second Denial did no more than identify numerous policy exclusions and then assert without factual basis that the exclusions applied to the Redmonds' claim.   The Second Denial referenced exclusions for mold and collapse – neither of which were referred to as factors by the Redmonds, their architect, their contractor, or even by anyone at Metropolitan. The Redmonds are not seeking damages for mold and a finding of collapse is not required for coverage under the Policy.

69.     Metropolitan's failure to make a final determination of coverage for

EXHIBIT A

more than nine months, its harassing demand for information from the Redmonds, its failure and refusal to provide the Redmonds with any information regarding the status of its "reexamination," and its incomplete and inaccurate coverage determinations that the Redmonds' loss is not covered, constitute a vexatious and unreasonable failure to settle the Redmonds' claim in violation of 215 ILCS 5/155.

70.    As a result of Metropolitan's vexatious and unreasonable delay in settling the Redmonds' claim, the Redmonds are entitled to an award of their attorneys' fees and costs, plus an amount not to exceed any one of the following amounts: (a) 60% of the amount which the court or jury finds such party is entitled to recover against the company, exclusive of all costs; (b) $60,000; (c) the excess of the amount which the court or jury finds such party is entitled to recover, exclusive of costs, over the amount, if any, which the company offered to pay in settlement of the claim prior to the action.

WHEREFORE, the Redmonds request that this Court enter a judgment finding that Metropolitan has vexatiously and unreasonably delayed in settling the

18

EXHIBIT A

Redmonds' claim, and awarding the Redmonds their attorneys' fees and costs,

together with an additional assessment of costs in the amount of $60,000.00 or 60%

of the amount they are entitled to recover under the Policy, and any other relief this

Court deems just and proper.

Respectfully submitted,

Richard Redmond, Merrilee Redmond
and the Merrilee Clark Redmond Trust

By:_____

One of their attorneys

Christopher J. Murdoch
Emry Murdoch LLC
2 North Riverside Plaza, Suite 1850
Chicago IL 60606
(312) 235-4022
Chris.Murdoch@EmDoch.com

Firm No. 63008

EXHIBIT A

FILED
8/9/2021 4:21 PM
IRIS Y. MARTINEZ
CIRCUIT CLERK
COOK COUNTY, IL
2021L008013

# EXHIBIT A

EXHIBIT A

**MetLife Auto & Home®**
**Homeowner Operations Field Claim Office**
P.O. Box 6040
Scranton, PA 18505



November 5, 2020

Merrilee C. Redmond
Richard Redmond
34 Canterbury CT
Wilmette, IL  60091-2822

Our Customer:        Merrilee C. & Richard Redmond
Claim Number:        JDJ32826 5N
Date of Loss:         September 8, 2020

Dear Merrilee C. & Richard Redmond:

Enclosed is a copy of the declarations page and/or insurance policy.

If you have any questions, please contact me.

Sincerely,

Colleen Roy - FLD
Metropolitan Casualty Insurance Company
Senior Claim Adjuster
(800) 854-6011 Ext. 7491
Fax:  (866) 240-3469
Email: croy@MetLife.com

Enclosure(s):   Declaration Page/Policy

MetLife Auto & Home is a brand of Metropolitan Property and Casualty Insurance Company and its affiliates, Warwick, RI.

MPL DECPAGECOV

Printed in U.S.A  0698

EXHIBIT A

**MetLife Auto & Home®**
Dayton Customer Service Center
9797 Springboro Pike, Dayton, Ohio 45448

This is to certify that the attached insurance policy is a true and accurate representation of the insurance policy described below:

Named Insured(s): **RICHARD REDMOND**
MERRILEE C REDMOND
Policy Type: Home
Policy Number: 6531135662
Issuing Insurance Company: Metropolitan Casualty Insurance Company
As of Date: 09/08/2020

Signed by: _Dave Walter_

Notary: _Patricia L Massie_

Date: 11/4/2020



PATRICIA L MASSIE
NOTARY PUBLIC OHIO
MY COMMISSION EXPIRES 03-25-24

MetLife® Auto & Home is a brand of Metropolitan Property and Casualty Insurance Company and its Affiliates, Warwick, RI

MPL9192-078                                                                 Printed in U.S.A. 1105

EXHIBIT A

(Page 2 of 57)

**MetLife Auto & Home®**

**Metropolitan Casualty Insurance Company
GrandProtect Homeowners Declarations**

04/10/2020V
ST 12

| | |
|---|---|
| **Policy Number:** 6531135662 <br> **Policy Term:** From 06/15/2020 to 06/15/2021, 12:01 A.M. Standard Time at the location of the property insured as stated in the policy. | Page 1 of 3 <br><br> **Renewal Effective Date:** 06/15/2020 <br><br> **Bill To:** Credit Card |
| **Named Insured:** <br> RICHARD REDMOND <br> MERRILEE C REDMOND <br> 34 CANTERBURY CT <br> WILMETTE IL 60091 | **First Additional Insured:** <br> MERRILEE CLARK REDMOND TRUST <br> 34 CANTERBURY CT <br> WILMETTE IL 60091 |

**Residence Premises:** Named Insured's Address Shown Above.

| Basic Policy Coverages | Limits | Premiums |
|---|---|---|
| Blanket Property Limit: | $ 4,427,400 | |
| A - Dwelling <br> Amount: $ 2,213,700 | Included in Blanket Property Limit | $ 2,206.00 |
| B - Private Structures <br> Amount: $ 553,425 | Included in Blanket Property Limit | |
| C - Personal Property <br> Amount: $ 1,660,275 | Included in Blanket Property Limit | |
| F - Personal Liability: <br> Each Occurrence | $ 1,000,000 | $ 37.00 |
| G - Medical Payments to Others: <br> Each Person | $ 5,000 | $ 7.00 |
| Loss of Use | Actual Loss Sustained with Time Limit | |

**Causes of Property Loss**
Comprehensive Perils

**Building Property Loss Settlement**
Coverage A Plus

**Personal Property Loss Settlement**
Replacement Cost on Contents

**Additional Coverages**
Ordinance or Law Limit                    Included in Blanket Property Limit
Personal Injury Coverage
Back Up of Sewer, Drain and Sump Pump Coverage
  $10,000 Limit, $1,000 Deductible

**Optional Coverages**
Schedule of Personal Property (See Attached)                    $        8.00

**Current Annual Premium: $ 2,258.00**

**Deductible(s)**
  $1000 deductible applies to each loss.

| **Forms and Endorsements:** | HP1000 0902 | HP2300 0205 | HP3500 0904 | HP4410 0110 |
|---|---|---|---|---|
| HP5100 0105 | HP6200 0205 | HP7000 0902 | C114B 0813 | C116A 0611 | HA01IL 0705 |
| HF80IL 0904 | | | | |

MetLife Auto & Home is a brand of Metropolitan Property and Casualty Insurance Company and its affiliates, Warwick, RI.

MPL 1380-000

Printed in U.S.A. 0298

EXHIBIT A

**MetLife Auto & Home®**

**Metropolitan Casualty Insurance Company**
**GrandProtect Homeowners Declarations**

04/10/2020V
ST 12

| | |
|---|---|
| **Policy Number:** 6531135662 | Page 2 of 3 |
| **Policy Term:** From 06/15/2020 to 06/15/2021, 12:01 A.M. Standard Time at the location of the property insured as stated in the policy. | **Renewal Effective Date:** 06/15/2020<br><br>**Bill To:** Credit Card |

**Discounts** for the following have been included in the current annual premium:

* 10% MetRewards Discount
* 26% Home Policy Plus, Including Automobile
* 15% Protective Device Discount

## Rating Information

| | | |
|---|---|---|
| Territory 95 | 1 Family | Masonry Construction |
| Composition Roof | Insured DOB 10/04/1947 | Built in 1908 |
| Roof Age 12 Years | Co-Insd DOB 09/05/1947 | Updated in 1990 |

## Messages

Your policy has been renewed. Please read all items shown on this renewal Declarations Page to ensure that you have your desired protection.

Inflation Protection: Your Blanket Property Limit for Coverages A, B, C, reflects the construction price index increase of 5.6%.

As per your Policy Contract's Insurance Agreement and Declarations and General Conditions, Paragraph 2. Concealment or Fraud, this policy is issued based on your true and accurate representations of all the information contained in your application, and which you provided to the Company during the application process, including but not limited to the following regarding your prior losses:

No loss(es) in the past 5 years as provided on your new business application.

The cost of any coverage indicated as "Incl" is included in the Basic Policy Coverages premium amount.

This Policy Does Not Provide Coverage for Flood Damage.

Your package policy includes a Single Deductible Loss Clause which protects you from paying more than one deductible in the event of a covered loss that affects more than one product. Please read the endorsement carefully for details.

## Additional Insured/Mortgagee

First Additional Insured: MERRILEE CLARK REDMOND TRUST
The definition of the insured is amended to include the person or organization shown above, with respect to coverages A, B, F and G, at the insured premises only.

| | |
|---|---|
| For claims, see Claim Directory. | Your agency is:<br>SCHULZ BRUNDAGE INC<br>Tel: 630-968-4810<br>7SJ-055-1 |

MetLife Auto & Home is a brand of Metropolitan Property and Casualty Insurance Company and its affiliates, Warwick, RI.

EXHIBIT A

Case: 1:21-cv-04885 Document #: 1-1 Filed: 09/15/21 Page 25 of 93 PageID #:28

(Page 4 of 57)
**MetLife Auto & Home®**

**Metropolitan Casualty Insurance Company**
**GrandProtect Homeowners Declarations**

04/10/2020V
ST 12

| | |
|---|---|
| **Policy Number:** 6531135662 | Page 3 of 3 |
| **Policy Term:** From 06/15/2020 to 06/15/2021, 12:01 A.M. Standard Time at the location of the property insured as stated in the policy. | **Renewal Effective Date:** 06/15/2020  **Bill To:** Credit Card |

### Schedule of Personal Property

| Class | Item | Amount of Insurance | Description | | |
|---|---|---|---|---|---|
| 7B | 01 | $2,000 | STILL LIFE PHOTO BY ARTIST PASCAL KERN CALLED 'FICTION C OLOREE' IN METAL FRAME. In consideration of the additional premium charged, Breakage Included on item(s) 01 | | |
| | | **$2,000** | **Fine Art Premium** | $ | 8.00 |
| | | | **Total Annual SPP Premium** | $ | 8.00 |

MetLife Auto & Home is a brand of Metropolitan Property and Casualty Insurance Company and its affiliates, Warwick, RI.

EXHIBIT A

Case: 1:21-cv-04885 Document #: 1-1 Filed: 09/15/21 Page 26 of 93 PageID #:29

# MetLife Auto & Home®

# Homeowners
# Insurance Policy

MetLife Auto & Home is a brand of Metropolitan Property and Casualty Insurance Company and its Affiliates, Warwick, RI

Printed in U.S.A. 0902

EXHIBIT A

THE COMPANY NAMED IN THE DECLARATIONS
(A Stock Insurance Company)
Administrative Offices: Warwick, Rhode Island

# HOMEOWNERS INSURANCE POLICY

## TABLE OF CONTENTS

**HOME**                                                                    PAGE A-1

   **INSURANCE AGREEMENT AND DECLARATIONS**                          A-1
   **GENERAL DEFINITIONS**                                          A-1
   **SECTION I - COVERAGES**                                        B-1
      Coverage A - Dwelling
      Coverage B - Private Structures

**CONTENTS AND ADDITIONAL COVERAGES**                                       C-1

   **COVERAGE C - PERSONAL PROPERTY**                               C-1
      Personal Property Covered
      Special Limitations on Certain Property
      Personal Property Not Covered
   **SECTION I - ADDITIONAL COVERAGES**                             D-1
      Loss of Use
      Debris Removal
      Reasonable Repairs
      Fire Department Charges
      Emergency Removal of Property
      Emergency Living Expense
      Refrigerated Contents
      Credit Card, Electronic Fund Transfer Card, Forgery and Counterfeit Money
      Data and Records
      Lock Replacement
      Reward Coverage
      Trees, Shrubs, Plants and Lawns
      Loss Assessment
      Land
      Volcanic Action
      Collapse
      Inflation Protection
      Landlord's Furnishings
      Fungus and Mold Remediation

**CAUSES OF PROPERTY LOSS**                                                 E-1

   **SECTION I - LOSSES WE COVER**                                  E-1
      Loss Deductible Clause
      Coverage A - Dwelling
      Coverage B - Private Structures
      Coverage C - Personal Property
   **SECTION I - BROAD NAMED PERILS**                               E-1
   **SECTION I - LOSSES WE DO NOT COVER**                           F-1

**PROPERTY LOSS SETTLEMENT**                                                G-1

   **SECTION I - HOW WE SETTLE A PROPERTY LOSS**                    G-1
      Coverage A - Dwelling and Coverage B - Private Structures
      Coverage C - Personal Property

EXHIBIT A

**PROPERTY CONDITIONS**                                                                                    PAGE  H-1

   **SECTION I - CONDITIONS**                                                                   H-1
     Insurable Interest and Limit of Liability
     What You Must Do After a Loss
     Our Settlement Options
     Loss
     Loss to a Pair or Set
     Abandoned Property
     Appraisal
     Rights and Duties of Mortgagee
     No Benefit to Bailee

**LIABILITY, MEDICAL EXPENSES AND OPTIONAL COVERAGES**                                        I-1

   **SECTION II - LOSSES WE COVER**                                                            I-1
     Coverage F - Personal Liability
     Coverage G - Medical Payments to Others
   **SECTION II - LOSSES WE DO NOT COVER**                                                 I-1
     Coverage F - Personal Liability and Coverage G - Medical Payments to Others
     Coverage F - Personal Liability
     Coverage G - Medical Payments to Others
   **SECTION II - ADDITIONAL COVERAGES**                                                   J-1
     Damage to Property of Others
     Claim Expenses
     First Aid Expenses
     Loss Assessment
   **SECTION II - CONDITIONS**                                                             K-1
     Your Duties in the Event of an Accidental Loss
     What an Injured Person Must Do Under Coverage G - Medical Payments to Others
   **OPTIONAL COVERAGES**                                                                  L-1
     Earthquake
     Home Computer
     Private Structures Rented to Others
     Business Pursuits
     Watercraft Liability
     Incidental Business Occupancy by You

**GENERAL CONDITIONS**                                                                        M-1

     Policy Period
     Concealment or Fraud
     Conformity to Statute
     Death
     Policy Changes
     Assignment
     Bankruptcy or Insolvency
     Our Recovery Right
     Lawsuit Against Us
     Other Insurance and Service Agreement
     Premium
     Cancellation
     Nonrenewal

EXHIBIT A

HP1000 0902

# HOME

### INSURANCE AGREEMENT AND DECLARATIONS

This insurance policy is a legal contract between **you** (the policyowner) and **us** (the Company named in the Declarations). It insures **you** and **your** property for the various kinds of insurance shown in the Declarations. The Declarations are an important part of this policy. By acceptance of this policy, **you** agree that the statements contained in the Declarations and in any application are **your** true and accurate representations. This policy is issued and renewed in reliance upon the truth of such representation. The terms of this policy impose joint obligations on all persons defined as **you.** This means that the responsibilities, acts and failures to act of a person defined as **you** will be binding upon another person defined as **you.**

This policy is issued and renewed in reliance upon payment of the required premium. The exact terms and conditions are explained in the following pages.

### GENERAL DEFINITIONS

The following words and phrases appear repeatedly throughout this policy. They have a special meaning and are to be given that meaning whenever used in this policy or any endorsement which is part of this policy.

**"Actual cash value"** means the amount which it would cost to repair or replace covered property with material of like kind and quality, less allowance for physical deterioration and depreciation including obsolescence.

**"Bodily injury"** means any physical harm to the body including any resulting sickness or disease. This term includes required care, loss of services and death if it is a result of such physical harm, sickness or disease. **Bodily injury** does not include:
1. any of the following which are transmitted by **you** to any other person: disease, bacteria, parasite, virus or other organism;
2. the exposure to any such disease, bacteria, parasite, virus or other organism by **you** to any other person;
3. the actual, alleged or threatened sexual molestation of a person; or
4. emotional distress, mental anguish, humiliation, mental distress, mental injury, or any similar injury unless the direct result of physical harm.

**"Business"** or **"business purposes"** means:
1. any full or part time activity of any kind engaged in for economic gain, and the use of any part of any premises for such purposes; and
2. **your** property rented or held for rental by **you.** Rental of the **residence premises** is not considered business when:
   A. it is rented occasionally for use as a residence;
   B. a portion is rented to no more than two roomers or boarders; or
   C. a portion is rented as a private garage.

**"Computer"** means a programmable electronic device that can store, retrieve and process data.

**"Fungus and mold"** means fungi, mold, mushrooms, bacteria, mildew, wet rot or dry rot and any mycotoxins, spores, scents or by-products produced by any of these.

**"Insured premises"** means:
1. the **residence premises** described in the Declarations;
2. any other premises specifically named in the Declarations and used by **you** as a residence;
3. any premises acquired by **you** during the term of this policy and used by **you** as a residence;
4. any premises used by **you** in connection with a premises described in 1., 2. or 3. above;
5. any premises not owned by **you** but where **you** may be temporarily residing;
6. any part of a premises occasionally rented to **you** for other than **business purposes;**
7. vacant land owned by or rented to **you,** other than farm land;

EXHIBIT A

8. land owned or rented by **you** on which a one or two family dwelling is being constructed for **your** use as a residence; and

9. individual or family cemetery plots or burial vaults owned by **you.**

**"Media"** means the storage device upon which software is stored. This includes blank cassette tapes or disks used solely with the **computer** or **peripheral device.**

**"Medical expenses"** means reasonable expenses for necessary medical, surgical, x-ray, chiropractic, a mbulance, hospital, professional nursing, funeral and dental services, including prosthetic devices.

**"Occurrence"** means an accident, including continuous or repeated exposure to substantially the same general harmful conditions during the term of the policy.

**"Peripheral device"** means any unit used to operate with the **computer** system. This includes tape or disk drives or printers.

**"Personal injury"** means injury arising out of one or more of the following offenses:

1. false arrest, false imprisonment or wrongful detention;
2. malicious prosecution;
3. wrongful eviction from or wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or in behalf of its owner, landlord or lessor;
4. oral, written or representational publication of material that slanders or libels a person or organization;
5. oral statements or publication of writings or pictures that falsely disparages a person's or organization's goods, products or services; or
6. oral statements or publication of writings or pictures that violates a person's right of privacy.

**"Property damage"** means physical damage to or destruction of tangible property, including loss of use of this property.

**"Purchased software"** means information or a program that is stored on a storage device such as a magnetic tape or disk for use on a **computer,** and has been purchased from another party.

**"Residence employee"** means **your** employee while performing duties arising out of and in the course of employment by **you** in connection with the maintenance or use of the **residence premises,** including similar duties elsewhere, not in connection with **your business.** This includes an employee leased to **you** by a labor leasing firm under an agreement with **you.**

**"Residence premises"** means:

1. a one, two, three or four family dwelling used as a private residence by **you** and named in the Declarations. This includes the private structures and private approaches; or
2. if **your** dwelling is a condominium, cooperative or leased property, the premises reserved for **your** exclusive occupancy and use, used as a private residence by **you** and named in the Declarations. This includes the private structures and private approaches if these are reserved for **your** exclusive occupancy and use.

This does not include any portion of a premises used for **business purposes.**

**"We," "us,"** and **"our,"** mean the Company named in the Declarations.

**"You"** and **"your"** mean:

1. the person or persons named in the Declarations and if a resident of the same household:
   A. the spouse of such person or persons;
   B. the relatives of either; or
   C. any other person under the age of twenty-one in the care of any of the above; and
2. under **SECTION II** only:
   A. any other person or organization legally responsible for loss caused by animals or watercraft owned by **you. We** will not cover any such person or organization using or having custody of animals or watercraft in any **business** or without **your** permission; and

EXHIBIT A

HOME                                                           HP1000 0902

B.  with respect to the use of any vehicle, with **your** consent, to which this policy applies:
    1.  any person while engaged in employment by **you;** or
    2.  other persons using the vehicle on the **insured premises.**

## SECTION I - COVERAGES

### COVERAGE A - DWELLING

1.  **Dwelling Owners.**  If **your** dwelling is a one, two, three or four family dwelling, **we** cover:
    A.  the dwelling owned by **you** on the **residence premises;** and
    B.  structures, equipment and accessories attached to the dwelling.  Swimming pools not fully enclosed within the dwelling are covered under **COVERAGE B - PRIVATE STRUCTURES.**

2.  **Condominium Owners.**  If **your** dwelling is a condominium or cooperative, **we** cover:
    A.  the alterations, appliances, fixtures, and improvements and items of real property attached to **your** unit on the **residence premises;** and
    B.  property which is **your** insurance responsibility under a corporation or association of property owners agreement.

3.  **Renters.**  If **your** dwelling is leased property, **we** cover the alterations, appliances, fixtures and improvements made or acquired at **your** expense which are part of the building and contained within the **residence premises** occupied, but not owned, by **you.**

**We** cover building equipment, materials and supplies, to the extent of **your** financial interest, located on or adjacent to the **residence premises** for use in connection with maintenance, construction, alteration, or repair of the dwelling or private structures on the **residence premises.**

This coverage does not apply to land, including land on which the dwelling is located, or any costs required to replace, rebuild, stabilize or otherwise restore the land.

### COVERAGE B - PRIVATE STRUCTURES

At the location of the **residence premises:**
1.  **we** cover private structures owned by **you** and separated from the dwelling by clear space; or
2.  if **your** dwelling is a condominium, cooperative or leased property, **we** cover private structures:
    A.  owned solely by **you** and separated from the dwelling by clear space; or
    B.  available for **your** exclusive use and which are **your** insurance responsibility under a corporation or association of property owners agreement.
    Equipment, accessories, alterations, appliances, fixtures and improvements made or acquired at **your** expense which are attached to the private structure are also covered.

Structures connected to the dwelling by only a fence, utility line, or similar connection are considered to be private structures.

**We** do not cover private structures:
1.  used or held for any **business** or commercial farming purposes; or
2.  rented or held for rental to a person not a tenant of the dwelling, unless solely used as a private garage.

This coverage does not apply to land, including land on which the private structures are located, or any costs required to replace, rebuild, stabilize or otherwise restore the land.

EXHIBIT A

HP2300 0205

# CONTENTS AND ADDITIONAL COVERAGES

## COVERAGE C - PERSONAL PROPERTY

**Personal Property Covered**
**We** cover personal property owned or used by **you** while it is anywhere in the world.

After a loss and at **your** option, this coverage may be extended to include personal property owned by:
1. others while on that portion of the **residence premises** occupied by **you;** or
2. a guest or **residence employee,** while the property is in a residence occupied by **you.**

If a covered loss occurs at the **residence premises, we** will pay up to the limit of liability for personal property for the location shown in the Declarations where the personal property is damaged, destroyed or stolen.

If a covered loss occurs away from **your** residence, **we** will pay up to the limit of liability shown in the Declarations for the selected single location from which the payment is to be made.

If a covered loss occurs at **your** residence not covered by **this** insurance or another policy for personal property issued to **you** by Metropolitan Property and Casualty Insurance Company or any of its affiliates, **we** will pay up to 10% of the Blanket Property Limit shown in the Declarations for the selected single location that provides the greatest coverage from which the payment is to be made. Personal property in a newly acquired principal residence is not subject to this limitation for the 30 days immediately after **you** begin to move **your** property there.

**We** will select a **residence premises** for personal property from which the payment is to be made for covered loss based upon the most favorable combination of the following:
1. **our** limit of liability and deductible;
2. the basis of loss settlement under **SECTION I - HOW WE SETTLE A PROPERTY LOSS;** and
3. the perils covered under **SECTION I - LOSSES WE COVER.**
Regardless of the number of policies or insured locations providing **you** with personal property coverage, payment will be made based only on this selected location.

**Special Limitations on Certain Property**
**We** will not pay more than the following amount for each category in any one loss. These limitations do not increase the amount of insurance under **COVERAGE C - PERSONAL PROPERTY.**

1. **Money.** $1000 for coins and currency at face value, bullion, bank notes, medals and scrip. It also includes stored value cards for which there exists no traceable connection to **you** or for which no account is established in **your** name.
   If Increased Coverage on Money is shown in the Declarations, then the $1000 limit is increased to the amount shown.
2. **Securities.** $5000 for securities, checks, cashier's checks, traveler's checks, money orders and other negotiable instruments, accounts, bills, deeds, evidences of debt, letters of credit, notes other than bank notes, passports, stamps at face value, and tickets.
3. **Manuscripts.** $5000 for manuscripts, including the cost to research, replace or restore the information from the lost or damaged material.
4. **Jewelry.** $5000 for each of the following for loss by theft, misplacing or losing: jewelry, including loose precious and semi-precious stones; watches; and furs.
5. **Watercraft.** $1500 for watercraft, of all types, including their trailers, furnishings, equipment and outboard motors.
6. **Trailers.** $2000 for trailers not used with watercraft.
7. **Business Property.** $2500 for any property on the **residence premises** used or intended for use in a **business.** $500 for any property away from the **residence premises** used or intended for use in a **business.** This includes merchandise held as samples or for sale or delivery after a sale. This does not include any **computer** and the **peripheral device, media** or **purchased software** used with it.
   If Increased Coverage on Business Property is shown in the Declarations, then the $2500 limit for property on

EXHIBIT A

# CONTENTS AND ADDITIONAL COVERAGES    HP2300 0205

the **residence premises** is increased to the amount shown and the limit of liability for loss away from the **residence premises** will be 20% of the amount shown.

8. **Computers.** $5000 for **business computers** and the **peripheral device(s), media** and **purchased software** used with them. The **media** will be covered only up to its retail value, if pre-programmed, or the retail value of the **media** in blank or unexposed form, if blank or self-programmed.

9. **Firearms.** $5000 for loss by theft, misplacing or losing of firearms and related equipment.

10. **Silverware and Goldware.** $10,000 for loss by theft, misplacing or losing of silverware and goldware.
   If Increased Coverage on Silverware and Goldware is shown in the Declarations, then the $10,000 limit is increased to the amount shown.

11. **Coin, Currency and Stamp Collections.** $5000 for numismatic and philatelic property for which the age, history, scarcity and condition contribute substantially to their value. Numismatic property includes coins and paper currency. Philatelic property includes postage stamps, postmarks, post cards and stamped envelopes.

12. **Memorabilia.** $10,000 for memorabilia, souvenirs, and collectors items such as trading cards, comic books, autographed merchandise and similar articles for which the age, history, scarcity and condition contribute substantially to their value.
   If Increased Coverage on Memorabilia is shown in the Declarations, then the $10,000 limit is increased to the amount shown.

13. Does Not Apply.

14. **Compact Discs.** $1000 for loss by theft of tapes, wires or discs while in or upon a motorized land vehicle. This limit includes loss by misplacing or losing when Comprehensive Perils is shown in the Declarations.

## Personal Property Not Covered

1. **We** do not cover articles separately described and specifically insured, regardless of the limit for which they are insured, by this or any other policy.

2. **We** do not cover animals, birds or fish.

3. **We** do not cover any motorized land vehicles and parts. **We** do not cover such property whether owned or operated by, or rented or loaned to **you.** This includes:
   A. their equipment and accessories; or
   B. electronic apparatus that is designed to be operated solely by use of the power from the electrical system of motorized land vehicles. Electronic apparatus includes accessories or antennas for use with any electronic apparatus.
   The exclusion of property described in items 3.A. and 3.B. above applies only while the property is in or upon the vehicle.
   However, **we** cover unlicensed motorized land vehicles, not subject to registration, which are used solely to service and maintain residential property or designed for assisting the handicapped.

4. **We** do not cover aircraft and parts. Aircraft including self-propelled missiles and spacecraft means any contrivance used or designed for flight, except model or hobby aircraft not used or designed to carry people or cargo.

5. **We** do not cover property of roomers and boarders not related to **you.**

6. **We** do not cover property of tenants, whether related to **you** or not.

7. **We** do not cover property regularly rented or held for rental to others when on the **residence premises** except as granted under **SECTION I - ADDITIONAL COVERAGES** for Landlord's Furnishings.

8. **We** do not cover property rented or held for rental to others when not on the **residence premises;**

9. **We** do not cover **business** and personal data and records including such data stored in books of account, abstracts, drawings, card index systems and other records. This exclusion does not apply to property covered under **SECTION I - ADDITIONAL COVERAGES** for Data and Records.

10. **We** do not cover **media** for electronic data processing that cannot be replaced with other of like kind and quality on the current retail market.

11. **We** do not cover credit cards, electronic fund transfer cards or access devices except as granted under **SECTION I - ADDITIONAL COVERAGES** for **Credit Card Protection.**

## SECTION I - ADDITIONAL COVERAGES

The deductible will not apply to Section I - Additional Coverages, except where specified in the Additional Coverage.

1. **Loss of Use.** The limit of liability for Loss of Use is the total limit for the coverages in A. and B. below.
   A. **Additional Living Expense / Fair Rental Value.** This applies upon loss to covered property resulting from a covered cause of loss. However, this does not apply for damages resulting from **fungus and**

EXHIBIT A

# CONTENTS AND ADDITIONAL COVERAGES     HP2300 0205

**mold.** When a covered property loss makes that part of the **residence premises** where **you** reside not fit to live in, **we** will pay, at **your** choice, <u>either</u> of the following. However, if the **residence premises** is not **your** principal place of residence, **we** will not provide the option under paragraph 2. below.

1. **Additional Living Expense. We** will pay the reasonable increase in living expenses necessary to maintain **your** normal standard of living. **Our** liability will not exceed the smallest of:
   a. payment for the shortest time to either repair or replace the **residence premises.** This period of time is not limited by the expiration of this policy;
   b. payment for the shortest time for **your** household to settle elsewhere, if **you** permanently relocate. This period of time is not limited by the expiration of this policy; or
   c. the limit of liability for Loss of Use as specified in the policy Declarations for up to two years.

2. **Fair Rental Value. We** will pay the fair rental value of that part of the **residence premises** where **you** reside less any expenses that do not continue while the premises is not fit to live in. **Our** liability will not exceed the smallest of:
   a. payment for the shortest time to either repair or replace the **residence premises.** This period of time is not limited by the expiration of this policy;
   b. payment for the shortest time for **your** household to settle elsewhere, if **you** permanently relocate. This period of time is not limited by the expiration of this policy; or
   c. the limit of liability for Loss of Use as specified in the policy Declarations for up to two years.

B. **Loss of Rental Income.** This applies upon loss to covered property resulting from a covered cause of loss. However, this does not apply for damages resulting from **fungus and mold. We** will pay **your** loss of rental income resulting from a covered property loss less charges and expenses which do not continue, while the part of the **residence premises you** rent to others, or hold for rental, is uninhabitable. Payment will be for the shortest time required to repair or replace the rented part. Payment for the shortest time required will not exceed twelve months. This period of time is not limited by the expiration of this policy. **We** do not cover the loss or expense due to cancellation of a lease or agreement.

C. **Prohibited Use. We** will pay the reasonable increase in living expenses necessary to maintain **your** normal standard of living and the loss of fair rental income when access to the **residence premises** is denied by civil authorities because of a loss to a neighboring premises caused by a peril **we** insure against. Payment is for a period of time not to exceed forty-five days. The period of time is not limited by expiration of this policy.

2. **Debris Removal**
   A. **We** will pay reasonable expenses **you** incur to remove:
      1. debris of covered property resulting from a cause of loss **we** cover for the damaged property; or
      2. ash, dust or particulate matter from a volcanic action that has caused direct loss to a building or covered personal property in a building.
      This expense is included within **our** limit of liability that applies for the covered property. If the amount payable for the actual damage to the property plus the debris removal expense is more than **our** limit of liability for the covered property, **we** will pay up to an additional 10% of that limit for debris removal.

   B. **We** will also pay up to $500 for any one loss for the reasonable expenses **you** incur for the removal from **your residence premises** of:
      1. **your** tree(s) felled by windstorm, hail or the weight of ice, snow or sleet; or
      2. **your** neighbor's tree(s) felled by a loss caused by **SECTION I - BROAD NAMED PERILS** provided the tree:
         a. caused damage to property covered under **COVERAGE A - DWELLING** or **COVERAGE B - PRIVATE STRUCTURES;**
         b. blocks a driveway on the **residence premises** which prevents a motor vehicle from entering or leaving the **residence premises;** or
         c. blocks a ramp or other fixture designed to assist a handicapped person to enter or leave the dwelling.

3. **Reasonable Repairs. We** will pay the reasonable expenses **you** incur for necessary immediate and

EXHIBIT A

## CONTENTS AND ADDITIONAL COVERAGES    HP2300 0205

temporary repairs to protect covered property from further loss following a loss **we** cover. This coverage does not increase the limit of liability applying to the property being repaired.

4. **Fire Department Charges. We** will pay up to $1000 for **your** liability assumed by contract or agreement when a fire department is called to save or protect the **residence premises** from an insured peril. **We** do not cover fire department service charges if the property is located within the limits of the city, municipality or protection district furnishing the fire department response.

5. **Emergency Removal of Property. We** will pay for loss to covered property from any cause while being removed from a premises because of danger from a loss **we** cover. This coverage also applies to the property for up to 30 days from the date of removal. **We** will also pay for reasonable expenses **you** incur for the removal and return of the covered property. This coverage does not increase the limit of liability applying to the property being removed.

6. **Emergency Living Expense. We** will pay up to $500 for the reasonable increase in living expenses **you** incur due to a power interruption to the **residence premises.** The power interruption must take place away from the **residence premises.** The cause for the power interruption must not be due to purposeful retraction of power by the utility or power grid authority resulting in a planned electrical brownout or blackout. Coverage does not begin until 48 hours after the power interruption begins.

7. **Refrigerated Contents. We** will pay up to $1500 for the contents of a freezer or refrigerated food storage unit on the **residence premises** for loss due to a mechanical failure or power interruption. If mechanical failure or power interruption is known to **you,** all reasonable means must be used to protect the property from further damage or this coverage is void. The policy deductible does apply to this coverage. The cause for the power interruption must not be due to purposeful retraction of power by the utility or power grid authority resulting in a planned electrical brownout or blackout.

8. **Identity Theft and Credit Protection Plus**
   A. **Identity Theft Resolution. We** will provide, at **our** expense, a representative of **our** choice to assist **you** in resolving issues of unauthorized use of **your** identity or **your** credit information. **Our** obligation under this provision is limited to paying for the services of a representative of **our** choice. The expense of this assistance will not reduce the amount paid under this coverage.

   B. **Identity Theft Expenses. We** will pay up to $25,000 for reimbursement expenses incurred by **you** as the direct result of any one identity fraud first discovered or learned of during the policy period. Any act or series of acts committed by one or more persons, or in which such person or persons are aiding or abetting others against **you,** is considered to be one identity fraud, even if that one identity fraud continues into a subsequent policy period.

   Exclusions. **We** do not cover:
   1. loss arising out of or in connection with a **business;**
   2. reimbursement expenses incurred due to any fraudulent, dishonest or criminal act by **you** or any person aiding or abetting any person defined as **you,** or by any representative authorized by **you,** whether acting alone or in collusion with others; or
   3. loss other than reimbursement expenses.

   Conditions
   1. **We** will not make a duplicate payment under this coverage for reimbursement expenses for which payment has already been made by any other source.
   2. Within 60 days after **our** request, **you** must file with **us** a signed and sworn proof of loss, stating to the best of **your** knowledge, **your** claim for reimbursement expenses for loss under identity fraud and send to **us** any receipts, bills or other records that support **your** claim.

---

EXHIBIT A

# CONTENTS AND ADDITIONAL COVERAGES     HP2300 0205

**Definitions**
Identity fraud means the act of knowingly transferring or using, without lawful authority, a means of identification of any person defined as **you** with the intent to commit, or to aid or abet another to commit, any unlawful activity that constitutes a violation of federal law or a felony under any applicable state or local law.

Reimbursement expenses are:
a. costs for notarizing affidavits or similar documents attesting to fraud required by financial institutions or similar credit grantors or credit agencies;
b. costs for certified mail to law enforcement agencies, credit agencies, financial institutions or similar credit grantors;
c. charges incurred for long distance telephone calls to merchants, law enforcement agencies, financial institutions or similar credit grantors, or credit agencies to report or discuss an actual identity fraud;
d. lost income resulting from time taken off work to complete fraud affidavits, meet with or talk to law enforcement agencies, credit agencies and/or legal counsel, up to a maximum payment of $250 per day. Total payment for lost income is not to exceed $5000;
e. loan application fees for re-applying for a loan or loans when the original application is rejected solely because the lender received incorrect credit information;
f. lease application fees for re-applying for a lease or leases when the original application is rejected solely because the lender received incorrect credit information; and
g. reasonable attorney fees incurred as a result of identity fraud to:
   (1) defend lawsuits brought against **you** by merchants, financial institutions or their collection agencies;
   (2) remove any criminal or civil judgments wrongly entered against **you**; and
   (3) challenge the accuracy or completeness of any information in a consumer credit report.

C. **Credit Card Protection.** **We** will pay up to $10,000 for loss:
1. that **you** are legally required to pay because of the unauthorized use of any credit card or electronic fund transfer card issued to or registered in **your** name;
2. to **you** caused by forgery or alteration of any check or negotiable instrument; and
3. to **you** through acceptance in good faith of counterfeit United States or Canadian paper currency.

Exclusions. **We** will not pay:
1. more than the limit of liability stated above. All loss due to forgery or unauthorized use by any one person or in which that person is concerned is considered one loss;
2. any loss arising out of **your** dishonesty; or
3. any loss resulting from **your** business activities.

D. **Defense**
1. **We** may make any investigation and settle any claim or suit that **we** decide is appropriate. **Our** obligation to defend any claim or suit ends when the amount **we** pay for the loss equals **our** limit of liability.
2. If a suit is brought against **you** for liability under the Identity Theft and Credit Protection Plus coverage, **we** will provide a defense at **our** expense and by counsel of **our** choice.
3. **We** have the option to defend **you** or **your** bank, at **our** expense, against any suit for the enforcement of payment under the Forgery coverage.

9. **Data and Records.** **We** will pay up to $2500 for data and records when loss or damage is caused by **SECTION I - BROAD NAMED PERILS** or by computer virus. This includes the cost of blank books, cards or other blank material plus the cost of labor **you** incur to research, transcribe, copy, replace or restore the information from the lost or damaged material. Computer virus means an illegal or malicious entry into **your computer** which results in functions that distort, corrupt or manipulate the **computer, peripheral device** or **media.**

10. **Lock Replacement.** **We** will pay the reasonable expenses to replace the exterior door lock or lock cylinder of the **residence premises** with a lock of like kind and quality when a key to the lock has been stolen. **You** must report the theft to **us** and the police within 24 hours after discovery.

---

EXHIBIT A

## CONTENTS AND ADDITIONAL COVERAGES    HP2300 0205

11. **Reward Coverage. We** will pay 10% of the amount of the loss to the **residence premises** up to $5000 to anyone providing information leading to an arson conviction in connection with the loss.

**We** will pay anyone providing information leading to the recovery of personal property stolen from **you** 10% of the value of the recovered property up to $5000.

**We** will pay 10% of the amount of the loss up to $1000 to anyone providing information leading to the arrest and conviction of anyone who robs, steals or burglarizes **your** property.

These amounts shall not be increased regardless of the number of persons providing information. These coverages are in addition to the limit of liability applying to the damaged property.

12. **Trees, Shrubs, Plants and Lawns.** Coverage applies to direct loss caused by: fire or lightning, theft, explosion, aircraft, riot or civil commotion, vandalism or malicious mischief, vehicles not owned or operated by an occupant of the **residence premises,** or collapse of a building structure or any part of a building structure. This coverage is in addition to the limits of liability applying to Section I Property.

**We** will pay up to $500 for any one tree, shrub or plant. **We** will pay up to 5% of the Coverage A - Dwelling Amount for loss to trees, shrubs, plants and lawns at the **residence premises.** If **your** dwelling is a condominium, cooperative or leased property, **we** will pay up to 5% of the Coverage C - Personal Property Amount.

If Increased Coverage on Trees, Plants and Shrubs is shown in the Declarations, **we** will pay up to $1000 for any one tree, shrub or plant. **We** will pay up to 10% of the Coverage A - Dwelling Amount for loss to trees, shrubs and plants at the **residence premises** or 5% of the Coverage A - Dwelling Amount for loss to lawns at the **residence premises.** If **your** dwelling is a condominium, cooperative or leased property, **we** will pay up to 10% of the Coverage C - Personal Property Amount for loss to trees, shrubs and plants or 5% of the Coverage C Personal Property Amount for loss to lawns at the **residence premises.**

**We** do not cover trees, shrubs, plants and lawns grown for **business purposes.**

The policy deductible does apply to this coverage.

13. **Loss Assessment. We** will pay up to $10,000 for **your** share of any loss assessment charged during the policy period against **you** by a corporation or association of property owners. This coverage applies only to loss assessments charged against **you** as owner or tenant of the **residence premises.**

If Increased Loss Assessment is shown in the Declarations, then the $10,000 limit is increased to the amount shown.

This only applies when the assessment is made as a result of each direct loss to the property, owned by all members collectively, caused by a peril covered under **SECTION I - LOSSES WE COVER** for **COVERAGE A - DWELLING.** This coverage does not include loss caused by:
A. earthquake; or
B. land shock waves or tremors before, during or after a volcanic eruption.

Regardless of the number of assessments, the limit referenced above is the most **we** will pay with respect to any one loss.

This coverage shall be excess over any other insurance covering the corporation or association of property owners. This specific provision does not apply if **your** assessment results from a deductible in the policy of insurance purchased by a corporation or association of property owners.

A $250 deductible does apply to this coverage unless **you** also have a loss covered under Section I Coverage A, B or C from the same event.

MPL 8113-000    Printed in U.S.A. 0205      **D-4**        Page 6   of 9

EXHIBIT A

# CONTENTS AND ADDITIONAL COVERAGES    HP2300 0205

This coverage is in addition to the limit of liability applying to the Coverage A, B or C property.

**We** do not cover assessments charged against **you** or a corporation or association of property owners by any governmental body.

14. **Land.** If a structure covered under Coverage A or Coverage B sustains a covered loss, then **we** will pay up to $10,000 for the cost **you** incur to replace, rebuild, stabilize or otherwise restore the land necessary to support that portion of the structure that **you** own. This coverage is in addition to the limit of liability applying to the damaged property.
**We** will not pay for any:
   A. loss caused by chemicals in the soil or resulting from the release of toxic materials or other pollutants or contaminants; or
   B. assessment charged against **you** by a corporation or association of property owners.

15. **Volcanic Action. We** will pay for direct physical loss to a covered building or covered property in a building resulting from the eruption of a volcano when direct loss is caused by:
   A. volcanic blast or airborne shock waves;
   B. ash, dust or particulate matter; or
   C. lava flow.

One or more volcanic eruptions that occur within a 72-hour period shall be considered one volcanic eruption.

This coverage does not increase the limit of liability applying to the damaged property.

The policy deductible does apply to this coverage.

16. **Collapse. We** will pay for sudden and accidental direct physical loss to covered property involving the entire collapse of a building or any part of a building caused only by one or more of the following:
   A. perils described in **SECTION I - BROAD NAMED PERILS;**
   B. hidden decay of the structure;
   C. hidden insect or hidden vermin damage;
   D. weight of contents, equipment, animals or people;
   E. weight of ice, snow, sleet or rain which collects on a roof;
   F. use of defective material or methods in construction, remodeling or renovation if the collapse occurs during the course of the construction, remodeling or renovation;
   G. water or water-borne material which backs up through sewers or drains; or
   H. water or water-borne material which enters and overflows or is discharged from within a sump pump, sump pump well or other type system designed to remove subsurface water which is drained from the foundation area.

Loss to an awning, fence, patio, pavement, swimming pool, underground pipe, flue, drain, cesspool, septic tank, septic field, foundation, retaining wall, bulkhead, pier, wharf or dock is not included under items B., C., D., E., and F. unless the loss is a direct result of the collapse of a building.

Collapse means an abrupt falling down or caving in of a building or any part of a building. Collapse does not include settling, cracking, sagging, bowing, bending, leaning, shrinking, bulging or expansion. A building or any part of a building that is in danger of falling down or caving in is not considered to be in a state of collapse.

This coverage does not increase the limit of liability applying to the damaged covered property.

The policy deductible does apply to this coverage.

17. **Inflation Protection.** The Blanket Property Limit specified in the Declarations of this policy, or any amendments thereto, for Coverages A, B and C is continuously adjusted in accordance with the applicable construction price or consumer price index in use by **us.**

---

EXHIBIT A

## CONTENTS AND ADDITIONAL COVERAGES    HP2300 0205

18. **Landlord's Furnishings.** **We** will pay up to $2500 for **your** appliances, carpeting and other household furnishings in each apartment on the **residence premises** regularly rented or held for rental to others by **you** for loss caused by **SECTION I - BROAD NAMED PERILS** other than **Theft.** The $2500 limit is the most we will pay in any one loss regardless of the number of appliances, carpeting or other household furnishings involved in the loss. This coverage does not increase the limit of liability applying to the damaged property.

19. **Fungus and Mold Remediation.** **We** will pay up to a limit of $5000 for remediation treatment and remediation testing as necessary to complete the repair or replacement of the damaged property. This coverage applies     when property covered under Coverages A, B or C is damaged by a covered water loss. Furthermore, this coverage applies only if all reasonable means were used to save and preserve the property from further damage at and after the time of the covered water loss. This limit includes:

    a. the cost to tear out and replace any part of the covered property necessary to gain access to any organisms listed under remediation treatment; and

    b. if the need for remediation treatment or remediation testing makes the **residence premises** uninhabitable,  the reasonable increase in living expenses and **your** loss of rental income. Payment will be for the shortest time required to perform the remediation treatment or remediation testing.

    Remediation treatment means the reasonable and necessary treatment, removal or disposal of **fungus and mold.**

    Remediation testing includes any testing or investigation of either property or air to detect, measure, evaluate or confirm the absence, presence or level of **fungus and mold** whether performed prior to, during or after remediation treatment.

    If more than one **residence premises** is insured under this policy, this is the most **we** will pay, for any one loss at any one covered location, for the total of all loss or costs payable under this Additional Coverage. This applies regardless of the number of claims made under this policy.

    If Increased Coverage on Fungus and Mold Remediation is shown in the Declarations, then the $5000 limit is increased to the amount shown.

20. **Dwelling Under Construction Extension of Coverages.** This coverage is contingent upon prior written notification to **us** by **you** that the dwelling described in the Declarations is under its initial construction and has not been completed and occupied. This coverage remains in force until the dwelling is completed and occupied or the policy expires, cancels or terminates, whichever comes first.

    A. Provisional Amount of Insurance
    The amount of insurance stated under Basic Coverages in the Declarations for Coverage A - Dwelling is provisional, and is based upon the projected value of the dwelling at the date of completion. The actual amount of insurance on any date while the policy is in force will be a percentage (%) of the provisional amount. The percentage (%) will be the proportion that the actual value of the property at the time of loss bears to the projected value at the date of completion. However, this amount of insurance shall not, in any case, exceed the Coverage A - Dwelling Amount stated in the Declarations.

    B. **We** agree to extend **COVERAGE C - PERSONAL PROPERTY, COVERAGE F - PERSONAL LIABILITY** and **COVERAGE G - MEDICAL PAYMENTS TO OTHERS** to the residence where **you** are residing while waiting for the dwelling under construction described in the Declarations to be completed and occupied.

    C. Theft of Personal Property
    **We** cover loss of personal property by theft in or from a dwelling under construction at the location described     in the Declarations, only if the dwelling is fully enclosed and capable of being locked. The personal property   must be owned by **you**, not supplied by the contractor. **We** do not cover theft committed by anyone defined     as **you**. Coverage will be in force until the dwelling is completed and occupied.

    D. Deductible. This coverage is subject to the applicable deductible for the covered cause of loss.

EXHIBIT A

## CONTENTS AND ADDITIONAL COVERAGES     HP2300 0205

21. **Ordinance or Law**
   A. When property covered under Coverages A or B is damaged by a cause of loss **we** cover and if the enforcement is directly caused by the same loss, **we** will pay the increased costs **you** incur due to the enforcement of any ordinance or law in effect at the time of loss which requires or regulates:
      1. the construction, repair, demolition or zoning of the physically damaged part of a covered building or private structure;
      2. the demolition and reconstruction of the undamaged part of a covered building or private structure when that building or private structure must be totally demolished; or
      3. changes to or replacement of the portion of the undamaged part of a covered building or private structure necessary to complete the repair or replacement of that part of the covered building or private structure damaged by the covered cause of loss.

   Limit of Liability
   **Our** limit of liability for loss covered under Ordinance or Law Coverage is included within the Blanket Property Limit shown in the Declarations at the time of loss.

   B. Under **SECTION I - LOSSES WE DO NOT COVER**, the **Ordinance or Law** exclusion remains in effect except to the extent coverage is provided under this Additional Coverage.

   C. **You** may use all or part of this ordinance or law coverage to pay for the increased costs **you** incur to remove debris resulting from the construction, repair or demolition.

   D. **We** do not cover:
      1. any loss in value to any covered building or private structure due to the requirements of any ordinance or law; or
      2. the costs to comply with any ordinance or law which requires **you** or others to remove, clean up, test, monitor, abate, contain, neutralize or treat any property:
         a. for loss excluded under **LOSSES WE DO NOT COVER, Pollution** and **Lead Exposure;** or
         b. for **fungus and mold.**

22. **Back Up of Sewer, Drain and Sump Pump**
   A. **We** cover damaged or destroyed property under the Coverages listed in **SECTION I - COVERAGES** caused by or resulting from water or water-borne material:
      1. which backs up through sewers or drains; or
      2. which enters and overflows or is discharged from within a sump pump, sump pump well or other type system designed to remove subsurface water which is drained from the foundation area.

   B. Limit of Liability
      1. If no limit is shown in the Declarations for Back Up or Sewer, Drain and Sump Pump Coverage, then the limits applying to the damaged or destroyed property under Section I - Coverages A, B and C apply.
      2. If a limit is shown in the Declarations for Back Up of Sewer, Drain and Sump Pump Coverage, then the limit shown is the total **we** will pay in any one loss for damaged or destroyed property under Section I - Coverages A, B and C.

   C. Under **SECTION I - LOSSES WE DO NOT COVER**, 1.D. **Water Damage** item 2. is deleted with respect to the coverages provided by this additional coverage.

   D. Deductible. **We** will pay only that part of the loss that exceeds the deductible amount shown in the Declarations for this coverage. This deductible amount applies separately to each loss.

23. **Newly Acquired Watercraft and Equipment. We** will pay for direct physical loss to watercraft, including any accompanying equipment, motors and trailers, for which **you** acquire ownership during the policy period if:
   1. there is no other insurance provided by this or any other insurance policy for the newly acquired property;
   2. you ask **us** within 30 days of acquisition to insure the property; and
   3. **you** pay any additional premium required by **us** for the newly acquired property.

   Limit of Liability. The most **we** will pay for a loss to property **you** own or purchase is $25,000.

EXHIBIT A

HP3500 0904
8/9/2021 4:21 PM
IRIS Y. MARTINEZ
CIRCUIT CLERK
COOK COUNTY, IL
2021L008013

# CAUSES OF PROPERTY LOSS

### SECTION I - LOSSES WE COVER
(COMPREHENSIVE PERILS)

**LOSS DEDUCTIBLE CLAUSE**

**We** will pay only when a loss exceeds the deductible amount shown in the Declarations. **We** will pay only that part of the loss over such stated deductible.

**COVERAGE A - DWELLING**
**COVERAGE B - PRIVATE STRUCTURES** `
**COVERAGE C - PERSONAL PROPERTY**
**We** will pay for sudden and accidental direct physical loss or damage to the property described in Coverages A, B and C, except as excluded in **SECTION I - LOSSES WE DO NOT COVER.**

### SECTION I - BROAD NAMED PERILS

Whenever Broad Named Perils is referred to in this policy, the following causes of loss will apply for sudden and accidental direct physical loss.

Under the named perils listed below, **we** do not cover loss or damage, no matter how caused, to the property which results directly or indirectly from **fungus and mold.** There is no coverage for loss which, in whole or part, arises out of, is aggravated by, contributed to by acts or omissions of persons, or results from **fungus and mold.** This exclusion applies regardless of whether **fungus and mold** arises from any other cause of loss, including but not limited to a loss involving water, water damage or discharge, which may be otherwise covered by this policy, except as granted under **SECTION I - ADDITIONAL COVERAGES** for **Fungus and Mold Remediation.**

1. **Fire or Lightning**
2. **Windstorm or Hail**
   **We** do not pay for loss to the interior of a building or to personal property inside, caused by rain, snow, sleet, sand or dust unless the wind or hail first damages the roof or walls and the wind forces rain, snow, sleet, sand or dust through the opening.
   **We** do not pay for loss to watercraft and their trailers, furnishings, equipment and motors unless inside a fully enclosed building. **We** do cover canoes and rowboats on the **residence premises.**
3. **Explosion**
4. **Riot or Civil Commotion**
5. **Aircraft,** including self-propelled missiles and spacecraft.
6. **Vehicles**
7. **Smoke,** if the loss is sudden and accidental including the emission or puffback of smoke, soot, fumes or vapors from a boiler, furnace or related equipment.
   **We** do not pay for loss caused by smoke from agricultural smudging or industrial operations.
8. **Vandalism or Malicious Mischief**
   **We** do not pay for any loss caused by any act committed in the course of the vandalism or malicious mischief including any ensuing loss or fire if the residence was vacant for more than 30 consecutive days immediately prior to the loss. A **residence premises** being constructed is not considered vacant.
9. **Theft,** or attempted theft, including loss of property from a known place when it is likely that a theft has occurred.
   **We** do not pay for loss caused by theft:
   A. if committed by **you** or by any person regularly residing on the **residence premises;**
   B. in or from a dwelling under construction or materials and supplies for use in construction, until the dwelling is completed and occupied; or
   C. from any part of the **residence premises** rented by **you** to others.
   **We** do not pay for loss caused by theft that occurs away from the **residence premises** of:
   A. property while in any other residence owned, rented to or occupied by **you,** except while **you** are temporarily residing there. Coverage is provided for a student's property while at a premises away

EXHIBIT A

# CAUSES OF PROPERTY LOSS                                    HP3500 0904

from home if the student has been there at any time during the 45 days immediately preceding the loss;

   B.   watercraft of all types including its furnishings, equipment and outboard motors; or

   C.   trailers and campers.

10. **Falling Objects**
   **We** cover loss to personal property inside a building only if the falling object first damages the exterior walls or roof. Damage to the falling object itself is not covered.

11. **Weight of Ice, Snow or Sleet** which causes damage to a building or to property contained in a building.
   **We** do not cover loss to an awning, fence, patio, pavement, swimming pool, foundation, retaining wall, bulkhead, pier, wharf or dock.

12. **Discharge or Overflow of Water or Steam** from within a plumbing, heating, air conditioning or automatic fire protective sprinkler system or from within a domestic appliance. The loss must be sudden and accidental. With regard to **your** property covered under Coverage A or Coverage B, **we** also will pay to tear out and replace any part of a building or other structure on the **residence premises** but only when necessary to repair the system or appliance from which the water or steam escaped. However, such tear out and replacement coverage only applies to other structures if the water or steam causes actual damage to a building on the **residence premises**.
   **We** do not pay for loss:
   A.   to the system or appliance from which the water or steam escapes;
   B.   caused by or resulting from freezing under this peril;
   C.   caused by water which backs up through sewers or drains;
   D.   caused by water which overflows from a sump pump, sump pump well or other system designed for the removal of subsurface water which is drained from the foundation area;
   E.   caused by water which overflows from a roof drain, gutter, downspout or similar fixtures or equipment; or
   F.   on the **residence premises** if the dwelling has been vacant for more than 30 consecutive days immediately before the loss. A dwelling being constructed is not considered vacant.

13. **Rupturing, Cracking, Burning or Bulging** of a steam or hot water heating system, an air-conditioning or automatic fire protective sprinkler system, or an appliance for heating water. The loss must be sudden and accidental.
   **We** do not pay for loss caused by or resulting from freezing under this peril.

14. **Freezing** of a plumbing, heating, air conditioning or automatic fire protective sprinkler system or of a domestic appliance.
   **We** do not pay for loss on the **residence premises** while the dwelling is unoccupied, unless **you** have used reasonable care to maintain heat in the building or have shut off the water supply and drained the water from all plumbing and appliances. However, if the building is protected by an automatic fire protective sprinkler system, **you** must use reasonable care to continue the water supply and maintain heat in the building for coverage to apply. For this provision, a plumbing system or domestic appliance does not include a roof drain, gutter, downspout, or similar fixtures or equipment.

15. **Sudden and Accidental Damage from Electrical Currents Artificially Generated** to electrical appliances, devices, fixtures and wiring.

16. **Breakage of Glass or Safety Glazing Material**
   **We** will pay for direct physical loss to covered property caused by the breakage of glass or safety glazing material which is part of a building, window or door on the **residence premises**.
   **We** do not pay for loss if the dwelling was vacant for more than 30 consecutive days immediately prior to the loss. A dwelling being constructed is not considered vacant.

## SECTION I - LOSSES WE DO NOT COVER

1.   **We** do not insure under any Section I coverage for any loss which would not have happened in the absence of one or more of the following excluded events. **We** do not insure for any such loss regardless of:
   (a) the cause of the excluded event;
   (b) other causes of the loss; or
   (c) whether such causes acted at the same time or in any other sequence with the excluded event to produce or contribute to the loss.
   These exclusions apply whether or not the excluded event results in widespread damage or affects a substantial area. The excluded events are listed below.

EXHIBIT A

## CAUSES OF PROPERTY LOSS                    HP3500 0904

A. **Intentional Loss,** meaning any loss arising out of any intentional or criminal act committed:
   1. by **you** or at **your** direction; and
   2. with the intent to cause a loss.
   This exclusion applies regardless of whether **you** are actually charged with or convicted of a crime.

   In the event of such loss, no one defined as **you** or **your** is entitled to coverage, even people defined as **you** or **your** who did not commit or conspire to commit the act causing the loss.

B. **Pollution,** meaning loss or damage to property which results directly or indirectly from:
   1. discharge, dispersal, release or escape of pollutants or contaminants, including damage caused by chemicals in the soil and loss resulting from the release of toxic materials or other pollutants or contaminants, no matter how caused;
   2. discharge, dispersal, release or escape of fuel oil and other petroleum products; or
   3. smog; smoke from agricultural smudging or industrial operations.

   However, **we** pay for direct loss that ensues after pollution. **We** pay for such ensuing loss only if caused by fire, smoke that is not from agricultural smudging or industrial operations, explosion, glass breakage, or water damage not specifically excluded in this policy. If a covered water loss follows, **we** will pay the cost of tearing out and replacing any part of the building necessary to repair the plumbing or appliance, but **we** do not cover loss to the plumbing or appliance from which the water escaped.

C. **Lead Exposure,** meaning loss or damage to the **residence premises** or any property owned, rented or controlled by **you** (including private structures and private approaches), which result directly or indirectly from the presence of lead. **We** do not pay for any costs or expenses incurred or loss arising out of:
   1. the abatement, neutralization, cleanup, removal, repair, refurbishing or treatment of:
      a. lead;
      b. property containing lead;
      c. soil, or earth containing lead;
      d. water, pipes or plumbing containing lead;
      e. paint, putty, dust or plaster containing lead; or
      f. any other product or substance containing lead; or
   2. any government directive, law, regulation, request, requirement or mandate to remove, clean up, test, monitor, abate, contain, neutralize or treat:
      a. lead;
      b. property containing lead;
      c. soil, or earth containing lead;
      d. water, pipes or plumbing containing lead;
      e. paint, putty, dust or plaster containing lead; or
      f. any other product or substance containing lead.

D. **Water damage,** meaning any loss caused by, resulting from, contributed to or aggravated by:
   1. flood, surface water, waves, tidal water or overflow of any body of water, or spray from any of these, whether or not driven by wind;
   2. water or water-borne material which backs up through sewers or drains, or which overflows or is discharged from a sump pump, sump pump well or other system designed to remove subsurface water which is drained from the foundation area; or
   3. water or water-borne material below the surface of the ground, including water which exerts pressure on, or flows, seeps or leaks through any part of a building, sidewalk, foundation, driveway, swimming pool or other structure or water which causes earth movement.
   This exclusion applies whether or not the water damage is caused by or results from human or animal forces or any act of nature.

   However, **we** pay for direct loss that ensues after water damage if caused by fire, theft or explosion and then **we** pay for only the ensuing loss.

   Water damage to property described in Coverage C away from a premises or location owned,

---

EXHIBIT A

## CAUSES OF PROPERTY LOSS                                                 HP3500 0904

rented, occupied or controlled by **you** is covered.

Water damage to property described in Coverage C on a premises or location owned, rented, occupied or controlled by **you** is excluded even if weather conditions contribute in any way to produce the loss.

E. **Earth Movement,** meaning any loss caused by, resulting from, contributed to or aggravated by events that include, but are not limited to:

1. earthquake and earthquake aftershocks;
2. volcanic eruption and volcanic effusion;
3. sinkhole;
4. subsidence;
5. mudslide including landslide, mudflow, debris flow, avalanche or sediment;
6. erosion or excavation collapse;
7. the sinking, rising, shifting, expanding, bulging, cracking, settling or contracting of the earth, soil or land; and
8. volcanic explosion and lava flow, except as granted under **SECTION I - ADDITIONAL COVERAGES** for **Volcanic Action.**

This exclusion applies whether or not the earth movement is combined with water or caused by or results from human or animal   forces or any act of nature.

However, **we** pay for direct loss that ensues after earth movement if caused by fire, explosion other than explosion of a volcano, theft, or breakage of glass or safety glazing material and then **we** pay for only the ensuing loss.

F. **Ordinance or Law,** meaning enforcement of any ordinance or law regulating the construction, repair, demolition or zoning of buildings, unless specifically provided under this policy.

G. **Power Failure,** meaning the failure of power or other utility service if the failure takes place off the **residence premises,** except as granted under **SECTION I - ADDITIONAL COVERAGES** for **Emergency Living Expense.** If a loss **we** pay for ensues on the **residence premises, we** pay for only the ensuing loss.

H. **Neglect** by **you** to use all reasonable means to save and preserve property at and after the time of a loss, or when property is endangered by a peril insured against.

I. **Nuclear Action,** meaning nuclear reaction, discharge, radiation or radioactive contamination, all whether controlled or uncontrolled or however caused, or any consequence of any of these. Loss caused by nuclear action is not considered a loss caused by fire, explosion or smoke.

However, **we** pay for direct loss that ensues after nuclear action if caused by fire and then **we** pay for only the ensuing loss.

J. **Governmental Action,** including war, undeclared war, civil war, rebellion, insurrection, revolution, warlike act by a military force or military personnel, destruction or seizure or use for a military purpose, and including any consequence of any of these. Governmental Action also includes loss arising out of risks of contraband or illegal transportation or trade and loss due to order of any civil authority except:
1. conditions **we** insure under **Prohibited Use** of **SECTION I - ADDITIONAL COVERAGES** for **Loss of Use;** or
2. acts of destruction during a fire to prevent it from spreading as long as the fire was not caused by any peril excluded by this policy.

2. **We** do not insure under Coverage A and Coverage B for any loss consisting of one or more of the items below. However, **we** pay for any ensuing loss unless the ensuing loss is itself excluded by any other provision in this policy. Further, **we** do not insure for loss described in Exclusion 1. above and Exclusions 3. and 4. below regardless of whether one or more of the following: (a) directly or indirectly cause, contribute to or aggravate the loss; or (b) occur before, at the same time, or after the loss or any other cause of the loss. The items are:

---

EXHIBIT A

## CAUSES OF PROPERTY LOSS
HP3500 0904

   A. conduct, act, failure to act, or decision of any person, group, organization or governmental body whether intentional, wrongful, negligent or without fault;

   B. defective, inadequate, faulty or unsound:

      1. planning, zoning, development, surveying, siting;

      2. design, specifications, workmanship, repair, construction, renovation, remodeling, grading, compaction;

      3. materials used in repair, construction, renovation or remodeling; or

      4. maintenance;

      of any property whether on or off the **residence premises.** Property includes land, structures or improvements of any kind; and

   C. weather conditions.

   However, this exclusion only applies if weather conditions contribute in any way with an excluded event or cause of loss to produce the loss.

3. **We** do not cover loss or damage to the property described in <u>Coverage A, Coverage B</u> and <u>Coverage C</u> which results directly or indirectly from any of the following:

   A. wear and tear, marring, scratching, aging, deterioration, corrosion, rust, mechanical breakdown, latent defect, inherent vice, or any quality in property that causes it to damage or destroy itself;

   B. **fungus and mold.** There is no coverage for loss which, in whole or part, arises out of, is aggravated by, contributed to by acts or omissions of persons, or results from **fungus and mold.** This exclusion applies regardless of whether **fungus and mold** arises from any other cause of loss, including but not limited to a loss involving water, water damage or discharge, which may be otherwise covered by this policy, except as granted under **SECTION I - ADDITIONAL COVERAGES** for **Fungus and Mold Remediation;**

   C. settling, cracking, shrinking, bulging, or expansion of bulkheads, pavements, patios, foundations, footings, supports, walls, floors, roofs, or ceilings;

   D. animals owned or kept by **you** or any person regularly residing on the premises;

   E. birds, vermin, rodents or insects;

   F. theft in or from the **residence premises** while under construction, or of materials and supplies for use in the construction, until the **residence premises** is completed and occupied;

   G. freezing of a plumbing, heating, air conditioning, or automatic fire protective sprinkler system, or of a domestic appliance, or by discharge, leakage or overflow from within the system or appliance caused by freezing. This exclusion does not apply if **you** have used reasonable care to maintain heat in the building or if **you** shut off the water supply and drained the plumbing and appliance of water. However, if the building is protected by an automatic fire protective sprinkler system, **you** must use reasonable care to continue the water supply and maintain heat in the building for coverage to apply.

   For this provision, a plumbing system or domestic appliance does not include a roof drain, gutter, downspout, or similar fixtures or equipment;

   H. freezing, thawing or pressure or weight of water, snow or ice, whether driven by wind or not, to a swimming pool including filtration, heating and circulation systems, fence, driveway, roadway, walkway, pavement, patio, foundation, footing, retaining wall, bulkhead, pier, wharf or dock; or

   I. pressure from or presence of tree, shrub or plant roots.

**We** do pay for any direct loss that follows items A. through H. to property described in Coverages A, B and C not otherwise excluded or excepted in this policy and then **we** pay for only the ensuing loss. If a covered water loss follows, **we** will pay the cost of tearing out and replacing any part of the building necessary to repair the plumbing or appliance, but **we** do not cover loss to the plumbing or appliance from which the water escaped.

---

EXHIBIT A

# CAUSES OF PROPERTY LOSS

HP3500 0904

4. **We** do not pay for loss or damage to the property described in <u>Coverage A</u> and <u>Coverage B</u>:

A. caused by vandalism or malicious mischief or breakage of glass and safety glazing materials, and any loss caused by any act committed in the course of the vandalism or malicious mischief including any ensuing loss or fire, if the residence was vacant for more than 30 consecutive days immediately prior to the loss. A **residence premises** being constructed is not considered vacant;

B. caused by seepage, meaning continuous or repeated seepage or leakage of water or steam or the presence or condensation of humidity, moisture or vapor, over a period of weeks, months or years, from within:
1. a heating system;
2. an air conditioning system;
3. an automatic fire protective sprinkler system;
4. a domestic appliance; or
5. a plumbing system, including from, within or around any shower stall, shower bath, tub installation, or other plumbing fixture, including their walls, ceilings or floors.

However, we pay for ensuing damages to building property that results from such seepage if the leakage of water is not able to be observed and is hidden within the walls or ceilings or above the ceilings or beneath the floors but not below the slab or foundation floor of a structure.

For this provision, a plumbing system or domestic appliance does not include a roof drain, gutter, downspout, or similar fixtures or equipment.

**We** pay for any direct loss that follows after seepage to property described in Coverages A and B not otherwise excluded or excepted in this policy and then **we** pay for only the ensuing loss. If a covered water loss follows, **we** will pay the cost of tearing out and replacing any part of the building necessary to repair the plumbing or appliance, but **we** do not cover loss to the plumbing or appliance from which the water escaped; or

C. involving collapse, except as granted under **SECTION I - ADDITIONAL COVERAGES** for **Collapse**. However, **we** do pay for any ensuing loss to property described in Coverages A and B not excluded or excepted in this policy.

5. **We** do not pay for loss or damage to the property described in <u>Coverage C caused by</u>:

A. breakage of:
1. eyeglasses, glassware, statuary, marble; or
2. bric-a-brac, porcelains and similar fragile articles other than jewelry, watches, bronzes, cameras and photographic lenses.

There is coverage for breakage of the property resulting from:
1. fire, lightning, windstorm or hail;
2. smoke, other than smoke from agricultural smudging or industrial operations;
3. explosion, riot, civil commotion;
4. aircraft, vehicles or vandalism and malicious mischief;
5. collapse of a building or any part of a building;
6. water not otherwise excluded;
7. theft or attempted theft; or
8. sudden and accidental tearing apart, cracking, burning, or bulging of:
   a. a steam or hot water heating system;
   b. an air conditioning or automatic fire protective sprinkler system; or
   c. an appliance for heating water;

B. dampness of atmosphere or extremes of temperature unless the direct cause of loss is rain, snow, sleet or hail;

EXHIBIT A

## CAUSES OF PROPERTY LOSS                        HP3500 0904

C. refinishing, renovating or repairing property other than watches, jewelry and furs;

D. collision other than collision with a land vehicle, sinking, swamping or stranding of watercraft, including their trailers, furnishings, equipment and outboard motors or engines;

E. destruction, confiscation or seizure by order of any government or public authority;

F. acts or decisions, including the failure to act or decide, of any person, group, organization or government body. However, any ensuing loss to property described in Coverage C not excluded or excepted in this policy is covered; or

G. an error in computer programming or instructions to the **computer.**

EXHIBIT A

HP4410 0110

# PROPERTY LOSS SETTLEMENT

## SECTION I - HOW WE SETTLE A PROPERTY LOSS
(Blanket Property)

Covered loss to property described under **Coverage A - Dwelling, Coverage B - Private Structures,** and **Coverage C - Personal Property** is settled as follows.

**Our** total limit of liability for loss settled under 1. and 2. below is the Blanket Property Limit shown in the Declarations. This limit applies regardless of the number of losses from the same **occurrence** or the combination of covered losses under Coverages A, B or C.

1. **Actual Cash Value Settlement.** Subject to the applicable deductible, **we** will pay the **actual cash value** at the time of the loss for the damaged property. **We** will pay no more than the amount required to repair or replace the damaged property with property of like kind and quality.

   A. Actual Cash Value Settlement applies until actual repair or replacement is complete.

   B. Actual Cash Value Settlement applies to the following types of personal property:
      1. antiques, fine arts, paintings, statuary and similar articles which, by their inherent nature, cannot be replaced with new articles;
      2. articles for which the age, history, scarcity or condition contribute substantially to their value. This includes, but is not limited to, memorabilia, souvenirs, and collectors' items such as trading cards, comic books, and autographed merchandise;
      3. property which is obsolete or unusable because of its age or condition prior to the loss, or not being used for the purpose for which it was originally intended;
      4. articles separately described and specifically insured in any other policy;
      5. watercraft, including their trailers, furnishings, equipment and outboard motors; and
      6. motorized land vehicles principally designed for recreational use.

   C. The provisions of paragraphs 1.D., 2 and 3. below do not apply to the above types of property described in 1.B.

   D. If **you** repair or replace the damaged or destroyed property, **you** may make further claim for any additional payments for **Replacement Cost Settlement** provided:
      1. **you** have not reached the applicable limit of liability;
      2. **you** still have an insurable interest in the property;
      3. **you** notify **us** within 180 days after the date of **actual cash value** payment of **your** decision to repair or replace the damaged or destroyed dwelling or private structure;
      4. **you** notify **us** within 30 days after the repair or replacement has been completed; and
      5. the date of completion is within one year from the date of **actual cash value** payment.

      The foregoing time limitations shall apply unless **you** or **your** representative submits written proof providing clear and reasonable justification for the failure to comply with such time limitation.

2. **Replacement Cost Settlement.** **We** will not be liable unless and until actual repair or replacement is complete.

   A. For covered loss to real property, **we** will pay the full cost of repair or replacement, less the applicable deductible, without deduction for depreciation. **Our** limit of liability shall not exceed the smallest of the following:
      1. the cost to repair or replace the damaged part(s) of the building with materials of like kind and quality on the same premises for the same occupancy and use; or
      2. the amount actually and necessarily spent to repair or replace the damaged part(s) of the building with materials of like kind and quality on the same premises for the same occupancy and use.

      If **you** rebuild **your** building or purchase an existing building at an address other than shown in the Declarations, the replacement will not increase the amount payable under Replacement Cost Settlement.

      The amount payable does not include the value of any land associated with the replacement building(s).

EXHIBIT A

## PROPERTY LOSS SETTLEMENT                                    HP4410 0110

B.  For covered loss to personal property, **we** will pay the full cost of repair or replacement, less the applicable deductible, without deduction for depreciation. **Our** limit of liability shall not exceed the smallest of the following:
  1.  the cost to replace the property with a similar property of like kind and quality;
  2.  the full cost of repair to restore the property to its original condition;
  3.  the limit of liability for applicable types of property under the **Special Limitations on Certain Property** under **SECTION I - COVERAGES, COVERAGE C - PERSONAL PROPERTY;** or
  4.  the limit of liability that applies to any item separately described and specifically insured under this policy.

3.  **Coverage A Plus.** For the dwelling under Coverage A, **we** will pay the **Actual Cash Value Settlement** or **Replacement Cost Settlement** as provided in 1. and 2. above even if that cost exceeds the remaining amount of insurance available under the Blanket Property Limit shown in the Declarations after loss to property covered under **Coverage B - Private Structures** and **Coverage C - Personal Property** has been settled.
  The following requirements apply:
  A.  **you** obtained Coverage A Plus by insuring **your** dwelling to 100% of its replacement cost based on the accuracy of information **you** furnished in the completion of **our** home replacement cost estimator or upon an inspection by **us** of the **residence premises;**
  B.  **you** have kept **your** insurance continuously without lapse and have accepted the Inflation Protection provision in this policy including each annual adjustment in the replacement value automatically applied to **your** policy at each renewal; and
  C.  **you** must have notified **us** within 90 days after the start of any additions or other physical changes which increase the replacement value of **your** dwelling by $25,000 or more.

4.  **We** will pay no more than the $10,000 limit of liability on **Land** as provided in **SECTION I - ADDITIONAL COVERAGES.**

EXHIBIT A

HP5100 0105

# PROPERTY CONDITIONS

## SECTION I - CONDITIONS

1. **Insurable Interest and Limit of Liability. We** will not pay any person or organization an amount greater than its insurable interest in the property covered at the time of the loss.
   Regardless of the number of persons or organizations who qualify for coverage, **we** will not pay more than the applicable limit of liability.

2. **What You Must Do After a Loss. We** have no obligation to provide coverage under this policy if **you** or **your** representative fail to comply with the following duties.
   A. Immediately notify **us** or **our** representative.
      In case of theft, promptly notify the police.
      In case of loss under the credit card or electronic fund transfer card coverage, promptly notify the issuing company or bank.

   B. Protect the property from further damage, make reasonable and necessary repairs required to protect the property and keep a record of necessary expenditures.

   C. Cooperate with **us** in the investigation of a claim.

   D. Prepare an inventory of damaged or stolen personal property showing, in detail, the quantity, age, description, **actual cash value** and amount of loss claimed for each item. Attach to the inventory all bills and other documents that substantiate the figures in the inventory.

   E. At any reasonable time and place **we** designate, and as often as **we** reasonably require:
      1. show **us** the damaged property;
      2. submit to questions concerning the loss under oath while not in the presence of any other person defined as **"you"**, and sign and swear to the answers; and
      3. allow **us** to examine and copy or abstract any records and documents **we** request.

   F. Within 60 days after **our** request, **you** must file with **us** a signed and sworn proof of loss, stating to the best of **your** knowledge:
      1. the time and cause of loss;
      2. **your** interest and that of any other person in the property involved and all encumbrances on the property;
      3. a description of each item, including all information contained in the inventory described above;
      4. a description of other insurance policies that might apply to the loss;
      5. any changes in ownership, use, possession or location of the property that took place since this policy was issued;
      6. if loss is to a building, who occupied it at the time of loss, what the purposes of such occupancy were, and whether the building stood on leased ground;
      7. specifications of any damaged building, fixture or machinery and detailed estimates for repair of the damage;
      8. receipts for additional living expenses **you** incur and records supporting the fair rental value; and
      9. evidence or affidavit supporting a claim under **SECTION I - ADDITIONAL COVERAGES** for **Credit Card, Electronic Fund Transfer Card, Forgery and Counterfeit Money,** stating the amount and cause of loss.

3. **Our Settlement Options. We** will adjust all losses with **you**. **We** will pay **you** unless another payee is named in the policy. **We** will pay within 60 days after the amount of loss is agreed upon. This amount may be determined by an agreement between **you** and **us,** an appraisal award or entry of a final judgment, subject to **SECTION I - HOW WE SETTLE A PROPERTY LOSS.**

   **We** have the option of taking all or part of the property at the agreed or appraised value. **We** have the option to repair, rebuild or replace the damaged or destroyed property with property of like kind and quality within a reasonable time. **We** must give **you** notice of **our** intention within 30 days after **we** receive **your** signed, sworn proof of loss.

---

EXHIBIT A

# PROPERTY CONDITIONS                                    HP5100 0105

4. **Loss.** Any loss **we** pay under this policy does not reduce the limit of liability.

5. **Loss to a Pair or Set.** In case of loss to a pair or set **we** may elect to:
   A. repair or replace any part to restore the pair or set to its value before the loss; or
   B. pay the difference between **actual cash value** of the property before and after the loss.

6. **Abandoned Property.** **We** are not obligated to accept any property or responsibility for any property abandoned by **you.**

7. **Appraisal.** If **you** and **we** fail to agree on the amount of loss, either **you** or **we** can make a written demand for an appraisal of the loss. Each party will select a competent appraiser and notify the other within 20 days of the appraiser's identity. The two appraisers will select a competent and impartial umpire. If the two appraisers are unable to select an umpire within 15 days, **you** or **we** can request that the choice of an umpire be made by a judge of a court of record in the state where the **residence premises** is located.

   The appraisers will separately set the amount of loss determining the full replacement cost and **actual cash value** for each item as needed. If the appraisers submit a written report of an agreement to **us,** the amount agreed upon will be the amount of the loss. If they fail to agree, they will submit their differences to the umpire. The written award by two of these three people for any item will set the amount of loss and is binding on **you** and **us** when filed with **us.**

   **You** will pay the appraiser selected by **you.** **We** will pay the appraiser selected by **us.** **You** and **we** will split the other expenses of appraisal and the fee of the umpire.

8. **Rights and Duties of Mortgagee.** If a mortgagee is named in the Declarations, any payment for loss under Coverage A or B will be made to the mortgagee to the extent of its interest under all present and future mortgages. If more than one mortgagee is named, payment will be made in the order of priority of the mortgagees,

   The interest of the mortgagee under this policy will not be affected by any action or neglect by **you.** The interest of the mortgagee under this policy will terminate unless it:
   A. pays upon demand any premium due if the owner or mortgagor fails to do so;
   B. notifies **us** of any change of ownership or increase in hazard of which the mortgagee has knowledge; and
   C. pays upon demand the premium for any such increase in hazard.

   **We** will notify the mortgagee if **you** fail to give **us** proof of loss. Within 60 days after receiving such notice, the mortgagee must give **us** proof of loss. Policy conditions relating to appraisal, time of payment and time of bringing lawsuit apply to the mortgagee.

   **We** will give the mortgagee not less than 10 days notice of cancellation or nonrenewal of the insurance protecting its interest.

   If **we** pay the mortgagee for any loss and deny payment to **you, we** will be subrogated to the extent of **our** payment to all the rights that the mortgagee has under the mortgage on the property. At **our** option, **we** may pay to the mortgagee the whole principal on the mortgage and any interest due. In this event, **we** may receive a full assignment and transfer of the mortgage and all securities held as collateral for the mortgage debt. Subrogation will not impair the right of the mortgagee to recover the full amount of the mortgagee's claim.

   **Our** cancellation of the policy also applies to agreements under this condition.

   As used in this condition, the term "mortgagee" includes a trustee, if applicable.

   If the Coverage A insurance is provided for a mobile home, the term "mortgagee" includes a lienholder.

9. **No Benefit to Bailee.** **We** will not recognize any assignment or grant any coverage that benefits a person or organization holding, storing or moving property for a fee regardless of any other provision of this policy.

EXHIBIT A

# LIABILITY, MEDICAL EXPENSES
# AND OPTIONAL COVERAGES

## SECTION II - LOSSES WE COVER

### COVERAGE F - PERSONAL LIABILITY

**Agreement.** **We** will pay all sums for **bodily injury, property damage** and **personal injury** to others for which the law holds **you** responsible because of an **occurrence** to which this coverage applies. This includes prejudgment interest awarded against **you.**

**We** will defend **you,** at **our** expense with counsel of **our** choice, against any suit seeking these damages. **We** may investigate, negotiate, or settle any suit. **We** are not obligated to defend any claim or suit seeking damages not covered under this policy.

**We** are not obligated to pay any judgment or defend any suit if we have already exhausted the limit of liability set forth in the Declarations by paying judgments or settlements.

**Limit of Liability.** The limit of liability shown in the Declarations for "each **occurrence"** is the maximum **we** will pay for all damages as a result of any one **occurrence.** **Our** total limit for all damages resulting from a **personal injury** offense, including a series of related offenses, will not be more than the limit of liability shown in the Declarations for Coverage F - Personal Liability.

### COVERAGE G - MEDICAL PAYMENTS TO OTHERS

**Agreement.** **We** will pay the reasonable **medical expenses** that are incurred or medically ascertained within three years from the date of the accident causing **bodily injury.** This coverage does not apply to **you.** This coverage does apply to others who sustain **bodily injury** as a result of an accident, while they are:
1. on the **insured premises** with **your** permission; or
2. off the **insured premises,** if the **bodily injury:**
   A. arises out of a condition on the **insured premises** or immediately adjoining ways;
   B. is caused by **your** activities;
   C. is caused by an animal owned by **you** or in **your** care;
   D. is caused by a **residence employee** arising out of and in the course of employment by **you;** or
   E. is sustained by any **residence employee** arising out of and in the course of employment by **you.**

**Limit of Liability.** The limit of liability shown in the Declarations for "each person" is the maximum **we** will pay to any one person as a result of any one accident.

**Our Payment of Loss.** **We** may pay the injured person or the provider of the medical services. Such payment is not an admission of liability by **you** or **us.**

## SECTION II - LOSSES WE DO NOT COVER

### COVERAGE F - PERSONAL LIABILITY AND COVERAGE G - MEDICAL PAYMENTS TO OTHERS

1. **Intentional Loss.** **We** do not cover **bodily injury** or **property damage** which is reasonably expected or intended by **you** or which is the result of **your** intentional and criminal acts or omissions. This exclusion is applicable even if:
   A. **you** lack the mental capacity to govern **your** conduct;
   B. such **bodily injury** or **property damage** is of a different kind or degree than reasonably expected or intended by **you;** or
   C. such **bodily injury** or **property damage** is sustained by a different person than expected or intended by **you.**
   This exclusion applies regardless of whether **you** are actually charged with or convicted of a crime.
   However, this exclusion does not apply to **bodily injury** or **property damage** resulting from the use of

EXHIBIT A

## LIABILITY, MEDICAL EXPENSES AND OPTIONAL COVERAGES

**HP6200 0205**

reasonable force by **you** to protect persons or property.

2. **Pollution. We** do not cover **bodily injury, property damage** or **personal injury:**
   A. resulting from the discharge, dispersal, release or escape of toxic chemicals and other pollutants or contaminants;
   B. resulting from the discharge, dispersal, release or escape of fuel oil and other petroleum products;
   C. resulting from electrical or magnetic emissions, whether visible or invisible, and sound emissions;
   D. liability, whether or not statutorily imposed, resulting from the discharge, dispersal, release or escape of toxic chemicals and other pollutants or contaminants; fuel oil and other petroleum products; or electrical, magnetic or sound emissions; or
   E. resulting from the failure to disclose the existence, whether known or unknown, on an **insured premises** of toxic chemicals and other pollutants or contaminants; fuel oil and other petroleum products; or electrical, magnetic or sound emissions.

3. **Lead Exposure**
   A. **We** do not cover damages arising out of **bodily injury** or **personal injury** caused by or resulting from ingestion, poisoning or exposure to lead.

   B. **We** do not cover damages arising out of **property damage** or **personal injury** resulting from:
      1. lead;
      2. property containing lead;
      3. soil, or earth containing lead;
      4. water, pipes or plumbing containing lead;
      5. paint, putty, dust or plaster containing lead; or
      6. any other product or substance containing lead;
      arising out of the existence, use, possession or occupancy of the **insured premises** or any property owned, rented or controlled by **you,** including the private structures and private approaches.

   C. **We** do not cover damages arising out of **property damage** or **personal injury** and any costs or expenses or loss incurred as a result of any governmental directive, law, regulation, request, requirement or mandate to remove, clean up, test, monitor, abate, contain, neutralize or treat:
      1. lead;
      2. property containing lead;
      3. soil, or earth containing lead;
      4. water, pipes or plumbing containing lead;
      5. paint, putty, dust or plaster containing lead; or
      6. any other product or substance containing lead;
      arising out of the existence, use, possession or occupancy of the **insured premises** or any property owned, rented or controlled by **you,** including the private structures and private approaches.

   D. **We** do not cover damages arising out of **bodily injury, property damage** or **personal injury** resulting from the failure to disclose the existence, whether known or unknown, on an **insured premises** of:
      1. lead;
      2. property containing lead;
      3. soil, or earth containing lead;
      4. water, pipes or plumbing containing lead;
      5. paint, putty, dust or plaster containing lead; or
      6. any other product or substance containing lead.

4. **Business. We** do not cover **bodily injury** or **property damage** arising out of or in connection with **your business** activities. This exclusion applies but is not limited to an act or omission, regardless of its nature or circumstance, involving a service or duty rendered, promised, owed or implied to be provided because of the nature of the **business.**

   With respect to **COVERAGE F - PERSONAL LIABILITY,** this exclusion does not apply to **your** occasional or part-time **business** activities if **you** are under 19 years of age or a full-time student under 21 years of age.

EXHIBIT A

# LIABILITY, MEDICAL EXPENSES AND OPTIONAL COVERAGES

**HP6200 0205**

If the **residence premises** is shown in the Declarations as a 2, 3 or 4 family dwelling, this exclusion does not apply to the portions that are rented by **you** to others or held for rental by **you** to others for use only as a residence.

5. **Care of Persons. We** do not cover **your** legal liability to any person resulting from **your** regular care of one or more persons anywhere for economic gain and regardless of whether such care or premises is licensed or not. The mutual exchange of home day care services is not considered to be for economic gain. This exclusion does not apply to **your** occasional care or babysitting.

6. **Professional Services. We** do not cover **bodily injury** or **property damage** arising out of the rendering of or failing to render professional services of any kind.

7. **Other Premises. We** do not cover **bodily injury** or **property damage** arising out of the use of any premises owned, rented or controlled by **you**. Coverage does apply to:
   A. the **insured premises;** and
   B. **bodily injury** to a **residence employee**.

8. **Motorized Land Vehicles. We** do not cover **bodily injury** or **property damage** arising out of:
   A. the ownership, maintenance, occupancy, operation, use, loading or unloading of a motorized land vehicle or trailer owned or operated by or rented or loaned to **you;**
   B. the entrustment by **you** of a motorized land vehicle or trailer to any person;
   C. the failure to supervise or negligent supervision by **you** of any person involving a motorized land vehicle or trailer; or
   D. vicarious liability, whether or not imposed by law, for the actions of a child or minor involving a motorized land vehicle or trailer.

   Coverage is extended for **bodily injury** and **property damage** arising out of:
   a. a motorized land vehicle or trailer in dead storage on the **insured premises;**
   b. a motorized land vehicle used exclusively on the **insured premises;**
   c. a trailer while not being towed or carried by a motor vehicle;
   d. a motorized land vehicle, owned by **you**, principally designed for recreational use off public roads, and not subject to motor vehicle registration, while on an **insured premises;**
   e. a motorized land vehicle, not owned by **you**, principally designed for recreational use off public roads, and not subject to motor vehicle registration;
   f. a motorized land vehicle principally designed to service residential property;
   g. a motorized wheel chair; or
   h. a motorized golf cart:
      1) while used to play golf on a golf course including crossing public roads at designated points to access other parts of the golfing facility; or
      2) when operated within the legal boundaries of a private residential community which is subject to the authority of a property owners association and contains the insured premises, including its public roads upon which a motorized golf cart can legally travel.

   Coverage is extended for **bodily injury** to a **residence employee** arising out of and in the course of the **residence employee's** employment by **you**.

9. **Watercraft. We** do not cover **bodily injury** or **property damage** arising out of:
   A. the ownership, maintenance, occupancy, operation, use, loading or unloading of watercraft of any type owned or operated by or rented or loaned to **you;**
   B. the entrustment by **you** of a watercraft of any type to any person;
   C. the failure to supervise or negligent supervision by **you** of any person involving a watercraft of any type; or
   D. vicarious liability, whether or not imposed by law, for the actions of a child or minor involving a watercraft of any type.

   Coverage is extended for **bodily injury** and **property damage** arising out of:
   a. any watercraft on the **insured premises;**

EXHIBIT A

# LIABILITY, MEDICAL EXPENSES AND
# OPTIONAL COVERAGES

HP6200 0205

    b.  any watercraft while stored;

    c.  watercraft, owned or furnished or available for **your** regular use:

       1)  that is powered by one or more motors with 50 total horsepower or less. This includes watercraft propelled by a water jet pump engine or motor; or

       2)  that is a sailing vessel 31 feet and under in length with or without auxiliary power;

    d.  rented watercraft:

       1)  powered by one or more outboard motors;

       2)  that is 31 feet and under in length with an inboard or inboard-outdrive motor. This includes watercraft propelled by a water jet pump engine or motor; or

       3)  that is a sailing vessel 31 feet and under in length with or without auxiliary power; or

    e.  watercraft not owned by **you**, not rented to **you** nor furnished or available for **your** regular use.

This coverage is excess coverage over and above any other collectible insurance.

However, this Watercraft exclusion is deleted with respect to any watercraft, including any accompanying equipment and motors, for which **you** acquire ownership if **you** ask **us** to insure the property within 30 days of acquisition and pay any additional premiums.

Coverage is extended for **bodily injury** to a **residence employee** arising out of and in the course of the **residence employee's** employment by **you.**

10. **Hovercraft. We** do not cover **bodily injury** or **property damage** arising out of:

    A.  the ownership, maintenance, occupancy, operation, use, or loading or unloading of a hovercraft owned or operated by or rented or loaned to **you;**

    B.  the entrustment by **you** of a hovercraft to any person;

    C.  the failure to supervise or negligent supervision by **you** of any person involving a hovercraft; or

    D.  vicarious liability, whether or not imposed by law, for the actions of a child or minor involving a hovercraft.

Coverage is extended for **bodily injury** to a **residence employee** arising out of and in the course of the **residence employee's** employment by **you,** except while engaged in the operation or maintenance of hovercraft.

Hovercraft means a self-propelled motorized ground effect vehicle and includes, but is not limited to, flarecraft and air cushion vehicles.

11. **Aircraft. We** do not cover **bodily injury** or **property damage** arising out of:

    A.  the ownership, maintenance, occupancy, operation, use, or loading or unloading of an aircraft owned or operated by or rented or loaned to **you;**

    B.  the entrustment by **you** of an aircraft to any person;

    C.  the failure to supervise or negligent supervision by **you** of any person involving an aircraft; or

    D.  vicarious liability, whether or not imposed by law, for the actions of a child or minor involving an aircraft.

Coverage is extended for **bodily injury** to a **residence employee** arising out of and in the course of the **residence employee's** employment by **you,** except while engaged in the operation or maintenance of aircraft.

12. **War. We** do not cover **bodily injury** or **property damage** caused directly or indirectly by war, including undeclared war, civil war, insurrection, rebellion, revolution, warlike act by a military force or military personnel, destruction or seizure or use for a military purpose, and including any consequence of any of these. Discharge of a nuclear weapon will be deemed to be a warlike act even if accidental.

13. **Injury of an Insured. We** do not cover **bodily injury** to any insured within the meaning of Part 1 of the definition of **you.** This exclusion applies regardless of whether claim is made or suit is brought against **you** by the injured person or by a third party seeking contribution or indemnity.

14. **Controlled Substance. We** do not cover **bodily injury** or **property damage** arising out of the use, sale, manufacture, delivery, transfer or possession by any person of a Controlled Substance, as defined by the Federal Food and Drug Law, Act 21 U.S.C.A. Sections 811 and 812, including any amendments. Controlled

EXHIBIT A

# LIABILITY, MEDICAL EXPENSES AND OPTIONAL COVERAGES

## HP6200 0205

Substance includes, but is not limited to, cocaine, LSD, marijuana, and all narcotic or hallucinogenic drugs. However, this exclusion does not apply to the legitimate use of prescription drugs by a person following the orders of a licensed physician.

15. **Fungus and Mold**
    A. **We** do not cover **bodily injury**, **property damage** or **personal injury** directly or indirectly caused by or resulting from inhalation, ingestion, existence or exposure to **fungus and mold**. However, **we** do cover **bodily injury** to the extent that **fungus and mold** are on or are contained in a good or product intended for consumption.
    B. **We** do not cover damages arising out of **property damage** or **personal injury** and any costs or expenses or loss incurred as a result of any government directive, law, regulation, request, requirement or mandate to remove, clean up, test, monitor, abate, contain, neutralize or treat **fungus and mold**.
    C. **We** do not cover **bodily injury**, **property damage** or **personal injury** caused by or resulting from **your** failure to disclose the existence, whether known or unknown, on an **insured premises** of **fungus and mold**.
    This exclusion applies regardless of any other cause, event, material, product and/or building component that contributed concurrently or in any sequence to the injury or damage.

16. **Failure to Disclose.** **We** do not cover **bodily injury**, **property damage** or **personal injury** caused by or resulting from **your** failure to disclose any condition of property, whether known or unknown, sold to a buyer of the **residence premises.**

17. **Communicable Disease.** **We** do not cover **bodily injury** caused by or resulting from any of the following which are transmitted by **you** to any other person: disease, bacteria, parasite, virus or other organism. Furthermore, **we** do not cover **bodily injury** resulting from the exposure to any such disease, bacteria, parasite, virus or other organism by **you** to any other person.

18. **Abuse.** **We** do not cover **bodily injury** or **personal injury** caused by or resulting from the actual, alleged or threatened sexual molestation or contact, corporal punishment, physical abuse, mental abuse or emotional abuse of a person. This exclusion applies whether the **bodily injury** is inflicted by **you** or directed by **you** for another person to inflict sexual molestation or contact, corporal punishment, physical abuse, mental abuse or emotional abuse upon a person.

19. **Emotional and Mental Anguish.** **We** do not cover **bodily injury** or **personal injury** caused by or resulting from emotional distress, mental anguish, humiliation, mental distress, mental injury, or any similar injury. However, this exclusion does not apply if the person seeking damages from emotional distress, mental anguish, humiliation, mental distress, mental injury, or any similar injury has first experienced direct physical harm.

## COVERAGE F - PERSONAL LIABILITY

1. **Loss Assessment.** **We** do not cover liability for **your** share of any loss assessment charged against all members of an association, corporation or community of property owners, except as specifically provided in **SECTION II - ADDITIONAL COVERAGES** for **Loss Assessment.**
2. **Contract.** **We** do not cover liability assumed by **you** under any unwritten contract or agreement, or by any contract or agreement in connection with **your business.**
3. **Owned Property.** **We** do not cover **property damage** to property owned by **you.** This includes costs or expenses incurred by **you** or others to repair, replace, enhance, restore or maintain such property to prevent injury to a person or damage to property of others, whether on or away from an **insured premises.**
4. **Care, Custody or Control.** **We** do not cover **property damage** to property occupied or used by **you,** rented to **you,** in **your** care or over which **you** have physical control. However, coverage is extended for:
    A. **property damage** caused by fire, explosion or smoke; or
    B. **property damage** arising out of the ownership, maintenance or use of a waterbed at the **residence premises.** A waterbed is a bed with a liner and a liquid filled sealed mattress. However, **we** do not cover:
       1. property owned by **you;** or
       2. **property damage** caused by sagging or collapse of the floor if it is determined that the building construction does not conform to government building codes.
5. **Nuclear.** **We** do not cover **bodily injury** or **property damage** for which **you** are insured under any

EXHIBIT A

# LIABILITY, MEDICAL EXPENSES AND
## OPTIONAL COVERAGES

### HP6200 0205

nuclear energy liability policy or would be insured but for the exhaustion of its limit of liability.

6. **Workers' Compensation Law. We** do not cover **bodily injury** to any person eligible to receive benefits required to be provided or voluntarily provided by **you** under any workers' compensation, non-occupational disability or occupational disease law.

7. **Punitive. We** do not cover **bodily injury, property damage** or **personal injury** awards designated as punitive, exemplary, or statutory multiple damages.

8. **Computer Systems and Data. We** do not cover **property damage** resulting from any error, virus or malicious entry in **computer** programming, instructions or code introduced or transmitted by **you** into any data, **computer, peripheral device, media** or **purchased software.**

9. **Personal Injury, We** do not cover:
   A. liability assumed by **you** under any contract or agreement except any indemnity obligation assumed by **you** under a written agreement directly relating to the ownership, maintenance or use of the **insured premises;**
   B. injury caused by a violation of a criminal act committed by **you** or with **your** knowledge or consent;
   C. injury sustained by any person as a result of an offense directly or indirectly related to the employment of this person by **you;**
   D. injury arising out of **your business** activities. However, **we** cover **personal injury** arising out of the rental or holding for rental by **you** of any part of a premises for use only as a residence that is an **insured premises** under:
      1. this policy; or
      2. another policy for personal liability issued by Metropolitan Property and Casualty Insurance Company or any of its affiliates;
      unless a portion is rented to more than two roomers or boarders;
   E. civic or public activities performed for pay by **you;**
   F. injury caused by **you** or at **your** direction with the knowledge that the act would violate the rights of another and would inflict **personal injury;**
   G. injury arising out of oral, written or representational publication of material, if done by **you** or at **your** direction with knowledge of its falsity;
   H. injury arising out of oral, written or representational publication of material whose first publication took place before the beginning of the policy period; or
   I. **personal injury** to any insured within the meaning of Part 1 of the definition of **you.** This exclusion applies regardless of whether claim is made or suit is brought against **you** by the injured person or by a third party seeking contribution or indemnity.

## COVERAGE G - MEDICAL PAYMENTS TO OTHERS

1. **Residence Employee. We** do not cover **bodily injury** to a **resident employee** if the **bodily injury** occurs off the **insured premises** and does not arise out of or in the course of the **residence employee's** employment by **you.**

2. **Nuclear. We** do not cover **bodily injury** from nuclear reaction, radiation or radioactive contamination, all whether controlled or uncontrolled or however caused, or any consequence of any of these.

3. **Residents. We** do not cover **bodily injury** to any regular resident of the **insured premises,** except **your residence employee.**

4. **Workers' Compensation Law. We** do not cover **bodily injury** to any person eligible to receive benefits required to be provided or voluntarily provided under any workers' compensation, non-occupational disability or occupational disease law.

### SECTION II - ADDITIONAL COVERAGES

**We** cover the following in addition to the limits of liability for **COVERAGE F - PERSONAL LIABILITY** or **COVERAGE G - MEDICAL PAYMENTS TO OTHERS.**

1. **Damage to Property of Others. We** will pay up to $1500 each time **you** cause **property damage** to someone else's property during the term of the policy. At **our** option, **we** will pay the cost to either repair or replace the damaged property.

   **We** do not cover **property damage:**
   A. to property covered in Section I of this policy;

EXHIBIT A

# LIABILITY, MEDICAL EXPENSES AND
## OPTIONAL COVERAGES

**HP6200 0205**

B. caused intentionally by **you** if **you** are 13 years of age or older;

C. to property owned by or rented to **you**, any of **your** tenants or any resident of **your** household; or

D. arising out of:

1. any act or omission in connection with premises **you** own, rent or control, other than the **insured premises;**

2. **business** activities; or

3. the ownership, maintenance, occupancy, operation, use, loading or unloading of any motorized land vehicle, aircraft, hovercraft or watercraft of any type.

   However, **we** cover **property damage** to property of others arising out of the ownership, maintenance, occupancy, operation, use, loading or unloading of:

   a. a motorized land vehicle or trailer in dead storage on the **insured premises;**

   b. a motorized land vehicle used exclusively on the **insured premises;**

   c. a trailer while not being towed or carried by a motor vehicle;

   d. a motorized land vehicle, owned by **you**, principally designed for recreational use off public roads, and not subject to motor vehicle registration, while on an **insured premises;**

   e. a motorized land vehicle, not owned by **you**, principally designed for recreational use off public roads, and not subject to motor vehicle registration;

   f. a motorized land vehicle principally designed to service residential property;

   g. a motorized wheel chair; or

   h. a motorized golf cart:

      1) while used to play golf on a golf course including crossing public roads at designated points to access other parts of the golfing facility; or

      2) when operated within the legal boundaries of a private residential community which is subject to the authority of a property owners association and contains the **insured premises,** including its public roads upon which a motorized golf cart can legally travel.

2. **Claim Expenses. We** will pay:

   A. all costs **we** incur and costs taxed against **you** in any suit **we** defend;

   B. premiums on bonds required in any suit **we** defend, but not for bond amounts greater than the limit of liability for **COVERAGE F - PERSONAL LIABILITY. We** are not obligated to apply for or furnish any bonds;

   C. reasonable expenses **you** incur at **our** request;

   D. up to $250 per day for lost wages or salary, but not other income, because **you** attended a hearing or trial at **our** request; and

   E. interest on the entire judgment awarded in any suit **we** defend which accrues after judgment is entered and before **we** pay, tender or deposit in court the amount for which **we** are liable under this policy.

3. **First Aid Expenses. We** will pay expenses for first aid to others **you** incur at the time of the accident for **bodily injury** to which this insurance applies. **We** will not pay for first aid to **you.**

4. **Loss Assessment. We** will pay up to $10,000 for **your** share of any loss assessment charged during the policy period against **you** by a corporation or association of property owners. This coverage applies only to loss assessments charged against **you** as owner or tenant of the **insured premises.**

If a limit of liability is shown in the Declarations for Increased Loss Assessment, the $10,000 limit is increased to amount shown.

This only applies when the assessment is made as a result of:

A. each **occurrence** to which Section II of this policy would apply; or

B. liability for each act of a director, officer or trustee in the capacity as a director, officer or trustee, provided:

1. the director, officer or trustee is elected by the members of a corporation or association of property owners; and

2. the director, officer or trustee serves without deriving any income from the exercise of duties which are solely on behalf of a corporation or association of property owners.

Regardless of the number of assessments, the limit referenced above is the most **we** will pay for loss arising out of:

EXHIBIT A

# LIABILITY, MEDICAL EXPENSES AND OPTIONAL COVERAGES

### HP6200 0205

A. one accident, including continuous or repeated exposure to substantially the same general harmful condition; or

B. a covered act of a director, officer or trustee. An act involving more than one director, officer or trustee is considered to be a single act.

This coverage shall be excess over any other insurance covering the corporation or association of property owners. This specific provision does not apply if **your** assessment results from a deductible in the policy of insurance purchased by a corporation or association of property owners.

**We** will pay only when the assessment exceeds $250 and then only for the amount of such excess. This coverage is not subject to any deductible contained in Section I of this policy.

**We** do not cover assessments charged against **you** or a corporation or association of property owners by any governmental body.

5. **Rented or Borrowed Watercraft. We** will pay up to $25,000 for **property damage** to watercraft, including any accompanying equipment, motors and trailers, which **you** rent or borrow if there is no other insurance or coverage provided by this or any other insurance policy or written contract for the rented or borrowed property.

## SECTION II - CONDITIONS

1. **Your Duties in the Event of an Accidental Loss.** In the event of an **occurrence** or offense, **we** have no obligation to provide coverage under this policy if **you** fail to comply with the following duties.
   A. Promptly notify **us** or **our** representative, in writing, stating:
      1. **your** name and policy number;
      2. the date, place and circumstances of the accident;
      3. the name and address of anyone who might have a claim against **you**; and
      4. the names and addresses of any witnesses.
   B. Immediately send **us** any legal papers relating to the accident.
   C. At **our** request, **you** must:
      1. cooperate with **us** and assist **us** in any matter concerning a claim or suit;
      2. help **us** enforce any right of recovery against any person or organization who may be liable to **you**;
      3. attend any hearing or trial; and
      4. help **us** in collecting and giving evidence and obtaining the attendance of witnesses.
   D. Under damage to Property of Others in Section II - Additional Coverages, give **us** a sworn statement of the loss within 60 days after the loss. Also, be prepared to show **us** any damaged property under **your** control.
   E. **You** must not voluntarily pay any money, assume any obligations, or incur any expenses, other than for first aid to others at the time of the loss as provided for in this policy.

2. **What an Injured Person Must Do Under Coverage G - Medical Payments to Others.** The injured person, or someone acting for that person, must do the following.
   A. Promptly give **us** written proof of the claim. If **we** request, this must be done under oath.
   B. Give **us** written authorization to obtain copies of all medical records and reports.
   C. Permit doctors **we** select to examine the injured person as often as **we** may reasonably require.

EXHIBIT A

# LIABILITY, MEDICAL EXPENSES AND OPTIONAL COVERAGES

**HP6200 0205**

## OPTIONAL COVERAGES

The following coverages are afforded only if indicated in the Declarations. They are subject to all other provisions of this policy, except as modified herein.

### EARTHQUAKE AND VOLCANIC ERUPTION

1. **We** will pay for direct physical loss to the property described in Coverages A, B and C caused by Earthquake or Volcanic Eruption.

   One or more earthquake shocks that occur within a seventy-two hour period shall constitute a single earthquake. One or more volcanic eruptions that occur within a seventy-two hour period shall constitute a single volcanic eruption.

   **We** do not pay for loss resulting directly or indirectly by flood or tidal wave, whether caused by, resulting from, contributed to or aggravated by earthquake or volcanic eruption.

   This coverage does not increase the limits of liability stated in this policy.

2. Under **SECTION I - ADDITIONAL COVERAGES, Collapse, we** will also pay for sudden and accidental direct physical loss to covered property involving the entire collapse of a building or any part of a building caused by earthquake or volcanic eruption.

3. Under **SECTION I - LOSSES WE DO NOT COVER,** item 1.E. **Earth Movement,** is amended to delete earthquake, earthquake aftershocks, volcanic eruption and volcanic effusion. All other provisions of this exclusion remain in effect.

4. **Deductible. We** will pay only that part of the loss caused by earthquake or volcanic eruption over the deductible shown in the Declarations for Earthquake and Volcanic Eruption. The deductible amount shall apply to loss separately for each coverage that applies to the damaged property under **COVERAGE A - DWELLING, COVERAGE B - PRIVATE STRUCTURES** and **COVERAGE C - PERSONAL PROPERTY.**

   If the deductible shown in the Declarations for Earthquake and Volcanic Eruption is a percentage (%), the dollar amount of the deductible is determined by multiplying the deductible percentage (%) shown by the Coverage A, B or C Amounts separately for each coverage that applies to the damaged property.

5. **Masonry Veneer Damage Exclusion.** The following exclusion applies only when indicated in the Declarations: **We** do not cover loss to exterior masonry veneer of the property described in Coverages A and B resulting from or caused by earthquake or volcanic eruption. The deductible shown in the Declarations for Earthquake and Volcanic Eruption applies to loss not including damage to exterior masonry veneer. The use of the term "masonry veneer" above does not include stucco.

### PRIVATE STRUCTURES RENTED TO OTHERS

Coverage is afforded only if indicated in the Declarations.

**COVERAGE B - PRIVATE STRUCTURES** is provided for the private structures rented to others described in the Declarations. **Our** limit of liability under Private Structures Rented to Others is the amount shown in the Declarations.

The insurance provided under **COVERAGE F - PERSONAL LIABILITY** and **COVERAGE G - MEDICAL PAYMENTS TO OTHERS** is extended to cover **bodily injury** and **property damage** arising out of the private structure rented to others described in the Declarations.

### BUSINESS PURSUITS

Coverage is afforded only if indicated in the Declarations.

EXHIBIT A

## LIABILITY, MEDICAL EXPENSES AND OPTIONAL COVERAGES

HP6200 0205

The insurance provided in Section II is extended to cover **bodily injury** and **property damage** arising out of the specified **business** activities of the person(s) designated in the Declarations.

### Losses We Do Not Cover

1. **We** do not cover **bodily injury** and **property damage** arising out of **business** activities when the **business** is owned or financially controlled by **you** or by a partnership or joint venture of which **you** are a partner or member.
2. **We** do not cover **bodily injury** and **property damage** arising out of the rendering or failure to render a professional service, other than teaching or school administration.
3. **We** do not cover **bodily injury** to **your** fellow employee arising in the course of employment.
4. **We** do not cover **your** legal liability to any person resulting from **your** regular care of one or more persons anywhere for economic gain and regardless of whether such care or premises is licensed or not. The mutual exchange of home day care services is not considered to be for economic gain. This exclusion does not apply to **your** occasional care or babysitting.
5. When **you** are a member of the faculty or teaching staff of any school or college, **we** do not cover **bodily injury** and **property damage** arising out of: (a) the ownership, maintenance, occupancy, operation, use, loading, unloading of; (b) entrustment by **you** to any person of; or (c) the failure to supervise or negligent supervision of any person involving:
   A. draft or saddle animals, including vehicles used with them;
   B. aircraft;
   C. hovercraft. Hovercraft means a self-propelled motorized ground effect vehicle and includes but is not limited to, flarecraft and air cushion vehicles;
   D. motorized land vehicles or trailers; or
   E. watercraft of any type;
   that are owned, hired or operated by or for **you** or **your** employer or used by **you** for the purpose of instruction
6. When **you** are a member of the faculty or teaching staff of any school or college, **we** do not cover **bodily injury** to any pupil arising out of corporal punishment administered by **you** or at **your** direction.

### WATERCRAFT LIABILITY

Coverage is afforded only if indicated in the Declarations.

The insurance provided under **COVERAGE F - PERSONAL LIABILITY** and **COVERAGE G - MEDICAL PAYMENTS TO OTHERS** is extended to cover **bodily injury** and **property damage** arising out of a watercraft described in the Declarations.

### Losses We Do Not Cover

1. **We** do not cover **bodily injury** to any of **your** employees arising out of and in the course of employment. This exclusion applies only if the employee's principal duties are in connection with the maintenance or operation of such watercraft.
2. **We** do not cover such watercraft while it is used to carry persons or cargo for a charge or it is rented to others.
3. **We** do not cover **bodily injury** or **property damage** resulting from an **occurrence** in which a watercraft is being operated in, or practicing for, any prearranged or organized race, speed contest or other competition. However, coverage is extended when **your** watercraft described in the Declarations is: (a) a sailing vessel; (b) in a predicted-log cruise; or (c) in a timed fishing contest or tournament.

### INCIDENTAL BUSINESS OCCUPANCY BY YOU

Coverage is afforded only if indicated in the Declarations.

The coverage provided by this option applies only to the incidental **business** occupancy described in the Declarations.

If the **business** occupancy described in the Declarations is located in a private structure on the **residence premises, COVERAGE B - PRIVATE STRUCTURES** applies to such structure.

EXHIBIT A

# LIABILITY, MEDICAL EXPENSES AND OPTIONAL COVERAGES

FILED

HP6200 0205

8/9/2021 4:21 PM
IRIS Y. MARTINEZ
CIRCUIT CLERK
COOK COUNTY, IL
2021L 008013

The **COVERAGE C - PERSONAL PROPERTY** Amount applies to equipment, supplies and furnishings usual or incidental to the **business** described in the Declarations while located in the structure described in the Declarations.

This does not include any **computer** and the **peripheral device, media** or **purchased software** used with it. This also does not include merchandise held as samples or for sale or delivery after a sale.

The insurance provided under **COVERAGE F - PERSONAL LIABILITY** and **COVERAGE G - MEDICAL PAYMENTS TO** OTHERS is extended to afford coverage for **bodily injury** and **property damage** arising out of **your business** activities which are usual or incidental to the use of the **residence premises.**

## Losses We Do Not Cover

1. **We** do not cover **bodily injury** to any employee other than a **residence employee.**
2. **We** do not cover **bodily injury** to any student arising out of corporal punishment administered by **you** or at **your** direction.
3. **We** do not cover liability arising out of any acts, omissions or errors of **you** or any other person for whose acts **you** are liable, resulting from the preparation or approval of data, plans, designs, opinions, reports, programs, specification, supervisory inspections or engineering services in the conduct of **your** incidental **business** involving data processing, **computer** consulting or **computer** programming.
4. **We** do not cover **your** legal liability to any person resulting from **your** regular care of one or more persons anywhere for economic gain and regardless of whether such care or premises is licensed or not. The mutual exchange of home day care services is not considered to be for economic gain. This exclusion does not apply to **your** occasional care or babysitting.

EXHIBIT A

HP7000 0902

# GENERAL CONDITIONS

1. **Policy Period.** This policy applies only to accidental loss in Section I or **bodily injury** and **property damage** in Section II, which occurs during the policy period.

2. **Concealment or Fraud.** If any person defined as **you** conceals or misrepresents any material fact or circumstance or makes any material false statement or engages in fraudulent conduct affecting any matter relating to this insurance or any loss for which coverage is sought, whether before or after a loss, no coverage is provided under this policy to any person defined as **you.**

3. **Conformity to Statute.** The terms of this policy which are in conflict with the statutes of the state in which the **insured premises** is located are hereby amended to conform to such statutes.

4. **Death.** If any person named in the Declarations dies, **we** insure:
   A. the spouse, if a resident of the household at the time of death;
   B. the legal representative of the deceased, but only with respect to the premises and property of the deceased covered by this policy at the time of death;
   C. any member of the deceased's household who was covered at the time of death, but only while a resident of the **insured premises;** and
   D. with respect to the property of the deceased, the person having proper temporary custody thereof, but only until appointment and qualification of a legal representative.

5. **Policy Changes**
   A. This policy contains all of the agreements between **you** and **us.** The terms of this policy may not be changed or waived except by endorsement issued by **us. Our** request for an appraisal or examination under oath will not waive any of **our** rights.

   B. **We** will automatically give **you** the benefit of any extension or broadening of this edition of the policy if:
   1. the change does not require additional premiums; and
   2. the change is not implemented with a general revision that includes both the broadening and restriction of coverage.

6. **Assignment. You** may not assign this policy to another person without **our** written consent.

7. **Bankruptcy or Insolvency. Your** bankruptcy or insolvency will not relieve **us** of any obligation under this policy.

8. **Our Recovery Right. You** may waive in writing before a loss all rights of recovery against any person. If not waived, **we** may require an assignment of rights of recovery for a loss to the extent that payment is made by **us.**

   If an assignment is sought, **you** must sign and deliver all related papers and cooperate with **us.**

   This does not apply under Section II to **COVERAGE G - MEDICAL PAYMENTS TO OTHERS** or under **SECTION II - ADDITIONAL COVERAGES** to **Damage to Property of Others.**

9. **Lawsuits Against Us.** No suit or action may be brought against **us** by **you** unless there has been full compliance with all of the policy terms.

   Under Section I of this policy, any suit or action seeking coverage must be brought within twelve months of the loss.

   Under Section II of this policy, no one may sue **us** until the amount of legal liability has been finally determined either by judgment after trial or by written agreement of **you,** the injured person and **us.**

   No one shall have any right to make **us** a party to a suit to determine **your** liability.

---

EXHIBIT A

# GENERAL CONDITIONS

## HP7000 0902

10. **Other Insurance and Service Agreement.** If other insurance is available to **you** for a loss covered under Section I of this policy, **we** will pay the proportionate amount that this insurance bears to the total amount of all applicable insurance. However, this insurance is excess over any other insurance that covers loss by theft or loss of personal property on an unspecified peril basis.

If a loss covered under Section I of this policy is also covered by a service agreement available to **you**, this insurance is excess over any amounts payable under any such agreement. Service agreement means a service plan, property restoration plan, home warranty or other similar service warranty agreement, even if it is characterized as insurance.

If other insurance is available to **you** for a loss covered under **COVERAGE F - PERSONAL LIABILITY** of this policy, this insurance is excess over other valid and collectible insurance except insurance written specifically to cover as excess over the limits of liability that apply in this policy.

11. **Premium.** All premiums for this policy will be computed in accordance with **our** rules, rates, rating plans, premiums and minimum premiums in effect at the beginning of **your** current policy period. Each year, the premium for renewal of this policy will be computed on the basis of **our** manuals then in use for the effective date of the renewal of the policy.

The premiums **we** charge are based on the information provided by **you** on **your** application and other information **we** possess. **You** agree to help **us** obtain correct and complete information. **We** are permitted to adjust **your** premiums when this information changes.

Any premium adjustments made for any reason will be rounded to the nearest dollar, in accordance with the manuals in use by **us**. Any change which results in premium adjustment of less than $2.00 will be carried forward to the next billing as long as the policy remains active.

Premiums are payable on the dates set forth by **us**.

12. **Cancellation**
**You** may cancel this policy by telling **us** on what future date **you** wish to stop coverage. If **you** cancel **your** policy, the earned premium may be computed in accordance with **our** short rate method.

**We** may cancel this policy by delivering to **you** or by mailing to **you**, at **your** last known address shown on **our** records, notice stating when such cancellation will be effective. In any case of termination of this policy by **us**, **our** mailing of notice will constitute proof of notice as of the date **we** mail it. **We** will comply with any law relating to the termination of this policy which contains different requirements. If **we** cancel **your** policy, the earned premium will be computed pro-rata and the returned premium shall be rounded to the nearest dollar. The refund will be made as soon as practicable after cancellation becomes effective, but payment or tender of unearned premiums is not a condition of cancellation.

A. This notice will be mailed to **you** not less than the minimum number of days required by state law if **you** have not paid **your** premium when it is due.

B. This notice will be mailed to **you** not less than 20 days prior to the effective date of cancellation if this policy has been in effect less than 60 days, and is not a renewal with **us**, at the time notice of cancellation is mailed.

C. This notice will be mailed to **you** not less than 20 days prior to the effective date of cancellation if this policy has been in effect for 60 days or more, or if the policy is a renewal with **us**, and any one of the following conditions exist:
   1. the policy was obtained through material misrepresentation, fraudulent statements, omissions or concealment of facts pertinent to acceptance by **us**;
   2. there has been a substantial change in the covered property which increased the hazards **we** originally agreed to insure;
   3. there have been willful or negligent acts or omissions by **you** which increased the hazards **we** originally agreed to insure;

EXHIBIT A

# GENERAL CONDITIONS                    HP7000 0902

4.  continuation of the policy would be in violation of the law; or

5.  any person defined as **you** conceals or misrepresents any material fact or circumstance or engages in any fraudulent conduct in making a claim under this policy.

13. **Nonrenewal.** **We** may elect not to renew this policy. **We** may do so by delivering to **you**, or mailing to **you** at **your** mailing address shown in the Declarations, written notice at least 30 days before the renewal date of this policy. Proof of mailing will be sufficient proof of notice.

If **we** offer to renew or continue and **you** do not accept, this policy will automatically terminate at the end of the current policy period. Failure to pay the required renewal or continuous premium when due will mean that **you** have not accepted **our** offer.

In Witness Whereof, **we** have caused this policy to be signed by **our** President and **our** Secretary at Warwick, Rhode Island. In the event that the President or Secretary who signed this contract cease to be **our** officers either before or after the contract is issued, the contract may be issued with the same effect as if they were still **our** officers.

Secretary                              President

EXHIBIT A

# ENDORSEMENT C114B

## SINGLE DEDUCTIBLE LOSS CLAUSE

**Your package policy** is changed to add the following to the property loss deductible clause.

This clause applies upon submitting a claim for:

a. more than one **kind of property**; or

b. more than one item of the same **kind of property** when separate deductibles would apply;

and such property is damaged or destroyed in the same occurrence.

However, this provision does not apply if any of the requirements of a **package policy** are no longer met.

The deductible amount(s) retained by **you** will be, at **your** choice, either of the following:

A. **Single Deductible**
**You** will be responsible for only one deductible. The deductible that will apply is the highest deductible applicable for any item of covered property in the loss.

For the purpose of this endorsement, the single deductible for homeowner claims, caused by earthquake and volcanic eruption is considered the aggregate sum of the separate deductibles by coverage as outlined in the Earthquake and Volcanic Eruption optional coverage.

When more than one deductible is equal to the highest, the single deductible that will apply to the **loss** is determined as follows:

1. When more than one **kind of property** has a deductible equal to the highest the deductible that will apply is the one with the highest earned **Deductible Savings Benefit** (if any);

2. When more than one **kind of property** has a deductible equal to the highest and the earned **Deductible Savings Benefits** are equal, the deductible that will apply is the one for the item with the highest amount of loss; or

3. When more than one **kind of property** has a deductible equal to the highest and no **Deductible Savings Benefit** is applicable, the deductible that will apply is the one for the item with the highest amount of loss.

B. **Multiple Deductibles**
**You** will be responsible for all the deductibles applicable to covered property in the loss as each would be separately applied.

**"Kind of property"** means property insured under **your** Automobile Physical Damage Coverage, Homeowners Section I Coverage or Boatowners Section I Coverage.

**"Deductible Savings Benefit"** means the deductible reductions program set forth in the **kind of property** rating rules (if applicable).

**"Package policy"** means a package of policies that is comprised of not less than one auto and not less than one owner occupied home whether a dwelling, condominium unit or leased property and is identified on the Declarations Page as either "GrandProtect" or "Combo".

All other provisions of this policy apply except as modified by this endorsement.

EXHIBIT A

## ENDORSEMENT C116A

### CIVIL UNION

State law requires that insurance policies provide civil union couples the same benefits and protection as granted to spouses in a marriage.   A spousal relationship will now include civil union couples.

**For any term denoting a marital relationship, it is understood that all policy definitions, provisions and endorsements designating:**

- **marriage**

- **relative**

- **family member**

- **an insured**

- **named insured**

- **who is insured**

- **who is an insured**

- **who is a named Insured**

- **covered person(s)**

- **you and / or your**

- **spouse**

- **and any other policy definitions and provisions designating an insured under this policy**

**are amended to include civil union couples under state law.**

EXHIBIT A

# ENDORSEMENT HA01IL 0705

## ILLINOIS
## AMENDATORY ENDORSEMENT

1.  Under **GENERAL DEFINITIONS, "Bodily injury"** is deleted and replaced by:

    **"Bodily injury"** means any physical harm to the body including any resulting sickness or disease. This term includes required care, loss of services and death if it is a result of such physical harm, sickness or disease.

    **Bodily injury** does not include:
    1.  any of the following which are transmitted by **you** to any other person: AIDS, herpes or any other sickness or disease which is transmissible from person to person by direct contact with an affected individual or that person's discharges or by intravenous injection;
    2.  the exposure to any such sickness or disease mentioned in item a. above by **you** to any other person; or
    3.  emotional distress, mental anguish, humiliation, mental distress, mental injury, or any similar injury unless the direct result of physical harm.

2.  Under **SECTION I - ADDITIONAL COVERAGES:**

    A.  item 1. **Loss of Use:**

        1.  item A., the first paragraph is deleted and replaced by:

            A.  **Additional Living Expense / Fair Rental Value.** This applies upon loss to covered property resulting from a covered cause of loss. However, this does not apply for damages resulting from **fungus and mold,** whether or not the **fungus and mold** is the result of a covered loss.

                When a covered property loss makes that part of the **residence premises** where **you** reside not fit to live in, **we** will pay, at **your** choice, either of the following. However, if the **residence premises** is not **your** principal place of residence, **we** will not provide the option under paragraph 2. below.

        2.  item B. is deleted and replaced by:

            B.  **Loss of Rental Income.** This applies upon loss to covered property resulting from a covered cause of loss. However, this does not apply for damages resulting from **fungus and mold,** whether or not the **fungus and mold** is the result of a covered loss.

                **We** will pay **your** loss of rental income resulting from a covered property loss less charges and expenses which do not continue, while the part of the **residence premises you** rent to others, or hold for rental, is uninhabitable. Payment will be for the shortest time required to repair or replace the rented part. **We** do not cover the loss or expense due to cancellation of a lease or agreement.

3.  Under **SECTION I - BROAD NAMED PERILS:**

    A.  the second paragraph is deleted and replaced by:

        Under the named perils listed below, **we** do not cover loss or damage, no matter how caused, to the property which results directly or indirectly from **fungus and mold.** There is no coverage for loss which, in whole or part, arises out of, is aggravated by, contributed to by acts or omissions of persons, or results from **fungus and mold.** This exclusion applies regardless of whether **fungus and mold** arises from any other cause of loss, including but not limited to a loss involving water, water damage or discharge, which may be otherwise covered by this policy.

---

EXHIBIT A

# ENDORSEMENT HA01IL 0705

However, this exclusion does not apply to:
1. **fungus and mold** resulting from a covered fire or lightning loss. This exception for fire or lightning applies only to direct loss to covered property.
2. coverage granted under **SECTION I - ADDITIONAL COVERAGES** for **Fungus and Mold Remediation.**

B. items 8. **Vandalism or Malicious Mischief,** 12. **Discharge or Overflow of Water or Steam,** F. and 16. **Breakage of Glass or Safety Glazing Material,** the phrase "more than 30 consecutive days" is deleted and replaced by the phrase "more than 60 consecutive days".

4. Under **SECTION I - LOSSES WE DO NOT COVER:**

A. item 1., **Intentional Loss** exclusion is deleted and replaced by:

**Intentional Loss,** meaning any loss arising out of any intentional or criminal act committed:
1. by **you** or at **your** direction; and
2. with the intent to cause a loss.

This exclusion applies regardless of whether **you** are actually charged with or convicted of a crime.

In the event of such loss, no one defined as **you** or **your** is entitled to coverage, even people defined as **you** or **your** who did not commit or conspire to commit the act causing the loss.

However, this exclusion will not apply to deny payment to an innocent co-insured who did not cooperate in or contribute to the creation of loss if:
i. such loss arose out of a pattern of criminal domestic violence; and
ii. the perpetrator of the loss is criminally prosecuted for the act causing the loss.

If **we** pay a claim pursuant to the above, **our** payment to the insured person is limited to that person's insurable interest in the property less any payments **we** first make to a mortgagee or other party with a legal secured interest in the property. In no event will **we** pay more than the Limit of Liability.

B. item 3.B. is deleted and replaced by:

A. **fungus and mold.** There is no coverage for loss which, in whole or part, arises out of, is aggravated by, contributed to by acts or omissions of persons, or results from **fungus and mold.** This exclusion applies regardless of whether **fungus and mold** arises from any other cause of loss, including but not limited to a loss involving water, water damage or discharge, which may be otherwise covered by this policy.

However, this exclusion does not apply to:
1. **fungus and mold** resulting from a covered fire or lightning loss. This exception for fire or lightning applies only to direct loss to covered property.
2. coverage granted under **SECTION I - ADDITIONAL COVERAGES** for **Fungus and Mold Remediation.**

C. in Form HP3300, item 3.K., the phrase "more than 30 consecutive days" is deleted and replaced by the phrase "more than 60 consecutive days".

D. in Form HP3500, item 4.A., the phrase "more than 30 consecutive days" is deleted and replaced by the phrase "more than 60 consecutive days".

5. Under **SECTION I - CONDITIONS:**

EXHIBIT A

# ENDORSEMENT HA01IL 0705

A. **Our Settlement Options** is amended by changing the words "within 60 days" to "within 30 days" in the first paragraph.

B. **Appraisal,** the last paragraph is deleted and replaced by:
**You** will pay the appraiser selected by **you. We** will pay the appraiser whom **we** selected. **You** and **we** willsplit the other expenses of appraisal and the fee of the umpire. However, **we** will pay the appraisers, umpire fees and the other expenses of appraisal for **you** and **us** if the following conditions exist:
1. **you** demanded the appraisal; and
2. the full amount of loss, as set by **your** appraiser, is agreed to by **our** appraiser or by the umpire.

6. Under **SECTION II - LOSSES WE COVER, COVERAGE F - PERSONAL LIABILITY, Agreement,** the first paragraph is amended to delete the sentence "This includes prejudgment interest awarded against **you."**

7. Under **SECTION II - LOSSES WE DO NOT COVER, COVERAGE F - PERSONAL LIABILITY AND COVERAGE G - MEDICAL PAYMENTS TO OTHERS:**

A. item 1.A. is deleted.

B. item 2. **Pollution,** items A., B., C., D. and E. are deleted and replaced by:

A. resulting from:
    i. the discharge, dispersal, release or escape of toxic chemicals and other pollutants or contaminants;
    ii. the discharge, dispersal, release or escape of fuel oil and other petroleum products; or
    iii. sound emissions.

Coverage is provided for **bodily injury** or **property damage:**
(a) caused by heat, smoke or fumes from a hostile fire. As used in this exclusion, a hostile fire means one which becomes uncontrollable or breaks out from where it was intended to be; and
(b) resulting from the use of products normally used in the cleaning or maintenance of the household or **residence premises.**

B. statutorily imposed liability resulting from the discharge, dispersal, release or escape of toxic chemicals and other pollutants or contaminants; fuel oil and other petroleum products or sound emissions; or

C. resulting from the failure to disclose the existence on an **insured premises** of toxic chemicals and other pollutants or contaminants; fuel oil and other petroleum products; or sound emissions.

C. item 17. **Communicable Disease** is deleted and replaced by:

17. **Communicable Disease. We** do not cover **bodily injury** caused by or resulting from any of the following which are transmitted by **you** to any other person: AIDS, herpes or any other sickness or disease which is transmissible from person to person by direct contact with an affected individual or that person's discharges or by intravenous injection. Furthermore, **we** do not cover **bodily injury** resulting from the exposure to such sickness or disease by **you** to any other person.

D. item 18. **Abuse** is deleted and replaced by:

18. **Abuse.** This policy does not provide coverage for any claims or suits seeking damages, including defense of same, for anyone defined as **you** who actively participates in any act of sexual misconduct, sexual molestation, corporal punishment, or physical abuse, mental abuse or emotional abuse of any person.

8. Under **SECTION II - LOSSES WE DO NOT COVER, COVERAGE F - PERSONAL LIABILITY,** item 7. **Punitive,** the following is added:

EXHIBIT A

# ENDORSEMENT HA01IL 0705

If suit is brought seeking both Compensatory and Punitive or Exemplary Damages under the personal liability insurance afforded by this policy, **we** will afford a defense to such covered Compensatory Damages, but will not be responsible for the payment of any award of such Punitive or Exemplary Damages nor interest on any such damages.

Punitive or Exemplary Damages means punitive damages which may be imposed to punish a wrongdoer or todeter the wrongdoer or others from similar conduct; such actions may include but not limited to conduct or actions described as being willful, wanton, reckless, with malice or with deceit.

9. Under **SECTION II - CONDITIONS**, item 1. **Your Duties in the Event of an Accidental Loss**, item C.4. is deleted and replaced by:

    4.  help **us** in collecting and giving evidence.

10. Under **GENERAL CONDITIONS:**

    A.  item 2. **Concealment or Fraud** is deleted and replaced by:

        2.  **Concealment or Fraud.** If any person defined as **you** conceals or misrepresents any material fact or circumstance or makes any material false statement or engages in fraudulent conduct affecting any matter relating to this insurance or any loss for which coverage is sought, whether before or after a loss, no coverage is provided under this policy to any person defined as **you.**

        With respect to the application for this insurance or this policy, this condition does not apply once this policy has been in effect for one year or one policy period, whichever is less. Notwithstanding the limitations in this paragraph, **we** may cancel or nonrenew this policy in accordance with the terms of **General Conditions,** item 12. **Cancellation** or item 13. **Nonrenewal.**

    B.  item 9. **Lawsuits Against Us,** the second paragraph is deleted and replaced by:

        Under Section I of this policy, any suit or action seeking coverage must be brought within twelve months of the loss. This period is extended by the number of days between the date proof of loss was filed and the date the claim is denied in whole or in part.

    C.  item 12. **Cancellation** is deleted and replaced by:

        12. **Cancellation**
        **You** may cancel this policy by telling **us** on what future date **you** wish to stop coverage.

        **We** may cancel this policy by mailing to **you,** at **your** last known address shown on **our** records, notice stating when such cancellation will be effective. In any case of termination of this policy by **us,** **we** will maintain proof of mailing of such notice on a recognized U.S. Post Office form or a form acceptable to the U. S. Post Office or other commercial mail delivery service. A copy of the notice will also be sent to the agent or broker and the last known mortgagee or lienholder at the last mailing address known by **us.** **We** will comply with any law relating to the termination of this policy which contains different requirements.

        The earned premium will be computed pro-rata and the returned premium shall be rounded to the nearest dollar. The refund will be made as soon as practicable after cancellation becomes effective, but payment or tender of unearned premiums is not a condition of cancellation.

        A.  This notice will be mailed to **you** not less than 10 days prior to the effective date of cancellation if **you** have not paid **your** premium when it is due.

---

EXHIBIT A

# ENDORSEMENT HA01IL 0705

B.  This notice will be mailed to **you** not less than 30 days prior to the effective date of cancellation if this policy has been in effect less than 60 days, and is not a renewal with **us,** at the time notice of cancellation is mailed.

C.  This notice will be mailed to **you** not less than 30 days prior to the effective date of cancellation if this policy has been in effect for 60 days or more, or if the policy is a renewal with **us,** and any one of the following conditions exist:
   1.  the policy was obtained by misrepresentation or fraud; or
   2.  for any act which measurably increases the risk originally accepted.

D.  Item 13. **Nonrenewal** is deleted and replaced by:

13.  **Nonrenewal.  We** may elect not to renew this policy.  **We** may do so by mailing to **you** at **your** last known address, written notice at least 30 days before the renewal date of this policy.  **We** will maintain proof of mailing of such notice on a recognized U.S. Post Office form or a form acceptable to the U. S. Post Office or other commercial mail delivery service.  A copy of the notice will also be sent to the agent or broker and the last known mortgagee or lienholder at the last mailing address known by **us.**

If this policy has been in effect with **us** for five or more years, or the insured violated the terms or conditions of the contract, **we** will not exercise **our** right of nonrenewal unless the policy was obtained by misrepresentation or fraud or the risk originally accepted has measurably increased.  **We** may do so by mailing to **you** at **your** last known mailing address shown on **our** records, written notice at least 60 days before the renewal date of this policy.  **We** will maintain proof of mailing of such notice on a recognized U.S. Post Office form or a form acceptable to the U. S. Post Office or other commercial mail delivery service.

If **we** offer to renew or continue and **you** do not accept, this policy will automatically terminate at the end of the current policy period.  Failure to pay the required renewal or continuous premium when due will mean that **you** have not accepted **our** offer.

All other provisions of the policy apply except as modified by this endorsement.

EXHIBIT A

# ENDORSEMENT HF80IL 0904

## SCHEDULED PERSONAL PROPERTY

**AGREEMENT**

**We** cover the specifically listed items and the classes of personal property indicated by an amount of insurance in the Schedule of Personal Property.

**THE AMOUNTS SHOWN FOR EACH CLASS OR ITEM IN THE SCHEDULE ARE LIMITED BY CONDITION 2. LOSS SETTLEMENT OF THIS ENDORSEMENT.**

This coverage is subject to:

a.  the amount of insurance shown in the Schedule of Personal Property for each item or class of property;

b.  the Deductible as shown in the Schedule of Personal Property for each item or class of property. If no deductible is shown, then no deductible applies;

c.  all provisions of this endorsement; and

d.  the sections of the policy titled **"GENERAL DEFINITIONS"**, **"SECTION I - CONDITIONS"** and **"GENERAL CONDITIONS"**, except as modified by this endorsement.

**CLASSES OF PERSONAL PROPERTY**

The classes of personal property are:

**Jewelry.**

**Furs,** including garments trimmed with fur or consisting principally of fur.

**Cameras,** including projection machines, films and other items of photographic equipment.

**Musical Instruments,** including related equipment.

**Silverware,** including silver-plated ware, goldware, gold-plated ware and pewterware, but excluding pens, pencils, flasks, smoking implements or jewelry.

**Golf Equipment,** excluding golf carts. This includes the following, if owned by **you:**
a.  golf clubs;
b.  golf clothing;
c.  other clothing while contained in a locker when **you** are playing golf;
d.  golf balls for loss by fire or burglary provided there are visible marks of forcible entry into the building, room or locker; and
e.  other golf equipment.

**Fine Arts and Manuscripts.**

**Postage Stamp Collection,** meaning the following if owned by **you** or in **your** custody or control:
a.  due, envelope, official, revenue, match and medicine stamps;
b.  covers, locals, reprints, essays, proofs and other philatelic property; and
c.  books, pages and mounting of items in a. and b.

**Rare and Current Coin Collection,** meaning the following if owned by **you** or in **your** custody or control:
a.  medals, paper money, bank notes;
b.  tokens of money and other numismatic property; and

EXHIBIT A

# ENDORSEMENT HF80IL 0904

c.  coin albums, containers, frames, cards, and display cabinets in use with such collection.

**Guns.**

**Golf Carts.**

**Other Sports Equipment.**

**Miscellaneous.**  This includes items that cannot be covered under any other available class.

## NEWLY ACQUIRED PROPERTY

1.  **JEWELRY, FURS, CAMERAS, MUSICAL INSTRUMENTS, SILVERWARE, GOLF EQUIPMENT, STAMP COLLECTIONS, COIN COLLECTIONS AND GUNS**

     **We** automatically cover newly acquired property of the Jewelry, Furs, Cameras, Musical Instruments, Silverware, Golf Equipment, Stamp Collections, Coin Collections and Guns classes for up to $15,000 for each class of property. This coverage applies regardless of whether or not the class is already scheduled.

     For coverage to apply, **you** must:
     a.  report these objects to **us** within 30 days of acquisition; and

     b.  pay the additional premium from the date acquired.

2.  **FINE ARTS AND MANUSCRIPTS**

     When **you** have property already scheduled under the Fine Arts and Manuscripts class, **we** automatically cover newly acquired objects of art and manuscripts for their **actual cash value** up to $15,000.

     For coverage to apply **you** must:
     a.  report these objects to **us** within 90 days of acquisition; and

     b.  pay the additional premium from the date acquired.

3.  **OTHER SPORTS EQUIPMENT AND MISCELLANEOUS**

     When **you** have property already scheduled under the Miscellaneous class or under the Other Sports Equipment Class, **we** automatically cover newly acquired objects within that class of the same type as those already scheduled for up to $15,000.

     For coverage to apply **you** must:
     a.  report these objects to **us** within 30 days of acquisition; and

     b.  pay the additional premium from the date acquired.

## TERRITORIAL LIMITS

**We** cover the property described worldwide.

## SPECIAL PROVISIONS

1.  Fine Arts:  **You** agree that the covered property will be handled by competent packers.

2.  Musical Instruments:  **You** must also tell **us** whether any instrument insured under this endorsement may be used for performance for pay.

EXHIBIT A

## ENDORSEMENT HF80IL 0904

**EXCLUSIONS**

1. **We** do not cover loss which results directly or indirectly from:
   a. wear and tear or gradual deterioration;

   b. inherent vice or any quality in property that causes it to damage or destroy itself; or

   c. insects, rodents or vermin.

2. **We** do not cover loss or damage caused by or resulting from **Intentional Loss,** meaning any loss arising out of any intentional or criminal act committed:
   a. by **you** or at **your** direction; and

   b. with the intent to cause a loss.

   This exclusion applies regardless of whether **you** are actually charged with or convicted of a crime.

   In the event of such loss, no one defined as **you** or **your** is entitled to coverage, even people defined as **you** or **your** who did not commit or conspire to commit the act causing the loss.

   However, this exclusion will not apply to deny payment to an innocent co-insured who did not cooperate in or contribute to the creation of loss if:
   i. such loss arose out of a pattern of criminal domestic violence; and

   ii. the perpetrator of the loss is criminally prosecuted for the act causing the loss.

   If **we** pay a claim pursuant to the above, **our** payment to the insured person is limited to that person's insurable interest in the property less any payments **we** first make to a mortgagee or other party with a legal secured interest in the property. In no event will **we** pay more than the Limit of Liability.

3. **We** do not cover loss or damage caused by or resulting from **Governmental Action,** including war, undeclared war, civil war, rebellion, insurrection, revolution, warlike act by a military force or military personnel, destruction or seizure or use for a military purpose, and including any consequence of any of these. Governmental Action also includes loss arising out of risks of contraband or illegal transportation or trade and loss due to order of any civil authority except acts of destruction during a fire to prevent it from spreading as long as the fire was not caused by any peril excluded by this endorsement.

4. **We** do not cover loss or damage caused by or resulting from **Nuclear Action,** meaning nuclear reaction, discharge, radiation or radioactive contamination, all whether controlled or uncontrolled or however caused, or any consequence of any of these. Loss caused by nuclear action is not considered a loss caused by fire, explosion or smoke. However, **we** pay for direct loss that ensues after nuclear action if caused by fire and then **we** pay for only the ensuing loss.

5. If organs not of a mobile nature are covered under Musical Instruments, **we** do not cover loss which results directly or indirectly from:
   a. mechanical or electrical breakdown or failure; or

   b. repairing, adjusting, servicing or maintenance operation; unless fire or explosion ensues and then only for the loss or damage caused by such ensuing fire or explosion.

6. If Fine Arts are covered:

   A. **We** do not cover loss which results directly or indirectly from:

      1. repairing, restoration or retouching process; or

EXHIBIT A

## ENDORSEMENT HF80IL 0904

2. breakage of art glass windows, glassware, statuary, marble, bric-a-brac, porcelains and similar fragile items, unless the Schedule shows that such breakage is covered.

EXCEPTION: **We** cover loss by breakage if caused by:

a. fire or lightning;

b. explosion, aircraft or collision;

c. windstorm, earthquake or flood;

d. malicious damage or theft; or

e. derailment or overturn of a conveyance.

B. **We** do not insure loss, from any cause, to property on exhibition at fairgrounds or premises of national or international expositions unless the premises are covered by this policy.

7. If Postage Stamps or Rare and Current Coin collections are covered:

A. **We** do not cover loss which results directly or indirectly from:

1. fading, creasing, denting, scratching, tearing or thinning;

2. transfer of colors, inherent defect, dampness, extremes of temperature or depreciation;

3. being handled or worked on;

4. the disappearance of individual stamps, coins or other items unless the item is:

a. described and scheduled with a specific amount of insurance; and

b. mounted in a volume and the page it is attached to is also lost; or

5. shipping by mail other than registered mail.

B. **We** do not insure loss, from any cause, to property:

1. in the custody of transportation companies; or

2. not part of a stamp or coin collection.

**CONDITIONS**

1. **Loss Clause:** The amount of insurance under this endorsement will not be reduced except for a total loss of a scheduled item. **We** will refund the unearned premium applicable to such item after the loss or **you** may apply it to the premium due for the replacement of the scheduled item.

2. **Loss Settlement: IN NO EVENT WILL WE PAY MORE THAN THE AMOUNT OF INSURANCE SHOWN IN THE SCHEDULE FOR THE COVERED PROPERTY. THE AMOUNT SHOWN IS THE MAXIMUM WE WILL PAY, EVEN IF REPLACEMENT COST ON CONTENTS COVERAGE IS PROVIDED BY THIS POLICY.**

Covered property losses are settled as follows:

A. Scheduled Items - (for specifically listed items within a class of personal property)

EXHIBIT A

# ENDORSEMENT HF80IL 0904

1. Fine Arts and Manuscripts -

   a. **We** will pay, for each item or property designated in the Schedule, the full amount shown in the Schedule for each scheduled item which is agreed to be the value of that item or property. At **our** request **you** will surrender that item or property to **us** if not lost or stolen.

   b. If the scheduled item or property is a pair or set, or consists of several parts when complete, **we** will pay the full amount shown in the Schedule for that pair, set or complete item. At **our** request, **you** will surrender that item or property to **us** if not lost or stolen.

   c. In the event, lost or stolen property is recovered and **we** have paid **you** the full amount shown in the Schedule for that property, **you** will surrender that property to **us.**

   d. **We** will, at **your** request, sell back to **you,** at a price **you** and **we** agree upon, any scheduled item **you** surrendered to **us** to comply with the terms in a., b. or c. above.

2. Other Scheduled Property Items - Not shown as Agreed Value in the Schedule

   The value of the property insured is not agreed upon but will be ascertained at the time of loss or damage.

   Our Option - If **we** give **you** written notice within 30 days after **we** receive **your** signed, sworn proof of loss, **we** may repair or replace any part of the lost or damaged property with like property.

   However, **we** will not pay more than the least of the following amounts:

   a. the **actual cash value** of the property at the time of loss or damage;

   b. the amount for which **you** could reasonably be expected to have the property repaired to its condition immediately prior to loss;

   c. the amount for which the item could reasonably be expected to be replaced with one like the item lost or damaged; or

   d. the amount of insurance.

3. Other Scheduled Property Items - Agreed Value Property As Shown in the Schedule

   For items indicated by an asterisk (*) in the Schedule as "Losses settled according to the Agreed Value provisions in your policy", covered property losses are settled as follows:

   a. Agreed Value

      If a listed item is totally destroyed or lost, **we** will pay the full amount shown in the Schedule for that item which is agreed to be the value of that item.

      If an item is only partially damaged or lost, **we** will pay to repair the item to its condition immediately prior to loss or pay **you** the difference between the item's value immediately after the damage or loss and the amount shown in the Schedule for the item.

      In no event will **we** pay more than the amount shown in the Schedule.

   b. Pair, Set or Parts

      If the scheduled item or property is a pair or set, or consists of several parts when complete, **we** will pay **you** the full amount shown in the Schedule for that pair, set or complete item. No

EXHIBIT A

# ENDORSEMENT HF80IL 0904

payment will exceed the Agreed Value amount shown in the Schedule. At **our** request, **you** will surrender that item or property to **us** if not lost or stolen.

   c.  Lost or Stolen Items

In the event lost or stolen property is recovered and **we** have paid **you** the full amount shown in the Schedule for that property, **you** will surrender that property to **us.**

   d.  Buyback of Surrendered Property

**We** will, at **your** request, sell back to **you,** at a price **you** and **we** agree upon, any scheduled item **you** surrendered to **us** to comply with the terms in 2. or 3. above.

  B.  Blanket Coverage (for a class of personal property designated as a Blanket class)

    1.  Property other than Postage stamps or rare and current coin collection -

When property is covered on a blanket basis, **we** will pay, without deduction of depreciation, the amount required to repair or replace the property, whichever is less. However, **we** will not pay more than the blanket limit for the class of property for any one loss. Nor will **we** pay more than $2500, or no more than the higher limit per item as displayed in the Schedule for the blanket class of property, for damage or loss to any one item.

**We** will not pay a greater proportion of any loss on blanket property than the amount of insurance on blanket property bears to the **actual cash value** at time of loss.

    2.  Postage stamps or rare and current coin collection -

When coins or stamps are covered on a blanket basis, **we** will pay the market value at time of loss but not more than $2500, or no more than the higher limit per item as displayed in the Schedule for the blanket class of property, for damage or loss to any one stamp, coin or individual item or any one pair, strip, block, series sheet, cover, frame or card.

**We** will not pay a greater proportion of any loss on blanket property than the amount of insurance on blanket property bears to the market value at time of loss.

    3.  Blanket Coverage does not apply to items separately described or listed and specifically insured in this or any other policy, regardless of the limit for which they are insured.

**3. Pair, set or parts other than Scheduled Items for Fine Arts and Manuscript or Agreed Value Property:**

  A.  Loss to a Pair or Set

In case of a loss to a pair or set **we** may elect to:

    1.  repair or replace any part to restore the pair or set to its value before the loss; or

    2.  pay the difference between **actual cash value** of the property before and after the loss.

  B.  Loss to Parts

In case of a loss to any part of covered property, consisting of several parts when complete, **we** will pay for the value of the part lost or damaged.

EXHIBIT A

EXHIBIT A

EXHIBIT A

# EXHIBIT B

EXHIBIT A

**MetLife Auto & Home®**
**Homeowner Operations Field Claim Office**
P.O. Box 6040
Scranton, PA 18505



September 24, 2020


Richard Redmond
Merrilee C. Redmond
34 Canterbury CT
Wilmette, IL 60091-2822


Our Customer:     Richard and Merrilee Redmond
Our Claim Number: JDJ32826 5N
Policy Number:    653113566-2
Date of Loss:     September 8, 2020


Dear Richard and Merrilee Redmond:

We have reviewed your policy and believe we have sufficient information at this time to make a proper decision regarding your claim.

After a careful evaluation of the facts, we can only conclude that this loss is not covered under your policy. We must therefore, respectfully decline to make any payment of this claim. Our decision is based on the following language in your policy.

Please refer to your **HP3500 0904 Homeowner Dwelling Policy**, specifically:

**SECTION I - LOSSES WE COVER**
(COMPREHENSIVE PERILS)

**COVERAGE A – DWELLING**
**COVERAGE B - PRIVATE STRUCTURES**
**COVERAGE C - PERSONAL PROPERTY**
**We** will pay for sudden and accidental direct physical loss or damage to the property described in Coverages A, B and C, except as excluded in **SECTION I - LOSSES WE DO NOT COVER**.

---

MetLife Auto & Home is a brand of Metropolitan Property and Casualty Insurance Company and its Affiliates, Warwick, RI



## SECTION I - LOSSES WE DO NOT COVER
### (COMPREHENSIVE PERILS)

3. **We** do not cover loss or damage to the property described in <u>Coverage A, Coverage B</u> and <u>Coverage C</u> which results directly or indirectly from any of the following:

    A. wear and tear, marring, scratching, aging, deterioration, corrosion, rust, mechanical breakdown, latent defect, inherent vice, or any quality in property that causes it to damage or destroy itself;

This language applies to your loss because the damages to the brick wall and stud framing are the result of long term water exposure that resulted in rot/deterioration. Long term damages and wear/tear/deterioration is specifically not included under the policy.

We hope this information explains our position. You should also be aware that no lawsuit or action may be brought against us by you unless there has been full compliance with all of the policy terms. Please refer to your policy for the specific time limitation to file suit. This letter is not intended as a waiver of any of the terms and provisions/conditions of your insurance policy with us.

If you believe that any facts have been overlooked in reaching this decision, please call me.

Sincerely,


Colleen Roy -
Metropolitan Casualty Insurance Company
Senior Claim Adjuster
(800) 854-6011 Ext. 7491
Fax: (866) 240-3469
Email: croy@MetLife.com


CC:    Schulz Brundage Inc
932 Maple Avenue
Suite 2
Downers Grove, IL 60515


We will, of course, be available to you to discuss the position we have taken. Illinois Regulations require that our company advise you that if you wish to take this matter up with the Illinois Department of Insurance, it maintains a consumer Division in Chicago at 122 S. Michigan Avenue, 19th Floor, Chicago, IL 60603 and in Springfield at 320 West Washington St., Springfield, Illinois 62767, http://Insurance.Illinois.gov/, 312-814-2420 or 217-782-4515.

EXHIBIT A

# EXHIBIT C

EXHIBIT A

LAW OFFICES

# Condon & Cook, L.L.C.

**55 West Monroe Street**
**Suite 3430**
**Chicago, Illinois 60603-5010**
TELEPHONE **(312) 266-1313**
FACSIMILE **(312) 266-8148**
E-MAIL: **pschoonmaker@condoncook.com**

December 8, 2020

**CERTIFIED MAIL**
**RETURN RECEIPT REQUESTED**
**cc: Regular Post and Email**
chris.murdoch@EMDoch.com

Christopher Murdoch
Emry Murdoch LLC
Two North Riverside Plaza
Suite 1850
Chicago, IL 60606

> Re:   Insured: Redmond
>        Claim No.: JDJ32826 5N
>        Policy No. 653113566-2
>        Date of Loss: 9/08/2020
>        Our File No.: 560.18828

Dear Mr. Murdoch:

　　Please be advised that our offices have been retained to represent the interests of Metropolitan Casualty Insurance Company in connection with the above captioned claim. It is our understanding that you have been retained to represent the interests of Richard and Merrilee Redmond in connection with this matter. Please provide written confirmation of the same.

　　Please be advised, at the Redmond's request. Metropolitan Casualty Insurance Company is currently undertaking a further review of the claim. In the interim, we would request that all future communication be conducted through our offices.

　　We shall await your future contact.

　　Please be further advised that neither the writing of this letter, nor its contents, nor the solicitation of the requested documentation was meant to be, nor should it be

EXHIBIT A

construed by you as a waiver of any of the terms and conditions of the State Farm Mutual Automobile Insurance Company policy or of any of the rights of the State Farm Mutual Automobile Insurance Company under said policy.

Very truly yours,

Metropolitan Casualty Insurance Company

By:   Peter W. Schoonmaker
      One of its attorneys

PWS/kew

EXHIBIT A

# EXHIBIT D

EXHIBIT A

**MetLife Auto & Home®**
**Homeowner Operations Field Claim Office**
P.O. Box 6040
Scranton, PA 18505

June 8, 2021

Christopher J. Murdoch          **CERTIFIED MAIL RETURN RECEIPT REQUESTED**
EmryMurdoch                      **AND REGULAR MAIL**
2 North Riverside Plaza, Suite 1850
Chicago, IL 60606

Our Customer:    Richard Redmond and Merrilee Redmond
Our Claim Number: JDJ32826
Policy Number:    653113566-2
Date of Loss:     September 8, 2020

Dear Mr. Murdoch:

    Please allow this correspondence to serve as the Metropolitan Casualty Insurance Company's formal response to your request for reconsideration of the denial of the above-captioned claim set forth in our letter dated September 24, 2020. We have reevaluated our original claim decision, but unfortunately, the policy does not afford coverage for this damage. Accordingly, the Metropolitan Casualty Insurance Company must advise you that it denies any and all liability the Redmond's arising from the damage to the brick wall and stud framing to the addition to their home.

Please note the Homeowner policy provides in pertinent part as follows:

**SECTION I - LOSSES WE COVER**
(COMPREHENSIVE PERILS)

\* \* \*

**COVERAGE A – DWELLING**
**COVERAGE B - PRIVATE STRUCTURES**
**COVERAGE C - PERSONAL PROPERTY**
We will pay for sudden and accidental direct physical loss or damage to the property described in Coverages A, B and C, except as excluded in **SECTION I - LOSSES WE DO NOT COVER**.

SECTION I - LOSSES WE DO NOT COVER
(COMPREHENSIVE PERILS)

\* \* \*

MetLife Auto & Home is a brand used by Metropolitan Property and Casualty Insurance Company and certain of its affiliates, all with administrative home offices in Warwick, RI.

MPL DENIAL-H                  JDJ32826 1D    Page 1 of 4                  Printed in U.S.A 0698

EXHIBIT A

FILED DATE: 8/9/2021 4:21 PM 2021L008013

FILED DATE: 8/9/2021 4:21 PM    2021L008013

2. **We** do not insure under Coverage A and Coverage B for any loss consisting of one or more of the items below.  However, **we** pay for any ensuing loss unless the ensuing loss is itself excluded by any other provision in this policy.  Further, **we** do not insure for loss described in Exclusion 1. above and Exclusions 3. and 4. below regardless of whether one or more of the following: (a) directly or indirectly cause, contribute to or aggravate the loss; or (b) occur before, at the same time, or after the loss or any other cause of the loss.  The items are:

* * *

B. defective, inadequate, faulty or unsound:
1. planning, zoning, development, surveying, siting;
2. design, specifications, workmanship, repair, construction, renovation, remodeling, grading, compaction;
3. materials used in repair, construction, renovation or remodeling; or
4. maintenance; of any property whether on or off the **residence premises**.  Property includes land, structures or improvements of any kind; and

* * *

3. **We** do not cover loss or damage to the property described in Coverage A, Coverage B and Coverage C which results directly or indirectly from any of the following:

A. wear and tear, marring, scratching, aging, deterioration, corrosion, rust, mechanical breakdown, latent defect, inherent vice, or any quality in property that causes it to damage or destroy itself;

B. **fungus and mold**.  There is no coverage for loss which, in whole or part, arises out of, is aggravated by, contributed to by acts or omissions of persons, or results from **fungus and mold**.  This exclusion applies regardless of whether **fungus and mold** arises from any other cause of loss, including but not limited to a loss involving water, water damage or discharge, which may be otherwise covered by this policy.

However, this exclusion does not apply to:
1. fungus and mold resulting from a covered fire or lightning loss.  This exception for fire or lightning applies only to direct loss to covered property.
2. coverage granted under **SECTION I – ADDITIONAL COVERAGES** for **Fungus and Mold Remediation**;

C. settling, cracking, shrinking, bulging, or expansion of bulkheads, pavements, patios, foundations, footings, supports, walls, floors, roofs, or ceilings;

4. **We** do not pay for loss or damage to the property described in Coverage A and Coverage B:

C. involving collapse, except as granted under **SECTION I - ADDITIONAL COVERAGES** for **Collapse**.  However, **we** do pay for any ensuing loss to property described in Coverages A and B not excluded or excepted in this policy.

Based upon the totality of its investigation, the Company has determined that the damage to the brick wall and stud framing to the addition to the home was the result of the building methods used during the construction of the addition in or about 1989, namely, the extra layer of plastic wrap trapped moisture in

**Important Notice:**  The Farmers Insurance Group® has acquired the MetLife Auto & Home® business from MetLife, Inc.  As a result of the acquisition, the MetLife companies are no longer affiliated with MetLife Auto & Home.  Farmers will now be responsible for your policy.  If you have questions about this, please visit www.farmers.com/metpolicy/FAQ/. If you work with an agent and have additional questions about this, please call him/her.

EXHIBIT A

FILED DATE: 8/9/2021 4:21 PM   2021L008013

the wall cavity, which led to the mold and deterioration of the wood sheathing behind the brick wall, and the settling, cracking, shrinking, bulging or expansion of the brick wall itself.

Please also note that this loss does not constitute a collapse as that term is defined in your policy. The Homeowner policy provides in further part as follows:

## CONTENTS AND ADDITIONAL COVERAGES

\* \* \*

## SECTION I - ADDITIONAL COVERAGES

\* \* \*

16. **Collapse. We** will pay for sudden and accidental direct physical loss to covered property involving the entire collapse of a building or any part of a building caused only by one or more of the following:

A. perils described in **SECTION I - BROAD NAMED PERILS;**
B. hidden decay of the structure;
C. hidden insect or hidden vermin damage;
D. weight of contents, equipment, animals or people;
E. weight of ice, snow, sleet or rain which collects on a roof;
F. use of defective material or methods in construction, remodeling or renovation if the collapse occurs during the course of the construction, remodeling or renovation;
G. water or water-borne material which backs up through sewers or drains; or
H. water or water-borne material which enters and overflows or is discharged from within a sump pump, sump pump well or other type system designed to remove subsurface water which is drained from the foundation area.

Loss to an awning, fence, patio, pavement, swimming pool, underground pipe, flue, drain, cesspool, septic tank, septic field, foundation, retaining wall, bulkhead, pier, wharf or dock is not included under items B., C., D., E., and F. unless the loss is a direct result of the collapse of a building.

Collapse means an abrupt falling down or caving in of a building or any part of a building. Collapse does not include settling, cracking, sagging, bowing, bending, leaning, shrinking, bulging or expansion. A building or any part of a building that is in danger of falling down or caving in is not considered to be in a state of collapse.

Based upon the totality of its investigation, the Company has further determined that the damage to the brick walls do not constitute a collapse, as (1) an "abrupt falling down or caving in" had not occurred; (2) a collapse does not include "settling, cracking, sagging, bowing, or bending", which appears to have been the extent of the damage; and (3) a building "in danger of falling down or caving is not considered to be in a state of collapse."

We trust you understand the bases for our decision. If you have questions or need additional information, I may be contacted at your convenience.

**Important Notice:** The Farmers Insurance Group® has acquired the MetLife Auto & Home® business from MetLife, Inc. As a result of the acquisition, the MetLife companies are no longer affiliated with MetLife Auto & Home. Farmers will now be responsible for your policy. If you have questions about this, please visit www.farmers.com/metpolicy/FAQ/. If you work with an agent and have additional questions about this, please call him/her.

EXHIBIT A

Please be further advised that neither the writing of this letter, nor its contents, nor the solicitation of the requested documentation was meant to be, nor should it be construed by you as a waiver of any of the terms and conditions of the Metropolitan Casualty Insurance Company policy or of any of the rights of the Metropolitan Casualty Insurance Company under said policy, policy number 653113566-2.

Part 919 of the Rules of the Illinois Department of Insurance further requires that we advise you that you have twelve months from the date of loss to file a lawsuit against the Metropolitan Casualty Insurance Company. This period is extended by the number of days between the date a proof of loss was filed and the date the claim is denied in whole or in part. A proof of loss was neither solicited nor submitted in this matter. As such, the contractual period within which you will be required to file suit against the Metropolitan Casualty Insurance Company will expire on **September 8, 2021**.

Part 919 of the Rules of the Illinois Department of Insurance requires that we advise you that if you wish to take this matter up with the Illinois Department of Insurance, it maintains a Consumer Division in Chicago at 122 S. Michigan Ave., 19th Floor, Chicago, Illinois 60603 and in Springfield at 320 West Washington Street, Springfield, Illinois 62767.

Sincerely,


Dean Bellefeuille
Metropolitan Casualty Insurance Company
Property Manager
(800) 854-6011 Ext. 7707
Fax: (866) 743-4938
Email: dean.bellefeuille@farmersinsurance.com


CC:
    Richard Redmond and Merrilee Redmond
    34 Canterbury Court
    Wilmette, IL 60091-2822

**Important Notice:** The Farmers Insurance Group® has acquired the MetLife Auto & Home® business from MetLife, Inc. As a result of the acquisition, the MetLife companies are no longer affiliated with MetLife Auto & Home. Farmers will now be responsible for your policy. If you have questions about this, please visit www.farmers.com/metpolicy/FAQ/. If you work with an agent and have additional questions about this, please call him/her.

EXHIBIT A

FILED DATE: 8/9/2021 4:21 PM 2021L008013

**MetLife Auto & Home®**
**Homeowner Operations Field Claim Office**
P.O. Box 6040
Scranton, PA 18505

FILED DATE: 8/9/2021 4:21 PM   2021L008013

June 10, 2021


Merrilee C. Redmond
Richard Redmond
34 Canterbury CT
Wilmette, IL   60091-2822



**Important Notice:**  The Farmers Insurance Group® has acquired the MetLife Auto & Home® business from MetLife, Inc.  As a result of the acquisition, the MetLife companies are no longer affiliated with MetLife Auto & Home.  Farmers will now be responsible for your policy.  If you have questions about this, please visit www.farmers.com/metpolicy/FAQ/. If you work with an agent and have additional questions about this, please call him/her.

MetLife Auto & Home is a brand used by Metropolitan Property and Casualty Insurance Company and certain of its affiliates, all with administrative home offices in Warwick, RI.
MPL ENVHEADER                                JDJ32826 TG                                Printed in U.S.A  0698

**EXHIBIT A**



7020 2450 0000 8255 1023

CERTIFIED MAIL

PLACE STICKER AT TOP OF ENVELOPE TO THE RIGHT
OF THE RETURN ADDRESS, FOLD AT DOTTED LINE



U.S. POSTAGE PAID
PM 2-DAY
WINNETKA, IL
60093
AMOUNT
**$14.95**

0 21
R2304H108208-52



02886

UNITED STATES
POSTAL SERVICE

1006

**EMRYMURDOCH**
**2** North Riverside Plaza
Suite 1850
Chicago IL 60606

Metropolitan Casualty Ins. Co.
700 Quaker Lane
Warwick RI 2886-6669

02886-6669

EXHIBIT A