IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| Richard Redmond, Merrilee C. Redmond, and Merrilee C. Redmond, as Trustee of the Merrilee Clark Redmond Trust, | ) ) ) ) |
| Plaintiff | ) Case No. 21-cv-04885 ) |
| v. | ) Judge Sharon Johnson Coleman ) |
| Metropolitan Casualty Insurance Company | ) ) |
| Defendant. | ) ) |

**MEMORANDUM OPINION AND ORDER**

Plaintiffs Richard Redmond, Merrilee C. Redmond and Merrilee C. Redmond, as Trustee of the Merrilee Clark Redmond Trust, ("the Redmonds") brought suit against Defendant Metropolitan Casualty Insurance Company ("Metropolitan") alleging breach on contract and a violation of 215 ILCS 5/155. The Redmonds and Metropolitan now file cross motion for summary judgment. [49, 52]. For the reasons below, the Court denies the motions.

**Initial Matters**

As an initial matter, the Court reviews the Parties' statements for compliance with Local Rule 56.1, which "aims to make summary-judgment decisionmaking manageable for courts." *Kreg Therapeutics, Inc. v. VitalGo, Inc.*, 919 F.3d 405, 415 (7th Cir. 2019). "Asserted facts may be deemed admitted if not controverted with specific citations to evidentiary material." Local Rule 56.1(e)(3) (N.D. Ill.); *see Edwards v. Maestro Food Co.*, No. 19 CV 8451, 2021 WL 4258976, at *1 (N.D. Ill. June 3, 2021) (Shah, J.).

Metropolitan failed to submit a response to the Redmond's statement of material facts as required by Local Rule 56.1(b)(3). Accordingly, the Court deems the Redmond's facts admitted. *See Coleman v. Goodwill Indus. of Se. Wisconsin, Inc.*, 423 F. App'x 642, 643 (7th Cir. 2011) (affirming district

court in admitting defendant's statement of facts where plaintiff failed to submit a paragraph-by-paragraph response to defendant's proposed facts with citations to the record).

**Background**

The Redmonds' home at 34 Canterbury Court, Wilmette, Illinois ("the Home"), was originally constructed in 1908. In 1989, an addition consisting of a one-story entrance, and a two-story garage with a bedroom above was added to the front of the original home ("the Addition"). The Redmonds purchased the home twenty-eight years later, in 2017.

The Redmonds purchased a Homeowners Insurance Policy on the Home for the period from June 15, 2020 through June 15, 2021 ("the Policy") through Metropolitan. Pursuant to the terms of the Policy, Metropolitan agreed to "pay for sudden and accidental direct physical loss or damage" to the Home, "except as excluded." See [1-1 at 41].

In late August 2020, a row of bricks on the exterior wall of the Addition suddenly separated from the wood framing. The Redmonds reported the damage to their Metropolitan insurance agent who submitted a claim on September 16, 2020 ("the Claim"). The Redmonds' submission of the Claim was timely, and Metropolitan accepted it under the policy period.

On September 21, 2020, the Redmonds hired a contractor to inspect the damage. The Redmonds were advised that the brick veneer had disconnected from the wood frame substructure, causing it to lose lateral support and creating a dangerous condition, which needed to be repaired immediately before more bricks fell away. As the work progressed, the Redmonds discovered that the same condition existed throughout the entire Addition and that all the bricks needed to be taken down and replaced after the underlying wood framing was repaired.

Metropolitan sent claims adjuster Colleen Roy to the Home on September 23, 2020. Roy concluded that the damage had been caused by a single roof leak above the northwest corner of the first story of the Addition. The next day, on September 24, 2020, Metropolitan sent a letter to the

Redmonds stating that it had performed "a careful evaluation of the facts" and had "sufficient information at this time to make a proper decision regarding your claim." [51-2 at 2]. Metropolitan's September 24, 2020, letter ("the First Denial Letter") declined coverage because of a single exclusion: Section I, Paragraph 3(A), which excludes losses that result from "wear and tear, marring, scratching, aging, deterioration, corrosion, rust, mechanical breakdown, latent defect, inherent vice, or any quality in property that cause it to damage or destroy itself." *Id.* The First Denial Letter stated this Paragraph applied to the Claim because "the damage to the brick wall and stud framing are the result of long-term water exposure that resulted in rot/deterioration. Long term damage and wear/tear/deterioration is specifically not included under the policy." *Id.*

The Redmonds immediately disputed Metropolitan's denial. After the First Denial Letter, the Redmonds repaired the damage to their home, incurring costs totaling $247,150.

Metropolitan then sent an engineer to the Home on November 18, 2020, to inspect the damage. The engineer subsequently issued the "Domel Report," dated November 24, 2020. Metropolitan's engineer based his conclusions on photographs of the damage and his interview with Mr. Redmond. The Domel Report was generated using the example of a "generic wall detail for a brick veneer wall, and a "detail with a plastic barrier added" which Metropolitan's engineer concluded was "similar to the detail used in the subject case." [51-3 at 5]. The Domel Report concluded, "The construction of the wall included a weather resistant barrier and then a plastic wrap. This type of construction resulted in condensation forming in the wall at the wood wall sheathing. The many cycles of moisture exposure from the condensation resulted in deterioration in the form of rot to the wood wall sheathing." *Id.*

The Redmonds retained Carl Schoenberger to review and evaluate the Domel Report. After his review, Schoenberger collected his findings and drafted the "Schoenberger Report." The Schoenberger Report concluded, "The condensation referred to in the ESi report came from

3

interior humidity. The primary source of this interior humidity or vapor that condensed at the wood wall sheathing and stud framing was from the heating and air conditioning systems (which included a humidifier) that only served the 1989 Addition." [51-1 at 7].

In response to the Domel Report's findings on deterioration and potential causes of the condition, the Schoenberger Report concluded: "The failure of the brick veneer was not the result of normal deterioration or settling." The report continued, "Because his investigation was conducted after the repairs were substantially complete, ESi's opinion that the 'deterioration' which resulted from the condensation from the heating and air conditioning systems constituted 'rot to the wood,' is necessarily based upon his review of photographs taken by others when he was not present. The photographs of the conditions and the repair work show that the structural wood framing and sheathing had decayed, but it is not possible to conclude, with any degree of engineering certainty, based on third party photographs, that mold, fungus or other environmental factors caused or contributed to these conditions. Such a conclusion would require a more in-depth analysis of the physical conditions and possible laboratory testing, which ESi did not perform." *Id.*

The Schoenberger Report also critiqued the Domel Report's accuracy with respect to its characterization of the well at issue: "The ESi report also implies that the structural wood framing and brick veneer are both parts of a single wall system. This is technically inaccurate. The structural wood-framed wall consists of the wood studs and sheathing, while the brick veneer is non-structural cladding. The brick veneer is more properly considered a separate element of the construction and would have typically been installed by a different subcontractor than the rough carpenter who built the structural wood framing. Additionally, note that each type of wall construction has separate design requirements that are found in separate sections of most Building Codes." *Id.*

Nine months after Metropolitan issued the First Denial Letter, Metropolitan issued a second denial letter ("the Second Denial Letter"). [51-8]. The Second Denial Letter cited four exclusions:

4

Paragraph 2(B) – "defective, inadequate, faulty or unsound" construction methods or materials; Paragraph 3(A) – deterioration; Paragraph 3(B) – "Fungus and Mold;" and Paragraph 3(C) – "settling, cracking, shrinking, bulging, or expansion of … supports, walls, floors, roofs or ceilings." *Id.*

After quoting selected portions of these Paragraphs, the Second Denial Letter states the basis for Metropolitan's denial in a single sentence: "Based upon the totality of its investigation, the Company has determined that the damage to the brick wall and stud framing to the addition to the home was the result of the building method used during the construction of the addition in or about 1989, namely, the extra layer of plastic wrap trapped moisture in the wall cavity, which led to the mold and deterioration of the wood sheathing behind the brick wall, and the settling, cracking, shrinking, bulging or expansion of the brick wall itself." *Id.*

**Legal Standard**

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). A genuine dispute as to any material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L.Ed. 2d 202 (1986). When determining whether a genuine dispute as to any material fact exists, the Court must view the evidence and draw all reasonable inferences in favor of the nonmoving party. *Id.* at 255; *McDaniel v. Progress Rail Locomotive, Inc.*, 940 F.3d 360, 367 (7th Cir. 2019). After "a properly supported motion for summary judgment is made, the adverse party 'must set forth specific facts showing that there is a genuine issue for trial.'" *Anderson*, 477 U.S. at 255 (citation omitted).

**Discussion**

5

The parties' cross motions for summary judgment address two claims: (1) breach of contract; and (2) a violation of Section 155 of the Illinois Insurance Code. The Court addresses each in turn.

1. *Breach of Contract Claim*

    a. *Prima Facie Case*

The Policy states, "We will pay for sudden and accidental direct physical loss or damage to the property described in Coverages, A, B, and C, except as excluded in Section I – Losses We Do Not Cover." This type of policy is known as an "all-risk" policy, which is a policy that covers all "fortuitous" losses except for those specifically excluded in the policy language. Under Illinois law, to withstand an insurer's motion for summary judgment on an insured's coverage claim under an all-risk policy, the insured must establish a *prima facie* case that: (1) a loss occurred; (2) the loss resulted from a fortuitous event; and (3) the policy was in effect at the time of the loss. *Terraces Condo. Ass'n v. Ins. Co. of Greater New York*, No. 19-CV-6028, 2022 WL 847478, at *3 (N.D. Ill. Mar. 22, 2022) (Blakey, J.); *see also Gulino v. Econ. Fire & Cas. Co.*, 971 N.E.2d 522, 527 (Ill. App. Ct. 2012); *Harbor House Condominium Ass'n. v. Mass. Bay Ins. Co.*, 915 F.2d 316, 318 (7th Cir. 1990). If the insured establishes its *prima facie* case, then the burden shifts to the insurer "to affirmatively demonstrate that the loss resulted from a peril expressly excluded from coverage." *Gulino*, 971 N.E.2d at 527.

Here, the Redmonds have stated a prima facie case. A loss occurred when wood framing of the Addition "deteriorated," requiring removal of all the bricks from the Addition to access and repair the wood framing. This unexpected loss was a clearly a fortuitous event. *See McGrath v. Am. Fam. Mut. Ins. Co.*, No. 07 C 1519, 2008 WL 4531373, at *5 (N.D. Ill. Apr. 29, 2008) (Moran, J.) ("'Fortuitous' means happening by chance or accident or occurring unexpectedly or without known cause."); *Terraces Condo. Ass'n*, 2022 WL 847478, at *4 ("[T]he insured's burden of showing a fortuitous loss is 'not a particularly onerous one.'"). It is also undisputed that the Policy was in effect at the time. Thus, the Redmonds have met their burden in showing a prima facie case.

6

      *b. Exclusions from Coverage*

Because the Redmonds have stated a prima facie case for loss, the burden now shifts to Metropolitan "to affirmatively demonstrate that the loss resulted from a peril expressly excluded from coverage." *Gulino*, 971 N.E.2d at 527. Metropolitan cited four exclusions: Paragraph 2(B) – "defective, inadequate, faulty or unsound" construction methods or materials ("Flawed Construction Exclusion"); Paragraph 3(A) – deterioration ("Deterioration Exclusion"); Paragraph 3(B) – "Fungus and Mold" ("Fungus and Mold Exclusion") and Paragraph 3(C) – "settling, cracking, shrinking, bulging, or expansion of . . . supports, walls, floors, roofs or ceilings" ("Wall Expansion Exclusion"). *See* [51-8]. However, each exclusion cited raises a genuine dispute of a material fact.

The Deterioration Exclusion states: "We do not cover loss or damage to the property . . . which results directly or indirectly from any of the following: wear and tear, marring, scratching, aging, deterioration, corrosion, rust, mechanical breakdown, latent defect, inherent vice, or any quality in property that causes it to damage or destroy itself." *Id.*

The Redmonds argue that the exclusion for "deterioration" is universally interpreted to refer to normal, lifecycle decay, not accelerated deterioration caused by an external force. The Redmonds assert that this exclusion cannot apply because Metropolitan contends that the deterioration of the wood sheathing was accelerated and brought on by the presence of moisture trapped in the walls. In response, Metropolitan argues that "deterioration" is not defined in the policy and should be afforded its plain, ordinary, and popular meaning.

Illinois courts have previosuly interpreted the term "deterioration" by affording it its plain, ordinary, and popular meaning. *See City Brewing Co., LLC v. Liberty Mut. Fire Ins. Co.*, 2013 IL App (1st) 111996-U, ¶ 32, 2013 WL 2635847, at *6 (Ill. App. 1 Dist., 2013) ("Webster's dictionary defines 'deterioration' as 'the action or process of deteriorating or state of having deteriorated: gradual impairment.'"). Regardless, whether the wood framing suffered from deterioration is a disputed

7

material fact between the parties. While Metropolitan's Domel Report concluded that deterioration was the cause of the damage to the wood framing, the Redmond's Schoenberger Report explicitly concluded, "The failure of the brick veneer was not the result of normal deterioration or settling." Thus, whether this exclusion applies will be an issue for the jury to decide.

The remaining exclusions claimed by Metropolitan—the Flawed Construction, Fungus and Mold, and Wall Expansion Exclusions— are not appropriate for summary judgment for similar reasons. First, a disputed fact exists as to the cause of the damage to the Home. Metropolitan's Domel Report concluded that the damage to the brick wall and stud framing to the Addition to the Home was the result of the building method, which led to the mold and deterioration of the wood sheathing behind the brick wall, and the settling, cracking, shrinking, bulging or expansion of the brick wall itself. The Redmonds' Schoenberger Report, however, disputed the Domel Report's conclusions by finding "it is not possible to conclude, with any degree of engineering certainty, based on third party photographs, that mold, fungus or other environmental factors caused or contributed to these conditions." Because Metropolitan's claimed exclusions based are premised on disputed material facts, a jury will need decide what caused the damage to the brick veneer and wood framing and determine whether the exclusions apply.

Second, a disputed fact exists as to the construction of the brick veneer. The Domel Report suggested that the brick veneer and the wood sheathing are part of the same structure that was poorly constructed. The Schonberger Report, however, disputes this characterization, claiming that the brick veneer is more properly considered a separate element of the construction and would have typically been installed by a different subcontractor than the rough carpenter who built the structural wood framing. Because of this distinction, a factual dispute arises impacting certain exclusions Metropolitan relies on. Thus, summary judgment is denied as to both parties on the breach of contract claim.

2. *Section 155 of the Illinois Insurance Code*

The parties seek summary judgment on the Redmonds' claim for attorneys' fees and increased damages pursuant to § 155 of the Illinois Insurance Code, 215 ILCS 5/155. Section 155 allows a court to award reasonable attorneys' fees, plus a penalty, if it finds that an insurance company took an action or delay that was "vexatious and unreasonable." 215 ILCS 5/155.

The Redmonds claim that the uncontested facts show that Metropolitan handled the Claim in bad faith, arguing that Metropolitan's denials misconstrued the policy language, made up provisions that did not exist, ignored language that would have provided coverage, failed to advise the Redmonds of policy terms that operated to provide coverage, and relied on exclusions unenforceable vague and overly broad.

The core of the Parties' dispute on this matter stems from competing interpretations of Section I, Paragraph 4(B) of the Policy (the "Seepage Provision"), which states, "We do not pay for damages caused loss or damage to the property. . . caused by seepage, meaning continuous or repeated seepage or leakage of water or steam, or the presence, or condensation of humidity, moisture, or vapor, over a period of weeks, months, or years." The provision continues, "[W]e pay for ensuing damages[1] to the building property that result from such seepage if the leakage of water is not able to be observed and is hidden within the walls or ceilings or above the ceiling or beneath the floors but not below the slab or foundation floor of a structure." The Redmonds argue that this

---

[1] Illinois courts recognize that "a resulting or ensuing loss clause operates to carve out an exception to the policy exclusion" and thus "limit[s] the scope of what is otherwise excluded under the policy." *Moda Furniture, LLC v. Chicago Title Land Trust Co.*, 35 N.E.3d 1139, 1149, 394 Ill.Dec. 170, 180, 2015 IL App (1st) 140501, ¶¶ 37-38 (Ill.App. 1 Dist., 2015). An ensuing loss clause " 'does not reinsert coverage for excluded losses, but reaffirms coverage for secondary losses ultimately caused by excluded perils.' " *Id.* In *Moda Furniture, LLC*, the Illinois court illustrated that "an example of an ensuing loss is a water leak that causes an electrical short which starts a fire. … The damage caused by the fire is a covered ensuing loss because it is an unforeseeable event occurring wholly separate from the defective property." *Id.* (citing *Prudential Property & Casualty Insurance Co. v. Lillard–Roberts*, No. CV–01–0362–ST, 2002 WL 31488243, at *8 (D.Or. June 14, 2002)).

9

language applies directly to Metropolitan's theory of the Claim, and operates to afford coverage under the Policy, yet Metropolitan ignored it in order to deny coverage in bad faith. Metropolitan disagrees, stating that this provision is an exclusion that, if anything, further serves as justification for denying coverage.

In determining whether an insurer engaged in vexatious or unreasonable conduct under § 155, a court must consider the totality of circumstances. *See Spearman Indust., Inc.*, 138 F. Supp. 2d 1088, 1102 (N.D. Ill. 2001) (Alesia, J.). An insurer's conduct is not "vexatious or unreasonable if (1) there is a bona fide dispute concerning the scope and application of insurance coverage, (2) the insurer asserts a legitimate policy defense, (3) the claim presents a genuine legal or factual issue regarding coverage, or (4) the insurer takes a reasonable legal position on an unsettled issue of law." *Id.* (citing *Citizens First Nat'l Bank of Princeton v. Cincinnati Ins. Co.*, 200 F.3d 1102, 1110 (7th Cir. 2000)). The decision whether an insurer's conduct "is vexatious and unreasonable is within the trial court's discretion." *Sarac v. Minnesota Life Ins. Co.*, 529 F. Supp. 2d 924 (N.D. Ill. 2007) (Coar, J.).

Based on the current record, the Court cannot determine whether Redmond engaged in "vexatious and unreasonable" conduct when it declined coverage and refused to pay for any damages. Metropolitan issued two letters denying coverage contending that the damage was caused by moisture inside the walls, but never addressed the Seepage Provision which specifically addresses "moisture in the wall cavities." Depending on the expert findings as to the moisture causing the alleged deterioration, the provision could have been used to grant coverage if the resulting damages had been considered an ensuing loss. Thus, this issue is ripe for determination and not suitable for summary judgment. *Terraces Condo. Ass'n*, 2022 WL 847478, at *8 (denying summary judgment where the record indicated that insurer may have been required to cover the incident costs pursuant separate policy provisions ripe for factual determination). Additionally, the record contains facts which could lead a jury to believe that Metropolitan based its conclusion on incomplete or

10

speculative information. *see also Markel Am. Ins. Co. v. Dolan*, 787 F. Supp. 2d 776, 779 (N.D. Ill. 2011) (Hibbler, J.) (holding that "an insurer who misrepresents facts, denies coverage after refusing to conduct an adequate investigation, and bases its decision upon speculation or incomplete information could be considered to have acted without reasonable cause."). Thus, summary judgment as to both parties on the Section 155 claim is denied.

**Conclusion**

For these reasons, this Court denies the parties' cross motions for summary judgment.

**IT IS SO ORDERED.**

Date: 2/29/2024      Entered: _____

SHARON JOHNSON COLEMAN
United States District Judge